IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY HALEY and MICHAEL HALEY,
LESLIE BANKS and JAMES HAL BANKS,
ANNIE BUINEWICZ and BRIAN BUINEWICZ,
TERRANCE McIVER AND JEAN ANN McIVER,
SUSAN SENYK, CHRISTIAN SENYK,
GARY SAMUELS, PATRICIA SAMUELS,
MATTHEW DELLER, RENEE DELLER
and MARIE LOHR, on behalf of themselves and
all others similarly situated,

                                                     OPINION and ORDER

                    Plaintiff,

                                                14-cv-99-bbc

        v.

KOLBE & KOLBE MILLWORK CO., INC.,

                    Defendant,

                and

FIREMAN'S FUND INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

                    Intervenor Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       This is a proposed class action in which plaintiffs allege that defendant Kolbe &

Kolbe Millwork Co. sold them defective windows.   Several motions are now before the

court, all relating to the question whether defendant or its insurers have the right to choose

counsel to represent defendant in this case.  First, defendant and Intervenor Fireman's Fund

Insurance Company have filed dueling motions for summary judgment in which they seek declarations on the question whether defendant may keep the counsel that has been representing it throughout this case or whether the insurers may require defendant to accept counsel chosen by the insurers.  Dkt. ##109 and 124.   In addition, Fireman's Fund has filed a motion to dismiss defendant's counterclaims for bad faith and breach of the duty to defend for conduct related to the parties' dispute about counsel.  Dkt. #115.   Finally, intervenor United States Fire Insurance Company has filed a motion to join Fireman's Fund's motion for summary judgment, dkt. #114, which I am granting as unopposed.

With respect to the cross motions for summary judgment, I am granting defendant's motion and denying the insurers' motion.  Because the insurers did not choose counsel for defendant until the lawsuit was well underway and then waited several more months to bring this issue to the court's attention, I conclude that the insurers are equitably estopped from forcing defendant to switch counsel now.  I am denying the motion to dismiss because it is too early to tell whether defendant can succeed on its claims for bad faith and breach of contract.

From the parties' proposed findings of fact and the record, I conclude that the following facts are undisputed.


UNDISPUTED FACTS

Defendant Kolbe & Kolbe Millwork Co. purchased general liability insurance from several insurance companies, including intervenors Fireman's Fund Insurance Company and

2

United States Fire Insurance Company.  The policies of both of the insurers include the language that the insurers have the "right and duty to defend the insured against suit seeking . . . damages" that are covered by the policies.

On February 13, 2014, plaintiffs filed this case.  On February 14, 2014, defendant tendered its defense to the insurers and forwarded the complaint to them.  (Although defendant tendered its defense to other insurers besides Fireman's Fund and U.S. Fire, those other insurers have not sought to intervene in this case, so I do not consider their rights or defendant's rights as related to them.)  On February 19, 2014,  defendant's agent sent the insurers the contact information for each of the other insurers after a representative from one of the insurers told the agent that the insurers "need to talk about defense counsel."  In her email to the insurers, the agent stated that defendant "has not chosen counsel but [is] in the process."

On February 21, 2014, defendant notified its insurers that it

wanted to reach out to you at this time to coordinate a discussion regarding Kolbe's selection of outside counsel. Kolbe has chosen Attorney Gordon (Chip) Davenport III of Foley & Lardner LLP to represent it in this matter . . . We would like to introduce the carrier group to Attorney Davenport and provide an opportunity for a discussion about his representation of Kolbe in this matter.  Please join Attorney Davenport and me for a conference call on Monday, February 24th at 10:00 am CST.

During the February 24, 2014 call, Davenport gave the insurers information about Foley & Lardner's experience, credentials and rates.  The insurers did not object to anything Davenport said, but they stated that they were still investigating coverage.  (Intervenor U.S. Fire states that its claims representative assigned to this case was not able to participate in

the telephone conference, but it does not argue that it was unable to ask another employee to substitute for that representative and it does not argue that defendant refused a request to provide U.S. Fire information about the conference.)

On March 3, 2014, the insurers retained counsel to request an opinion on coverage.

In an email dated March 4, 2014, defendant informed the insurers that it had retained Foley & Lardner "to protect [its] interests" and prepare an answer to plaintiffs' complaint, which was due by March 10, 2014.  Defendant repeated the rates for the lawyers working on the case and stated that it "awaits [the insurers] responses with regard to [their] coverage positions."  The insurers did not object or otherwise respond to the email.

On March 5, 2014, the insurers began to discuss "possible alternative counsel," but they did not make defendant aware of that discussion.

On March 28, 2014, after defendant received its first invoice from Foley & Lardner, defendant wrote the insurers again, asking for their coverage positions by "next week."  The insurers did not comply with that request.

On April 22, 2014, intervenor Fireman's Fund sent defendant a letter in which it acknowledged its defense obligation.  Fireman's Fund wrote that it "is in contact with [the] other carriers to coordinate the defense and discuss the retention of independent counsel."

On June 18, 2014, the insurers sent defendant a letter stating that they "agree to the appointment" of one of two law firms, Wilson, Elser, Moskowitz Edelman & Dicker, LLP or Kasdorf, Lewis & Swietlik, S.C. and that the insurers "seek [defendant's] input on each of these firms."  However, the insurers did not provide any information about either law firm

4

in the letter, except to refer to the firms as "independent."

By June 2014, Foley & Lardner had performed the following work on this case: (a) answered the original complaint; (b) prepared initial disclosures and a Rule 26(f) report; (c) filed a motion for a protective order with plaintiffs; (d) conducted internal interviews to gather facts regarding plaintiffs' claims; (e) issued discovery requests to plaintiffs and reviewed their responses; (f) reviewed plaintiffs' discovery requests to defendants and addressed concerns about the breadth of those requests which required the filing of a motion; (g) began the process of locating, assembling, and producing a large volume of documents that were responsive to plaintiffs' discovery requests; and (h) retained an expert and began inspections of the named plaintiffs' homes.

In a letter dated June 24, 2014, defendant told the insurers that it believed that the insurers had forfeited their right to choose counsel when they agreed to provide a defense under a reservation of rights. Accordingly, defendant stated that it was going to continue with Foley & Lardner.

In a letter dated July 16, 2014, the insurers stated that they believed that they had the right to choose counsel and they again gave defendant the choice between the two law firms identified in the June 18 letter.

After receiving the July 16 letter, defendant retained separate counsel for the purpose of resolving the dispute with the insurers. In a letter dated August 4, 2014, defendant's counsel stated defendant's position that "Foley was retained as defense counsel many months ago with the knowledge and consent of its insurers. The identities of the lawyers

working on the case, along with hourly rates were approved, at least implicitly.  Kolbe intends on holding the insurers to this agreed-to defense arrangement."

In a letter dated August 22, 2014, the insurers stated that they were selecting the law firm of Wilson, Elser, Moskowitz Edelman & Dicker, LLP to represent defendant because defendant refused to choose either of the law firms the insurers identified.  In addition, the insurers stated that they were directing Wilson Elser to make an appearance on defendant's behalf in this case and defendant's "continued rejection of this position will be taken as a rejection of coverage under the respective policies."  (As it turns out, Wilson Elser did not make an appearance in the case.)

On November 5, 2014, the insurers filed a motion to intervene in this case.  I granted that motion on December 10, 2014, telling the insurers that they were "free to file a motion for summary judgment on the issue of defendant's choice of counsel at any time."  Dkt. #101 at 10.  Although the insurers had previewed most of their argument on that issue in their motion to intervene, they waited another three weeks to file a motion seeking a declaration.  The insurers then sought extensions of time to file reply materials and to respond to defendant's cross-motion on the counsel issue.  Dkt. ##130 and 183.

Wilson Elser represents Fireman's Fund in seven pending cases.  Two of Wilson Elser's lawyers were employed previously by Fireman's Fund.

OPINION

A.  Cross Motions for Summary Judgment

When an insurer agrees to defend and indemnify an insured in a lawsuit, the general rule is that the insurer gets to control the defense.  HK Systems, Inc. v. Admiral Insurance Co., No. 03 C 0795, 2005 WL 1563340, at *4 (E.D. Wis. June 27, 2005) (citing Eric Mills Holmes, Appleman on Insurance 2d § 136.1, at 4 (2003)).  This makes sense because, under those circumstances, it is the insurer rather than the insured that will have to pay a potential judgment.  However, when, as in this case, an insurer agrees to defend an insured under a reservation of rights to contest its obligation to indemnify, a conflict of interest may arise because the insured has a greater interest in having the best possible defense while the insurer has a greater interest in keeping costs down.  The parties assume in their briefs that a conflict of interest exists between defendant and its insurers in this case because the insurers agreed to defend defendant under a reservation of rights and that, as a result of the conflict, defendant rather than its insurers has the right to control its counsel.  Accordingly, I need not consider those issues.

The key question raised by the parties' motions is the extent to which defendant's right to *control* counsel includes the right to *choose* counsel in a case such as this one in which the policies at issue give the insurer the "right and duty" to defendant its insured.   The parties assume that Wisconsin law governs this question, so I will do the same.  RLI Insurance Company v. Conseco, Inc.,  543 F.3d 384, 390 (7th Cir. 2008).  However, neither side cites case law from the Wisconsin Supreme Court or the Wisconsin  Court of Appeals

that addresses the right to choose counsel when an insurer provides a defense under a reservation of rights.  Defendant says that "there are a number of Wisconsin Court of Appeals decisions holding that the insured has a right to choose counsel" when the insurer defends under a reservation of rights, Dft.'s Br., dkt. #125, at 13, but the cases defendant cites say only that the insured has the right to "control" counsel in that situation, Jacob v. West Bend Mutual Insurance Co., 203 Wis. 2d 524, 536, 553 N.W.2d 800, 805 (Ct. App. 1996); Grube v. Daun, 173 Wis. 2d 30, 75, 496 N.W.2d 106, 123 (Ct. App. 1992), a proposition that the insurers do not deny in their motion.  Rather than citing controlling precedent, the parties cite opposing district court decisions from the Eastern District of Wisconsin.  Compare HK Systems, 2005 WL 156334 (insurers who defend under reservation of rights retain right to choose "independent" counsel) with Nowacki v. Federated Realty Group, Inc., 36 F. Supp. 2d 1099 (E.D. Wis. 1999) (insured has right to choose counsel when insurer provides defense under reservation of rights).

The insurers also cite American Motorists Insurance Co. v. Trane Co., 544 F. Supp. 669 (W.D. Wis. 1982), in which I stated that, "[w]here there is a conflict [of interest between the insurer and insured], the insurer must *either* provide an independent attorney to represent the insured *or* pay the costs incurred by the insured in hiring counsel of the insured's own choice."  Id. at 686 (citing U. S. Fidelity and Guaranty Co. v. Louis A. Roser Co., 585 F.2d 932, 939 (8th Cir. 1978)) (emphasis added).  However, the relevant issue in that case was whether the insurer had breached its contract with the insured by refusing to defend the insured because of a conflict of interest. I did not need to decide the extent to

which the insurer or the insured has the right to choose counsel when there is a conflict. Outside Wisconsin, jurisdictions are split on the question whether the insurer or the insured has the right to select counsel when the insurer agrees to defend the insured under a reservation of rights.   Arnold P. Anderson, <u>Wisconsin Insurance Law</u> vol. II, ch. 7, § 7.96 (6th ed. 2010).

For the sole purpose of deciding the parties' cross motions for summary judgment, I will assume that insurers have a right to choose counsel even when they defend the insured under a reservation of rights.  Even making that assumption, however, I conclude that defendant is entitled to summary judgment because the insurers lost whatever right they had through their own inaction.

It is undisputed that defendant tendered its defense to the insurers the day after plaintiffs filed their complaint.  After that, the insurers did not object or otherwise place any restrictions on defendant with respect to counsel over the course of four months when defendant took the following actions:

- on February 19, 2014, when defendant informed its insurers that it was seeking counsel;

- on February 21, 2014, when defendant informed its insurers that it had chosen Foley & Lardner as counsel;

- on February 24, 2014, when counsel from Foley & Lardner held a conference call with the insurers and informed them of the firm's experience and rates;

- on March 4, 2014, when defendant informed the insurers that Foley &

Lardner was preparing an answer (which was due by March 10, 2014); defendant stated that it was "await[ing] [the insurers] responses with regard to [their] coverage positions";

- on March 28, 2014, when defendant informed the insurers that it had received its first invoice from Foley & Lardner and again asked the insurers for their coverage positions.

It was not until June 18, 2014, four months after defendant tendered its defense, that the insurers informed defendant that they did not want defendant to use Foley & Lardner as counsel, but instead wanted defendant to choose one of two different law firms. Even then, the insurers provided no information to defendant about those firms except for their names. Although the insurers referred to the firms as "independent," the insurers did not provide any foundation for that statement.

Defendant argues that insurers' conduct prohibits them from arguing now that they have a right to choose counsel. Defendant characterizes this argument in several ways: (1) the insurers "allowed" defendant to choose Foley & Larder or "consented" to defendant's choice; (2) the insurers should be estopped from requiring defendant to switch counsel because defendant relied on the insurers' failure to object; (3) the insurers did not act in good faith; and (4) the insurers did not choose "truly" independent counsel for defendant because Wilson Elser has an ongoing relationship with intervenor Fireman's Fund. Of these arguments, I believe that estoppel is the strongest.

As defendant points out, the Supreme Court of Wisconsin has applied the doctrine

of equitable estoppel to disputes about insurance coverage. <u>Mercado v. Mitchell</u>, 83 Wis. 2d 17, 26-27, 264 N.W.2d 532, 537 (1978). Although the parties do not cite any cases in which a Wisconsin court has considered whether estoppel may apply to the selection of counsel, numerous courts in other states have applied estoppel to the analogous issue whether an insurer may reverse a decision to provide a defense after the insurer already started providing that defense. <u>E.g.</u>, <u>Underwriters at Lloyds v. Denali Seafoods, Inc.</u>, 927 F.2d 459, 463-64 (9th Cir. 1991); <u>Pacific Indemnity Co. v. Acel Delivery Services, Inc.</u>, 485 F.2d 1169, 1173 (5th Cir. 1973); <u>Zurich Insurance Co. v. Continental Insurance Co.</u>, 101 Wash. App. 1023 (2000); <u>Providence Washington Insurance Co. v. A & A Coating, Inc.</u>, 30 S.W.3d 554, 556-57 (Tex. Ct. App. 2000); <u>Safeco Insurance Co. v. Ellinghouse</u>, 725 P.2d 217, 220-21 (Mont. 1986); <u>Maryland Casualty Co. v. Peppers</u>, 355 N.E.2d 24, 29 (Ill.1976). In any event, the insurers do not deny that estoppel may apply in this context, so I need not resolve that issue. Instead, the insurers argue that defendant cannot meet the requirements of estoppel.

Estoppel applies when a party's action or inaction induces reliance by another party and prejudices the relying party as a result. <u>Mercado</u>, 83 Wis. 2d at 26-27, 264 N.W.2d at 537. The insurers argue that defendant could not have relied reasonably on anything the insurers did or did not do because "from the outset, [the insurers] informed [defendant] that [they were] exercising [their] right to select independent counsel pursuant to the policy and Wisconsin law." Ins. Brief, dkt #185 at 15.

The insurers' argument is not persuasive for two reasons. First, the insurers do not

11

cite any evidence that they gave defendant any indication that they wanted to select different counsel until April 22, 2014, when Fireman's Fund wrote that it "is in contact with [the] other carriers to coordinate the defense and discuss the retention of independent counsel." However, that was two months after defendant tendered its defense and, even in the letter, the insurers simply say that they are "discuss[ing]" the retention of independent counsel; they did not suggest that they had reached any decisions and they did not tell defendant that Foley & Lardner would be expected to withdraw in the future.

Second, even if the April 22, 2014 letter qualifies as notice that Foley & Lardner may need to be replaced, that does not defeat an argument of reliance by defendant. Regardless when the insurers *told* defendant that they may be selecting their own counsel, there was little that defendant could do to ready itself until the insurers actually *provided* counsel. In other words, the prejudice to defendant was not simply a matter of not knowing that the insurers might choose another firm, but rather that the insurers failed to make a selection until defendant's counsel had already invested significant time and resources into the case. Under the insurers' view, if they had informed defendant that they were considering whether to choose different counsel the day defendant tendered its defense, the insurers would be free to take as much time as they wished to make a decision regarding counsel, up until the day of trial, regardless of the disruption that it would cause to the defense.

By June 18, 2014, Foley & Lardner had already begun engaging in extensive discovery and formulating a litigation strategy, including conducting interviews, reviewing a large number of documents, retaining an expert and inspecting plaintiffs' homes. Thus, forcing

12

defendant to switch counsel at that stage could have jeopardized the work that defendant's counsel had done up to that point or at least caused significant delays as new counsel attempted to get up to speed.  Particularly because defendant would have no way of knowing whether the court would grant extensions of time while new counsel attempted to catch up, it is not surprising that defendant resisted the insurers' efforts to make the switch.  Further, because the insurers did not provide defendant any information about the law firms it chose, defendant was not in a position to accept the insurers' offer as of June 18.

The insurers argue that they were not simply sitting on their hands doing nothing before June 18.  Rather, they say that they were investigating coverage, which was complicated by the number of policies involved and the breadth of plaintiffs' claims. It is difficult to evaluate the merit of the insurers' allegation that they were investigating coverage diligently because they provide few details about what they were doing during the relevant time.  Further, even if the insurers' conduct might have been reasonable under some circumstances, they should have known that time was of the essence under the circumstances of this case.  When defendant notified the insurers of plaintiffs' claims, defendant already had been served with the complaint, so expedited consideration was required.  Every day that passed without a decision from the insurers was a day in which the case progressed further and defendant's counsel invested more resources in the defense.  Particularly because the insurers should have known that this court sets a tight schedule, they also should have known that a decision on counsel could not wait four months.

The insurers cite <u>American Design & Build, Inc. v. Houston Casualty Co.</u>, No.

11-C-293, 2012 WL 719061, at *11 (E.D. Wis. Mar. 5, 2012), and Lakeside Foods, Inc. v. Liberty Mutual Fire Insurance Co., 2010 WI App 120, ¶ 13, 329 Wis. 2d 270, 789 N.W.2d 754 (nonprecedential opinion), for the proposition that there was no undue delay.  However, the insurers' reliance on those cases is misplaced because the question in both cases was whether an insurer breached its duty to defend by waiting too long to accept the defense. The parties were *not* disputing the choice of counsel.  This is important because the prejudice to the insured may be different in both situations.  Although a four-month delay in deciding whether to defend an insured may not cause prejudice so long as the insurer agrees to make its decision retroactive and pay the costs of litigation from the time the insured tendered its defense, the same conclusion does not necessarily follow regarding the choice of counsel. Regardless whether the insurer promises to foot the bill for litigation expenses occurred before the insurer selected counsel, changing counsel after the lawsuit has progressed is more likely to be disruptive and prejudicial.  Because the courts in American Design and Lakeside Foods emphasized that the insured in those cases had not made any showing that the insurer's delay had resulted in any prejudice, those cases actually support a view that an insurer should be estopped from requiring an insured to make a prejudicial change in the middle of a lawsuit.

In this case, not only did the insurers delay in choosing counsel, they delayed in seeking relief from the court when defendant rejected their offer.  The insurers waited more than four more months after defendant rejected the insurers' offer to file a motion to intervene in this case so that the court could resolve the issue.  The insurers' only

explanation for that delay is that they were trying to resolve the issue without court assistance.  However, that argument is disingenuous in light of the fact that the insurers waited more than three weeks to even *respond* to defendant's rejection.  Further, although making every effort to settle a dispute out of court is a laudable goal in most situations, it makes little sense simply to spend months exchanging letters at a leisurely pace in the context of an ongoing lawsuit when it is clear that a prompt resolution of a decision is needed to avoid further prejudice to the insured.  Finally, defendant was clear in its June 24, 2014 letter to the insurers that it believed it had the right to keep Foley & Lardner as counsel.  After that point, any further attempt to resolve the issue through mere persuasion was not an efficient use of time.

By the time that the insurers filed their motion for summary judgment on the selection of counsel issue, the case had been proceeding for more than ten months. (Although the insurers sought to stay the case while the coverage issue was pending, I denied this motion in accordance with this court's consistent practice in recent years.  Dkt. #101 at 9 (citing Neri v. Monroe, No. 11-cv-429-bbc (W.D. Wis. 2011); Biewer-Wisconsin Sawmill, Inc. v. Fremont Industries, Inc., 2007 WL 5517466, *1 (W.D. Wis. 2007); Solofra v. Douglas County, 2005 WL 3059488 (W.D. Wis. 2005); Wimmer v. Rental Service Corp., 2005 WL 949328 (W.D. Wis. 2005).)  The motion for summary judgment was not fully briefed until two months later, in part because of extensions of time sought by the insurers.  By that time, defendant had filed a 70-page motion for partial summary judgment. Thus, at this point, it would be impossible to grant the insurers' motion without causing

substantial prejudice to defendant or completely resetting the schedule in this case, which is already on a slower track than the vast majority of cases in this court.  Under these circumstances, it would not be fair to defendant (or plaintiffs) to allow the insurers to stall the proceedings by substituting new counsel.  The insurers' insouciance regarding the developments in a pending lawsuit in a fast-paced court is simply not justified.

Fireman's Fund Insurance Co. v. Waste Management of Wisconsin, Inc., 777 F.2d 366 (7th Cir. 1985), is instructive.  In that case, after the insured was sued, it retained counsel and tendered its defense to its insurer.  The insurer agreed to defend the insured under a reservation of rights and then made no objection to the insured's choice of counsel and did not suggest retaining other counsel until a few months later.  Id. at 368.  At that point, the insured refused to accept the new counsel.  Both the district court and the Court of Appeals for the Seventh Circuit concluded that the insurer was not entitled to impose its own choice of counsel on the insured after not objecting for several months.  Id. at 369.

The insurers in this case point out that in Fireman's Fund, the court directed the parties to choose new independent counsel.  However, this was only because counsel for the insured chose had a conflict of interest with the insurer.  Id. at 370.  As a result of that conflict, the court "adopted the equitable suggestion of permitting [the insured] to select new independent counsel . . . but subject to the approval and at the expense of" the insurer.  Id. Because the insurers have not identified any conflicts they have with Foley & Lardner, I see no reason to require the selection of new counsel.

The insurers object to Foley & Lardner on the ground that the law firm has been

16

"uncooperative," but the only example of this the insurers discuss in their briefs is that Foley & Lardner did not inform them of a settlement conference until after the conference occurred. The insurers cite no authority for the view that they are entitled to participate in every settlement discussion, but even if I assume that they are, the insurers have not shown that a single slight is a sufficient ground to remove Foley & Lardner from the case. The insurers do not dispute defendant's statement that since the one oversight, defendant has asked for the insurers' input on settlement offers. Schellinger Decl. ¶ 16, dkt. #127.

The insurers also object to Foley & Lardner on the ground that its rates are higher than the law firm the insurers chose. However, neither side develops an argument on the question whether there should be a "reasonable rate" cap on defendant's choice and, if so, whether Foley & Lardner's rates are reasonable. HK Systems, 2005 WL 1563340, at *18 (concluding that "the insurer's responsibility for defense costs extends only to a reasonable charge"). Accordingly, I conclude that it would be premature to resolve that issue in the context of this order.

## B. Motion to Dismiss Counterclaims

Defendant has asserted counterclaims against the insurers for bad faith and breach of their duty to defend. Both claims relate to the same alleged conduct after defendant tendered its defense. In particular, defendant alleges that the insurers violated its rights by:

a. Failing to act promptly upon receiving a request for a defense;

b. Failing to promptly and clearly communicate with defendant regarding their position on the selection of defense counsel;

c. Failing to promptly respond to defendant's correspondence;

d. Attempting to interfere with defendant's relationship with defense counsel and control the defense by insisting that defendant change defense counsel without any reasonable basis;

e. Undertaking to replace defendant's defense counsel in ongoing litigation without expressing any reasonable basis to defendant for doing so;

f. Threatening to deny coverage under the insurance policies unless defendant agreed to allow the  insurers to direct new defense counsel to  file a notice of appearance;

g. Acting in reckless disregard of defendant's rights by insisting on a change of defense counsel without any reasonable basis;

h. Acting in its own best interests, regardless of the interests of its insured; and

i. Interfering with defendant's right to direct its defense through independent counsel.

Dkt. #108, ¶ 47.  Intervenor Fireman's Fund has moved to dismiss these claims, but I am denying the motion as premature.

The parties' briefs focus on the question whether the nonprecedential decision, Lakeside Foods, Inc. v. Liberty Mutual Fire Insurance Co., 2010 WI App 120, 329 Wis. 2d 270, 789 N.W.2d 754, supports defendant's claims.  As noted above, in that case, the court considered whether an insurer's three-month delay in responding to an insured's tender of defense qualified as a breach of the duty to defend.  In addition, the court considered whether the insurer committed the tort of bad faith by delaying its response, attempting to impose its own choice of counsel on the insured and refusing to pay all of the insured's attorney fees.  The court of appeals affirmed the dismissal of the breach of contract claim on the ground that the insured had "not identified any prejudice or damages suffered as a

18

result of the delay. " Lakeside Foods, 2010 WI App 120 at ¶ 43.  However, the court concluded that a genuine issue of material fact existed on the bad faith claim because of conflicting evidence regarding the parties' agreement on attorney fees.

The parties seem to agree that Lakeside Foods stands for the proposition that an insured asserting a claim for bad faith or breach of a duty to defend must show that the insurer's conduct damaged the insured and both sides frame their arguments around that issue.  The insurers argue that defendant cannot show any damages because the insurers have agreed to pay for defendant's attorney fees related to the defense of this case.  In response, defendant says it has suffered consequential damages in the form of attorney fees because it was forced to hire separate counsel devoted solely to the disputes surrounding coverage.  Dft.'s PFOF ¶ 75, dkt. #206.  The insurers do not argue that they have offered to pay those fees.  Instead, in their reply brief, the insurers argue for the first time and without citing authority that defendant could recover those attorney fees only "where an insured wrongfully denies coverage."  Ins. Br., dkt. #189, at 5.  However, because this argument is undeveloped and was not raised in the insurers' opening brief, I conclude that it is forfeited for the purpose of the motion to dismiss.

The insurers also argue that Lakeside Foods supports the view that any delays in making coverage decisions in this case were reasonable as a matter of law.  However, the court did not make any determination in Lakeside Foods about what qualified as a reasonable amount of time in making those decisions.  Instead, the court stated simply that "neither party points to any case law indicating what length of time is acceptable for an

19

insurer's response."  Lakeside Foods, 2010 WI App 120 at ¶ 43.  In rejecting the insured's claims related to the insurer's delay, the court relied entirely on the lack of prejudice to the insured.   Because the insurers do not develop an argument about reasonableness beyond citing Lakeside Foods, I decline to resolve that issue in the context of a motion to dismiss.


ORDER

IT IS ORDERED that

1. Intervenor United States Fire Insurance Company's motion to join intervenor Fireman's Fund Insurance Company's motion for summary judgment, dkt. #114, is GRANTED.

2. Intervenor Fireman's Fund's motion for summary judgment, dkt. #109, is DENIED.

3. Intervenor Fireman's Fund's motion to dismiss, dkt. #115, is DENIED.

4. Defendant Kolbe & Kolbe Millwork Co, Inc.'s motion for summary judgment with respect to the issue whether it is entitled to keep Foley & Lardner as counsel at the insurers' expense, dkt. #124, is GRANTED.  This order does not resolve the issue of the

reasonableness of Foley & Lardner's fees.

Entered this 1st day of April, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge