IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY HALEY and MICHAEL HALEY,
LESLIE BANKS and JAMES HAL BANKS,
ANNIE BUINEWICZ and BRIAN BUINEWICZ,
TERRANCE McIVER and JEAN ANN McIVER,          OPINION AND ORDER
SUSAN SENYK and CHRISTIAN SENYK,
MATTHEW DELLER and RENEE DELLER,
PATRICIA GROOME,[1] GARY SAMUELS              14-cv-99-bbc
and MARIE LOHR, on behalf of themselves
and all others similarly situated,

                           Plaintiffs,

              v.

KOLBE & KOLBE MILLWORK CO., INC.,

                  Defendant,

        and

FIREMAN'S FUND INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

                  Intervenor Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is a proposed class action in which plaintiffs Mary and Michael Haley, Leslie and

James Hal Banks, Annie and Brian Buinewicz, Terrance and Jean Ann McIver, Susan and

_____

        [1] On November 6, 2014, the parties agreed to add "Patricia Samuels," the spouse of
plaintiff Gary Samuels, as a named plaintiff, dkt. #86, but at her deposition, she testified
that her name is "Patricia Groome." Dkt. #160 at 2.  Therefore, I am amending the caption
to reflect her correct name.

Christian Senyk, Matthew and Renee Deller, Patricia Groome, Gary Samuels and Marie Lohr, on behalf of themselves and all others similarly situated, allege that defendant Kolbe & Kolbe Millwork Co. sold them defective windows that leak and rot. Plaintiffs have alleged common law and statutory claims that defendant breached express and implied warranties, negligently misrepresented the condition of the windows they sold, were negligent in the manufacture and design of the windows, made fraudulent representations and have been unjustly enriched. Before the court is defendant's motion for partial summary judgment, dkt. #164, in which defendant argues that many of plaintiffs' claims are barred by the statute of limitations and the economic loss doctrine and that plaintiffs have failed to establish the elements of some of their claims. Although plaintiffs challenge defendant's statute of limitations arguments with respect to the express warranty and fraudulent misrepresentation claims, they do not make any arguments in opposition to defendant's challenges to plaintiffs' claims of implied warranty, negligence and unjust enrichment and have not proposed any supplemental findings of fact in support of those claims. Also before the court is plaintiffs' motion for leave to file a surreply to respond to an argument defendant raised in its reply brief relating to the length of the Buinewiczes' warranty period. Dkt. #214.

For the reasons explained below, I am granting defendant's motion for summary judgment with respect to the following claims:

(1) The Buinewicz plaintiffs' express warranty claims based on a one-year warranty period.

2

(2) The McIver plaintiffs' express warranty claim related to the windows remaining free of defects for 10 years.

(3) The express warranty claims brought by all of the plaintiffs related to statements made by defendant in its advertising and product literature.

(4) The implied warranty claims brought by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs.

(5) The fraudulent misrepresentation claim brought by the Groome and Samuels plaintiffs.

(6) The negligence, negligent misrepresentation and unjust enrichment claims brought by all plaintiffs.

Defendant's motion will be denied with respect to (1) the Banks, Lohr, Senyk and Deller plaintiffs' express warranty claims related to defendant's representation that the windows would remain free from defects for 10 years; and (2) the McIver and Senyk plaintiffs' express warranty claims based on defendant's failure to honor its promise to repair, replace or pay for the defective windows. Plaintiffs' motion for leave to file a surreply will be granted.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Defendant Kolbe & Kolbe Millwork Co. is a Wisconsin corporation that designed, manufactured, warranted, advertised and sold windows installed in plaintiffs' homes.

### A. Mary Haley and Michael Haley

3

These plaintiffs live in Alden, Michigan. In 2010, they purchased windows from defendant through their builder, Old Mission Windows, a distributor for defendant. Defendant provided a 10-year warranty that the windows "shall be free from defects in material and workmanship that would render them unserviceable or unfit for the ordinary use for which each window . . . is manufactured." Under this warranty, defendant was obligated to repair, replace or refund the purchase price for any window that was defective. The warranty also included a Wisconsin choice of law provision.

In December 2010, plaintiffs noticed that their windows were warping and condensation was forming on them. The distributor inspected the windows and told plaintiffs that "condensation is normal" and that the problem was "a humidity issue." Even though the distributor adjusted the windows, plaintiffs continued to observe condensation.

Sometime between November 2012 and the end of the winter in 2013, plaintiffs asked defendant to replace their windows. In October 2013, plaintiffs repeated this request. When defendant refused it, plaintiffs concluded that defendant was not going to honor the warranty on the windows.

### B. Leslie Banks and Hal Banks

The Banks reside in Pensacola, Florida and purchased windows from defendant as part of the construction of their new home in 2002. The windows were installed in 2003 and came with a 10-year warranty and Wisconsin choice of law provision similar to the one

4

the Haleys received.  Plaintiffs observed rot in their window sashes within two years, and by 2007, they had observed ten rotting window sashes.

During a hurricane in 2004, the Banks observed water coming in underneath two bedroom windows and puddling on the carpet.  By 2005, there were "a lot" of rotten window sashes.  In 2006, Ms. Banks had water testing performed on the window and was advised that an exterior sealant would solve the problem.  Defendant replaced every sash in the Banks home in 2007.

During 2007, plaintiffs' windows began leaking again and one replacement sash had rot.  In late November or early December 2007, the Banks had another water test, which showed that a window in the office had failed because of leaking that had caused the failure of the milled joints.  Defendant's representative visited their home in January 2008 and told them that the problem was caused by cladding that was too short.  Defendant replaced 25 of the sashes it had replaced earlier.

In 2010, plaintiffs' windows began leaking again.  Defendant blamed the problem on "weep holes."  In 2011, defendant performed further testing and sent plaintiffs a letter saying that it would not replace any more sashes because the majority of the water problems were caused by flaws in the waterproofing of plaintiffs' home and not by defects in the windows.  The letter caused the Banks to conclude that defendant was not going to honor the warranty on their windows.

## C. Annie and Brian Buinewicz

These plaintiffs reside in Doylestown, Pennsylvania and acquired their windows through a distributor as part of the construction of their new home in 1997. The Buinewiczes received a warranty that "the windows shall be free from defects in materials and workmanship" for a period of one year from the date of purchase. Under this warranty, defendant was obligated to repair or replace any window that was defective. The one-year warranty did not contain a choice of law provision. Plaintiffs' windows had a special paint, known as the "K-Kron system," that came with a 10-year warranty, guaranteeing "film integrity" and promising that the windows "will resist cracking, peeling, flaking, etc. of the applied paint film."

In the spring of 2003, plaintiffs discovered that the frame, sash and sill of their son's bedroom window had rotted. Plaintiffs called their builder, who discovered more deteriorating windows. Defendant and its distributor replaced the deteriorated pieces of the windows. By 2007, the Buinewiczes noticed additional rot on the windows in their son's bedroom window and the family room. Further inspection by the builder, the distributor and defendant revealed that additional replacements were needed in many windows throughout plaintiffs' home. Defendant replaced the deteriorating pieces of the windows in 2007. Plaintiffs noticed more rot in the summer of 2013 but defendant declined the claim on the ground that it fell outside the warranty period.

### D.  Terrance and Jean Ann McIver

The McIvers reside in Kalamazoo, Michigan and purchased their windows between 2000 and 2002.  The windows came with a 10-year warranty similar to that received by the Haleys but with no choice of law provision.  Between 2005 and 2008, plaintiffs noticed that their windows were cracking.  They saw chipped and cracked paint and wood grain appearing through the paint.  The changes were gradual and worsened over time.  In the fall of 2008, defendant's representative visited their home and told the McIvers that the cracks were the result of normal joint movement and that they should paint the windows.  (Although the undisputed facts state only "2008," plaintiffs alleged in their complaint that this discussion occurred in or around October 2008.  Dkt. #34 at ¶ 84.)  Plaintiffs interpreted this as defendant's failure to honor its warranty.

### E.  Susan and Christian Senyk

The Senyks reside in Collegeville, Pennsylvania and received the windows for their new home in 2003.  The windows came with a 10-year warranty and Wisconsin choice of law provision similar to that received by the Haleys.  In 2008, plaintiffs noticed that a window in their living room was leaking and that other windows had rot.  They contacted the distributor in the spring of 2009.  A representative from the distributor inspected the windows and later informed the Senyks that defendant would not honor the warranty because the windows had not been properly maintained.  Plaintiffs concluded in the summer of 2009 that defendant was not going to honor the 10-year warranty even though the 10-

7

year period had not yet expired.  In 2012, plaintiffs noticed more rotting in a basement window, and by 2013, they realized that several windows had to be replaced because of serious rotting.

### F.  Matthew and Renee Deller

The Dellers reside in Troy, Ohio.  Defendant's windows were installed in their new home in 2004 and came with a 10-year warranty and Wisconsin choice of law provision similar to that received by the Haleys.  In 2008 or 2009, Renee Deller noticed that all of the windows on the northwest side of the house had been leaking down the middle of the pane during rain storms.  Matthew Deller believed that it was due to the severity of the storms. When they later noticed leaks in windows in other areas of the house in 2013, they suspected that there could be a problem with the remaining windows.  In the spring of 2013, Matthew Deller inspected the windows and saw that the weather stripping had separated from the sashes of two windows and was hanging off the outside of the house.  After closer inspection, the Dellers learned that the windows were rotting.  The distributor inspected the windows and told the Dellers that the problems were caused by humidity.  Defendant agreed to replace two sashes, but Matthew Deller found that unacceptable because he believed that defendant should replace all of the sashes showing water damage.  Matthew Deller met with defendant and the distributor in October 2013 and asked that at least four sashes be replaced.  Defendant agreed and stated that the other leaks could be dealt with by adjusting the windows.  Because defendant replaced only four windows, plaintiffs concluded that defendant was not going to honor its warranty on the remaining windows.

G. <u>Patricia Groome and Gary Samuels</u>

These plaintiffs reside in Deering, New Hampshire. The windows were installed in their new home in the fall of 2010 and came with a 10-year warranty and Wisconsin choice of law provision similar to that received by the Haleys. Plaintiffs first noticed moisture, ice and black growth on some of their windows in the winter of 2011-2012. Defendant told them that the problem was humidity in their house and recommended installing a dehumidifier. In January 2014, plaintiffs requested replacement products under the warranty. Defendant responded by mailing them information about controlling humidity in their home. From this, plaintiffs concluded that defendant was not going to honor its warranty.

H. <u>Marie Lohr</u>

Plaintiff Lohr is a resident of Sun Prairie, Wisconsin, who had approximately 30 Kolbe windows installed when her home was built in 2001. The windows came with a 10-year warranty similar to the one the Haleys received but with no choice of law provision. The windows developed condensation within months of their installation and began to rot and deteriorate over the next few years. In 2010, plaintiff contacted the supplier and then defendant, which told her that finishing the bottom of the sashes was important. Defendant replaced some of the sashes in 2010 but the sashes began to rot in 2011. Plaintiff concluded that defendant was not going to honor its warranty when defendant told plaintiff that it

9

would not replace any more sashes and that her replacement windows were not covered by a warranty.

OPINION

I. EXPRESS WARRANTY

As an initial matter, I note that there is some confusion over what types of express warranty claims plaintiffs are bringing.  In count 1 of their first amended complaint, plaintiffs allege that defendant breached its express warranty because their windows did not remain free from defects for a period of ten years and because defendant failed to repair, replace or refund the price of the defective windows as promised under the warranty.  Dkt. #34 at 21-22, ¶¶ 112 and 115.  Defendant has interpreted these allegations as possibly stating two different types of express warranty claims:  a "no defect express warranty claim" that relates to the windows failing and a "failure to honor express warranty claim" relating to defendant's denial of plaintiffs' warranty claims.  In addition, plaintiffs generally allege in the fact section of their complaint that defendant breached promises it made in its advertising and product literature.  Dkt. #34 at ¶¶ 20-21, 36.  Defendant states that even though it is not clear that plaintiffs are asserting an express warranty claim related to the advertising statements, it has assumed for the purpose of its summary judgment motion that plaintiffs have brought a separate "advertising statements express warranty claim."

Apart from including a short discussion of the merits of the advertising statement claims in their response brief, plaintiffs ignore defendant's characterization of their claims

and make general arguments relating to accrual, equitable estoppel and the merits of their warranty claims. Although the parties do not cite any Wisconsin cases that have distinguished these types of warranty claims in the context of statutes of limitations, one treatise notes that an "area that has engendered considerable confusion in the courts regarding accrual of the cause of action is when the seller promises 'to repair or replace defective goods' for a set time period." 2 William D. Hawkland, Uniform Commercial Code Series § 2-725:2 (2015). Some courts have held that a promise to repair or replace is not truly a warranty because it does not relate to the goods or their quality, while others view such a promise as an express warranty. 9 Business & Commercial Litigation Federal Courts § 101:30 (3d ed.). See also 2 Hawkland, § 2-725:2 ("The correct analysis is to separate the cause of action for breach of the warranty and the cause of action for breach of the repair promise."); Lewis v. Pella Corp., 2014 WL 7264893, at *8 (D.S.C. Dec. 18, 2014) (analyzing the shipment of defective windows and failure to sufficiently repair or replace windows as separate breaches of plaintiff's express warranties). Because there is some support for defendant's analysis, and plaintiffs do not object, I will consider the "no defect," "failure to honor" and "advertising statements" to be distinct express warranty claims for the purpose of deciding this motion and will analyze them separately.

A.  The Buinewiczes' Warranty Period

It is undisputed that the warranty the Buinewiczes received in 1997 provided that "the windows shall be free from defects in materials and workmanship" for a period of one

year from the date of purchase.  Because the Buinewiczes first discovered rot in one of their windows in 2003, six years after the warranty period ended, defendant contends that they cannot show that defendant breached the "no defect" warranty.  In response, plaintiffs point out that the K-Kron system applied to their windows was subject to a separate warranty that guaranteed "film integrity" that "will resist cracking, peeling, flaking, etc. of the applied paint film" for 10 years.  Although defendant admits that plaintiffs had such a warranty, it contends in its reply brief that the Buinewicz plaintiffs have not alleged any failure in the paint film in the first amended complaint or adduced any evidence of cracking, peeling or flaking paint film in response to the motion for summary judgment.  Plaintiffs note that defendant did not make any arguments related to the merits of their claim until defendant filed its reply brief.  Plaintiffs have moved for leave to file a surreply brief to explain their allegations concerning the K-Kron warranty.  Because the surreply will aid the court in deciding the motion for summary judgment and it is attached to its motion, I am granting plaintiffs' request and will take the arguments in the surreply brief into consideration.

As defendant argues, several allegations in plaintiffs' first amended complaint focus on rotting and leaking windows and not on the paint film.  Dkt. #1, ¶¶ 69-71.  However, plaintiffs have made specific allegations concerning the K-Kron finishing process, including an allegation that defendant knew that "K-Kron was a defective sealant, yet continued to produce hundreds of thousands of windows using its K-Kron system."  Id. at ¶¶ 20 and 36.  Although plaintiffs did not adduce evidence specifically related to the K-Kron system in response to the motion for summary judgment, they did not have to do so.  Initially,

defendant challenged the Buinewiczes' claim as untimely under the one-year warranty and assumed incorrectly that plaintiffs would not be proceeding on a claim under the 10-year K-Kron warranty. It is too late to address the merits of the K-Kron warranty claim on summary judgment. Accordingly, defendant's motion for summary judgment will be granted with respect to the Buinewiczes' "no defect" and "failure to honor" express warranty claims only to the extent that plaintiffs seek to rely on the one-year express warranty. (Plaintiffs' advertising statement warranty claims will be addressed in a separate section of this opinion.)

### B. "No Defect" Warranty

Defendant contends that the "no defect" warranty claims brought by the Banks, Buinewicz and Lohr plaintiffs are barred by the six-year Wisconsin statute of limitations, Wis. Stat. § 402.725(1), and those brought by the McIver, Senyk and Deller plaintiffs are barred by the four-year statutes of limitations in their states of residence (Michigan, Pennsylvania and Ohio, respectively). (Although defendant argued that the Buinewiczes' warranty period was limited to one-year, it assumed for purposes of this argument that the windows failed within the warranty period.) Defendant does not seek dismissal of the "no defect" claims brought by the Haley, Samuels or Groome plaintiffs. The parties dispute four main issues with respect to these claims: (1) which state's statute of limitations apply to the McIver, Senyk and Deller plaintiffs; (2) when the statute of limitations began to accrue on each of the plaintiffs' claims under the applicable statute of limitations; (3) whether the

statute of limitations should be tolled; and (4) whether defendant should be equitably estopped from asserting a statute of limitations defense.


1. McIver, Senyk and Deller statute of limitations

a. Borrowing statute

The parties agree that Wisconsin's borrowing statute, Wis. Stat. § 893.07(1), is triggered in diversity cases in which the laws of a foreign jurisdiction may be possibly implicated. Faigin v. Doubleday Dell Publishing Group, Inc., 98 F.3d 268, 269 (7th Cir. 1996) (court must look to borrowing statute to decide which statute of limitations will govern in diversity case). That statute provides that "[i]f an action is brought in this state on a foreign cause of action and the foreign limitation period of limitation which applies has expired, no action may be maintained in this state." § 893.07(1). In the contracts context, a cause of action is "foreign" when "the final significant event giving rise to a suable claim occurs outside the state of Wisconsin." Abraham v. General Casualty Co. of Wisconsin, 217 Wis. 2d 294, 311, 576 N.W.2d 46, 53-54 (1998) (agreeing with reasoning in Terranova v. Terranova, 883 F. Supp. 1273, 1281 (W.D. Wis. 1995)). Plaintiffs contend that their claims are not foreign because the final significant event was defendant's decision to deny the warranty, which was made in Wisconsin. Defendant argues that the final significant event was the appearance of the defects in the windows, which occurred in the plaintiffs' home states.

14

I agree with defendant. With respect to these particular claims, plaintiffs allege that defendant breached the warranty because plaintiffs' windows did not remain free from defects for a period of 10 years from the date of purchase. Because I am considering the "no defect" claims separately from the "failure to honor" claims, this means that the breach of the "no defect" claims was not defendant's refusal to repair, replace or pay for the defective windows, but the failure of the windows themselves, which occurred in the states in which the plaintiffs reside. Selzer v. Brunsell Brothers, 2002 WI App 232, ¶¶ 16-17, 257 Wis. 2d 809, 822-23, 652 N.W.2d 806, 812 (plaintiff's breach of warranty claim accrued at time breach occurred, which was when he discovered window rot). Accordingly, under the borrowing statute, the McIver, Senyk and Deller claims are subject to a four-year statute of limitations. Although this resolves the question with respect to the statute of limitations applicable to the McIvers, the analysis is more complicated for the Senyks and the Dellers because their warranties contain a Wisconsin choice of law provision.

b. Contractual choice of law provision

Although defendant acknowledges that the Wisconsin choice of law provision in the Senyk and Deller warranties applies to the "no defect" claims, dkt. #165 at 17-18, it argues that in the case of the Dellers, the borrowing statute trumps the choice of law provision in the warranty. (Defendant does not make this argument with respect to the Senyks because it maintains that their "no defect" claims are untimely under both the four- and six-year statutes of limitations periods. Dkt. #165 at 21.) Defendant relies on this court's decision

15

in Jahn v. 1-800-FLOWERS.COM, Inc., 2002 WL 32362244, at *9 (W.D. Wis. Oct. 21, 2002), in which the question was whether the choice of law provision in the contract at issue should determine the controlling statute of limitations.  I noted that "Wisconsin courts respect the choice of law in the contract provided that 'to do so [will not be] at the expense of important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded.'"  Id. (quoting Bush v. National School Studios, Inc., 139 Wis. 2d 635, 407 N.W.2d 883, 886 (1987)).  As in this case, the parties in Jahn did not raise any public policy concerns on the part of the plaintiffs' home states.  As a result, the determinative question was whether the language of the contract's choice of law provision encompassed the statute of limitations.  Id. at 10.  In Jahn, I concluded that because the parties' contract provided that the agreement "shall be . . . *enforced in accordance with* the laws of the State of Texas," the choice of law provision unambiguously included Texas's statute of limitations.  Id. (emphasis added).

Defendant contends that the choice of law provision in this case cannot be interpreted to encompass the statute of limitations because it states that the warranty "shall be *governed by and construed in accordance with* the laws of the State of Wisconsin" and not "enforced in accordance with."  Dkt. #167, exh. C (emphasis added).  Defendant does not explain why it believes that the distinction is important, and I see no reason why it should be.

The warranty does not define the term "govern," so I must assign the word its plain and ordinary meaning.  First Bank & Trust v. Firstar Info. Services, Corp., 276 F.3d 317,

16

323 (7th Cir. 2001) (applying Wisconsin law in interpreting contract); North Gate Corp. v. National Food Stores, Inc., 30 Wis. 2d 317, 321, 140 N.W.2d 744, 747 (1966). To "govern" means "to control the way that (something) is done" or "to control or guide the actions of something or someone." http://www.merriam-webster.com/dictionary/govern. Because the statute of limitations controls the way the warranty is enforced and dictates when the parties may take action with respect to the warranty, I conclude that the Dellers' choice of law provision unambiguously includes the Wisconsin statute of limitations. (Although defendant says that a choice of law analysis is not necessary for the Senyks' claim, the same reasoning would hold true for those plaintiffs.)

In sum, the "no defect" claims filed by the Senyk and Deller plaintiffs are subject to Wisconsin's six-year statute of limitations and the "no defect" claim filed by the McIver plaintiffs is subject to Michigan's four-year statute of limitations period.

2. Date of accrual

Plaintiffs contend that regardless whether they have a foreign cause of action under the borrowing statute, the date of accrual of their claims is determined by Wisconsin law. Scott by Ricciardi v. First State Insurance Co., 155 Wis. 2d 608, 619, 456 N.W.2d 152, 157 (1990) ("While the 'borrowed' foreign statute determines the applicable period of limitation, we look to the Wisconsin tolling law to determine if that period has expired."). Defendant does not dispute this assertion. In any event, in both Wisconsin and Michigan, when the warranty "explicitly extends to future performance of the goods," the action accrues when

17

the buyer discovers or should have discovered the breach.  Wis. Stat. § 402.725(2); Mich. Comp. Laws § 440.2725(2).

Although I will address each of the plaintiffs' individual claims separately, a few matters applicable to all of the plaintiffs merit discussion.  Defendant contends that plaintiffs' "no defect" claims accrued when they first noticed that their windows were leaking and rotting.  However, plaintiffs argue that their warranty claims accrued "when they were on reasonable notice of a systemic defect in Defendant's windows and the connection between that defect and Kolbe." Dkt. #199 at 18.  Plaintiffs use the term "systemic defect" throughout their brief but they fail to explain what they mean by it or why it matters whether the problem was systemic.  Even if only one window failed, the cause of action would accrue when the owners discovered that the window was defective, regardless whether other windows failed.  Because plaintiffs state that they "fluidly over time realized that their windows suffered from systemic design and/or manufacturing defects and that these defects were caused by Kolbe's faulty design or manufacturing," dkt. #199 at 11, I assume that they mean that they could not have discovered a defect until all, or at least a significant number, of the windows in their homes failed.  Therefore, although plaintiffs focus on the concept of a "systemic defect," the crux of their argument is that they could not have discovered the defect until they had sufficient information about what caused the windows to fail.

Plaintiffs cite a number of personal injury cases in which Wisconsin courts have held that the statute of limitations does not begin to run until the plaintiff knew or should have known the nature of their injury and its relationship to the defendant's conduct.  <u>Northridge</u>

Co. v. W.R. Grace & Co., 162 Wis. 2d 918, 923, 471 N.W.2d 179, 180 (1991); Borello v. U.S. Oil Co., 130 Wis. 2d 397, 415, 388 N.W.2d 140, 147 (1986); Rubenzer v. Associated Banc-Corp, 2012 WI App 62, ¶¶ 19-20, 341 Wis. 2d 490, 815 N.W.2d 406; Williams v. Kaerek Builders, Inc., 212 Wis. 2d 150, 157 (Ct. App. 1997). Defendant attempts to distinguish these cases by pointing out that the discovery rule for tort actions does not apply to contract actions.

It is true that "[i]n the context of general contract law, public policy favors the current rule that the contract statute of limitations begins to run at the time of breach." CLL Associates Ltd. Partnership v. Arrowhead Pacific Corp., 174 Wis. 2d 604, 611, 497 N.W.2d 115, 117 (1993). However, in CLL Associates, 174 Wis. 2d at 613, 497 N.W.2d at 118-19, the court made clear that it was considering the general statute of limitations for contracts, Wis. Stat. § 893.43, and explained that "[o]ur holding rests on the fact that policy considerations do not favor a broadly applied discovery rule in the contract context." The statute applicable in this case, § 402.725(2), specifically allows a discovery rule in a breach of warranty action related to future performance. Apart from pointing out that tort actions accrue from discovery of an "injury" and breach of warranty actions accrue from discovery of the "breach," defendant does not explain why the two rules should be treated differently or subject to a different analysis. To discover that a breach occurred, plaintiffs would have had to realize that the windows had a design or manufacturing defect, which means that defendant was the cause of the problem.

19

In any event, as I will discuss with respect to each plaintiff below, I find that plaintiffs have shown there is a genuine dispute of fact with respect to the accrual date of many of their claims. Stroh Die Casting Co. v. Monsanto Co., 177 Wis. 2d 91, 104, 502 N.W.2d 132, 137 (Ct. App. 1993) ("Generally, the 'date of discovery' is a question of fact for the jury."). It is undisputed that defendant inspected many of the windows and told the plaintiffs that other factors were causing their windows to fail. For example, defendant told the Banks over a period of several years that the problems with their windows were caused by short cladding, weep holes and inadequate waterproofing in the home. With other plaintiffs, defendant blamed the leaking and rotting on joint movement (McIvers), improper upkeep (Senyks), humidity (Dellers) and unfinished sashes (Lohr). Plaintiffs say that they relied reasonably on defendant's professional advice and exercised reasonable diligence in discovering the source of the leaking and rotting. Lawson v. London Arts Group, 708 F.2d 226, 229 (6th Cir. 1983) (finding buyer reasonably relied on art dealer's assurance that piece was good investment).

In addition, defendant either repaired or replaced the windows in the homes of the Banks, Deller and Lohr plaintiffs during the warranty period, which plaintiffs allege led to further delay in their discovery of the defects in windows that were inspected but not replaced. Defendant questions this reasoning, arguing that the need for replacement sashes should have been a sign of a defect. However, as plaintiffs point out, even though defendant replaced or repaired some of the windows, it continued to tell many of the plaintiffs that something else was causing the problem.

As discussed, the Banks, Lohr, Senyk and Deller plaintiffs are all subject to a six-year statute of limitations, meaning that their "no defect" claims are not timely unless plaintiffs could not have discovered the existence of a defect until after February 2008. Because the McIvers are subject to a four-year statute of limitations, they would have to prove that they could not have discovered a defect until after February 2010. I will turn next to plaintiffs' individual claims. (It is unnecessary to address the Buinewiczes' claim because defendant's arguments relate to the accrual date of the one-year "no defect" warranty and not the 10-year K-Kron warranty.)

a. The Banks

These plaintiffs discovered rotten sashes in some of their windows before 2005. However, in 2006, they were advised that an exterior sealant would solve the problem, and defendant replaced every sash in their home in 2007. After plaintiffs' windows began leaking again in 2007, another water test showed that a window had failed because of leaking that had caused the failure of the milled joints. In response, defendant's representative visited the Banks' home in January 2008 and told them that the problem occurred because the window cladding had been cut too short. Defendant then replaced 25 of the sashes it had replaced once before. When plaintiffs' windows leaked again in 2010, defendant blamed the problem on "weep holes." Defendant performed further testing in 2011 and told plaintiffs that the water problems were caused by flaws in their home's waterproofing and not defects in the windows. From these facts, a reasonable jury could

21

conclude that the Banks would not have been able to discover that the problem with their windows was caused by a manufacturing or design defect until after February of 2008.

b. Lohr

Lohr began seeing deterioration in her windows in approximately 2003 but did not contact defendant until 2010. The parties dispute the reason for the long wait. Plaintiff Lohr says that the problem manifested slowly and she was an inexperienced homeowner who did not know she could contact defendant. Because the windows were still under warranty in 2010, defendant replaced some rotten sashes at that time and told Lohr that the problem was not with the window and that she should have finished the wood on those sashes. However, in 2011, the replacement sashes also began to rot. Lohr concluded that defendant was not going to honor its warranty when it told her that it would not replace any more sashes and that her replacement sashes were not covered by the warranty.

Although it would be a close call, a jury could conclude that Lohr could not have known that her windows were defective in 2003 when she first noticed problems. In fact, when she contacted defendant in 2010, defendant led her to believe that unfinished sashes were the cause of the rot. From these facts, a jury could reasonably infer that Lohr could not have known of the defect until 2011 when the replacement sashes also began to rot and she concluded that defendant was not going to honor its warranty.

c. The Senyks

The Senyks noticed leaking and rotting windows in 2008 and contacted their distributor in the spring of 2009. The distributor inspected the windows and told plaintiffs in 2009 that defendant believed that the windows had not been properly maintained. Plaintiffs found further rotting in other windows in 2012 and 2013. Because the parties fail to identify exactly when in 2008 the Senyks noticed the leaking and rotting, it is possible that the claim is timely, depending on when the Senyks first discovered a problem with their windows. However, because defendant led the Senyks to believe that it was poor maintenance and not a defect that had caused the windows to fail, a reasonable jury also could conclude that the Senyks could not have discovered the defects in their windows until other windows began to fail in 2012.

d. The Dellers

In 2008 or 2009, these plaintiffs noticed that the windows on one side of their house leaked during rainstorms. However, it was not until 2013 that the Dellers noticed that windows in other areas of their home were beginning to leak. The distributor told them that the problems were caused by humidity in their home and agreed to replace only two sashes. When Mr. Deller complained, defendant agreed to replace four windows. At that point, the Dellers concluded that defendant was not going to honor its warranty,

Because the parties fail to identify exactly when in 2008 or 2009 the Dellers noticed the leaking, it is possible that their claim is timely, again, depending on when the Dellers

23

first discovered a problem with their windows.  A reasonable jury could conclude that they would not have realized that the windows were defective until after 2013, when more windows leaked and the Dellers concluded that defendant was not going to honor its warranty.

e. The McIvers

Between 2005 and 2008, the McIvers discovered that their windows were cracking. Defendant's representative visited their home in the fall of 2008 and told them that the cracks were the result of normal joint movement.  The McIvers concluded at that time that defendant was not going to honor its warranty.  Plaintiffs have not adduced any facts showing that defendant had further discussions with the McIvers or engaged in any alleged delay tactics after 2008. Although plaintiffs argue that the McIvers only recently discovered "the systemic nature of the defect in their home," they have not supported this allegation with any admissible evidence.  In their response brief, plaintiffs cite the affidavit of one of their attorneys who avers that "[d]iscovery in this matter has uncovered that the McIvers' windows suffer from extensive rot, which was only discovered through window inspections and testing by Plaintiffs' expert." Dkt. #201 at ¶ 10.  This vague reference to later discovery of rot does not suffice to raise a genuine issue of material fact with respect to the accrual date of the McIvers' claim.  Without more, the McIvers cannot show that they discovered the defect in their windows after 2008.  As a result, I find that the McIvers' "no defect" claim

24

is barred by the four-year statute of limitations applicable to their claim unless an exception applies.

3.  Tolling and equitable estoppel

Because I have found that the "no defect" claims brought by the Banks, Lohr, Senyk and Deller plaintiffs survive defendant's motion for summary judgment, it is unnecessary to discuss any tolling or equitable estoppel arguments that plaintiffs may have made with respect to those claims.  However, I will briefly address tolling and equitable estoppel with respect to the McIver plaintiffs.

Plaintiffs make only isolated references to tolling in their brief and do not make any mention of tolling with respect to the McIvers in particular.  As defendant notes, plaintiffs seem to conflate the concepts of accrual of their claims under the discovery rule and tolling of the statute of limitations.  The Court of Appeals for the Seventh Circuit has explained that

> Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured. The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" . . .
>
> *   *   *
>
> Tolling doctrines stop the statute of limitations from running even if the accrual date has passed.

Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990).  Plaintiffs generally state that the statute of limitations should be tolled because they did not know that their

windows suffered from a systemic defect; they relied on a professional's advice (including defendant's advice); and they waited for defendant to repair or replace the defective windows. However, plaintiffs make these references either in a footnote or in a brief sentence without any legal citation. Further, their discussion of these factors focuses on when their claims accrued, not on whether the statute of limitations stopped once it had begun to run. Because plaintiffs have not developed any meaningful tolling argument separate from the discovery rule, I will consider it waived. Long v. Teachers' Retirement System of Illinois, 585 F.3d 344, 349 (7th Cir. 2009) (unsupported and undeveloped arguments are waived; a party may waive an argument by disputing a district court's ruling only in footnote or one-sentence assertion that lacks citation to record evidence); Garg v. Potter, 521 F.3d 731, 736 (7th Cir. 2008) (undeveloped arguments are waived).

Equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations. Cada, 920 F.2d at 450-51 (internal citations omitted).

> Equitable estoppel in the limitations setting is sometimes called fraudulent concealment, but must not be confused with efforts by a defendant in a fraud case to conceal the fraud. To the extent that such efforts succeed, they postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of a fraud. They are thus within the domain of the discovery rule. Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time.

Id. at 451. Wisconsin courts have used a six-part test to determine whether equitable estoppel is appropriate:

26

(1) Is the defendant guilty of fraudulent or inequitable conduct?

(2) Did plaintiff fail to timely commence the action because he or she relied on the defendant's conduct?

(3) Did the defendant's questionable conduct occur before the statute of limitations expired?

(4) Did the plaintiff diligently pursue the suit after the defendant's questionable conduct ceased?

(5) Did the plaintiff rely on the defendant's conduct to his or her disadvantage?

(6) The defendant need not have engaged in actual fraud.

Williams, 212 Wis. 2d at 161, 568 N.W.2d at 318.

Plaintiffs generally argue that "Kolbe conducted itself inequitably, and the Plaintiffs, as outlined above, relied to their detriment on Kolbe's warranty process." Dkt. #199 at 27. This conclusory assertion is not sufficient to defeat summary judgment. Jones v. Merchants National Bank & Trust Co., 42 F.3d 1054, 1057 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment.") (internal quotation marks omitted); Marion v. Radtke, 641 F.3d 874, 876-77 (7th Cir. 2011) ("[W]hen a plaintiff fails to produce evidence, the defendant is entitled to judgment."). Further, it is not clear how the McIvers would have relied on defendant to their detriment within the statute of limitations period. It is undisputed that by the fall of 2008, the McIvers knew that defendant was not honoring its warranty, yet they waited almost six years, until February 2014, to file suit. Without any additional evidence of

fraudulent or inequitable conduct on defendant's part, plaintiffs cannot prevail on their equitable estoppel argument with respect to the McIvers' "no defect" claim.

## C.  "Failure to Honor" Warranties

1.  Applicable statute of limitations

Defendant contends that the failure to honor claims brought by the McIvers and the Senyks are barred by the four-year statutes of limitations in their home states.  However, as discussed above, the Senyks' warranty contained a Wisconsin choice of law provision that encompasses the six-year Wisconsin statute of limitations period.  Because the McIvers' warranty did not contain a choice of law provision, the parties agree that Wisconsin's borrowing statute governs the choice of law analysis.

Defendant contends that the McIvers' claim is a foreign cause of action because the last significant act was defendant's failure to repair or replace the windows in the McIvers' home, which is located in Michigan.  Plaintiffs argue that the action is not foreign because defendant made its decision to deny the claims at its office in Wisconsin.  In support of their argument, plaintiffs cite Abraham, 217 Wis. 2d at 312, 576 N.W.2d at 54, in which the Wisconsin Supreme Court held that a Wisconsin insurance company breached the parties' contract in Wisconsin when it denied the plaintiff's request for benefits, even though the plaintiff had sustained injuries and received medical treatment in Florida.  See also Ristow v. Threadneedle Insurance Co., 220 Wis. 2d 644, 654, 583 N.W.2d 452, 455 (Ct. App.

1998) (last significant event was defendant's nonperformance of the contract which was defendant's failure to tender payment).

Defendant attempts to distinguish Abraham and Ristow on the ground that the place of performance under an insurance contract is categorically different from the place of performance for a warranty claim. Defendant says that performance under an insurance policy involves making a payment, which would occur at the insurer's location, whereas repairing or replacing the McIvers' windows would have had to occur in Michigan, where the windows were located. I am not persuaded by defendant's reasoning. Defendant identifies a non-event as the last significant event; the windows in the Senyks' and McIvers' homes were never actually replaced or repaired. Instead, as in the insurance cases, defendant made its decision with respect to the windows at its location in Wisconsin. Further, defendant's promise was not limited to repairing or replacing the windows; it also had the option of paying for them, which would have involved cutting a check at its location in Wisconsin. As a result, I conclude that the McIvers' failure to honor claim is not a foreign cause of action and is subject to Wisconsin's six-year statute of limitations.

2. Accrual

Plaintiffs base their "failure to honor" claims on defendant's failure to repair, replace or pay for plaintiffs' defective windows. It is undisputed that the McIvers concluded in the fall of 2008 and the Senyks concluded in the summer of 2009 that defendant was not going to honor their warranties. Plaintiffs propose the same later dates of accrual for their "failure

29

to honor" claims as their "no defect" claims, arguing generally that all of their warranty claims accrued "when they were on reasonable notice of a systemic defect in Defendant's windows and the connection between that defect and Kolbe." Dkt. #199 at 18. However, as explained previously, warranty claims accrue when the buyer discovers or should have discovered the breach. For the "failure to honor" claims, the breach was not the discovery of a defect but defendant's refusal to repair, replace or pay for the windows. Plaintiffs do not attempt to explain why they would not have discovered this breach when they realized that defendant was not going to honor their warranty. Therefore, I find that the McIvers' "failure to honor" claims accrued in the fall of 2008 and the Senyks' claims accrued in the summer of 2009. Because plaintiffs filed this lawsuit on February 12, 2014, both the Senyks' and the McIvers' claims are timely under the six-year statute of limitations. Accordingly, defendant's motion for summary judgment with respect to the Senyk and McIver plaintiffs' "failure to honor" claims will be denied.

## D. "Advertising Statements" Warranty

1. Statute of limitations

a. Accrual

Plaintiffs argue that defendant offered warranties through its marketing and advertising materials, which made general promises about the quality and durability of the windows. Although the bases for their claims are not entirely clear, in their responses to some of defendant's proposed findings of fact, plaintiffs state that they relied on statements

in defendant's brochures that the windows were "low maintenance," "durable" and "rot free." E.g., Plts' Resp. to Dft's PFOF ¶¶ 45, 47, 71 and 112. Defendant contends that all but the Haley, Samuels and Groome plaintiffs' advertising statement claims are barred by Wisconsin's six-year statute of limitations because those claims accrued when their windows were delivered and not when the breach should have been discovered.

Under Wis. Stat. § 402.725(2), "[a] breach of warranty occurs when tender of delivery is made." As noted previously, the discovery rule for breach of warranty claims in § 402.725(2) applies only "where a warranty explicitly extends to future performance of the goods." "The courts have applied a stringent standard in determining whether a warranty explicitly extends to future performance," requiring a "specific reference to a future time in the warranty." Cooper Power Systems, Inc. v. Union Carbide Chemicals & Plastics Co., Inc., 123 F.3d 675, 684 (7th Cir. 1997). This requirement is satisfied when a warranty guarantees a product for a particular number of years, or for a less precise, but still determinable period of time. Selzer, 2002 WI App 232, ¶ 19.

Plaintiffs say that their advertising statement warranties extended to future performance because defendant's brochures and catalogs stated that the windows were covered by 10- to 30-year warranties. (Plaintiffs do not propose any findings of fact to support this assertion, but they cited examples of the catalogs in their response brief.) Although the marketing materials state that there are express warranties related to various features of the windows, including the design and the K-Kron paint, plaintiffs have not adduced any evidence that the advertising materials themselves provided separate warranties

31

regarding durability and low maintenance for a particular number of years. As defendant notes, "[c]ourts have consistently held that vague statements concerning product longevity do not comply with the requirement of a 'specific reference to a future time' that would create a warranty of future performance within the meaning of Wis. Stat. § 402.725(2)." Selzer, 2002 WI App 232, ¶ 22 (summarizing cases). Accordingly, I find that plaintiffs' advertising statement claims accrued on the dates that plaintiffs acquired their windows. Because it is undisputed that the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs acquired their windows more than six years before filing this lawsuit in 2014, their advertising statement claims are barred by the statute of limitations unless an exception applies.

b. Equitable estoppel

As discussed above, plaintiffs generally argue that equitable estoppel prevents defendant from asserting the statute of limitations as a defense. They do not discuss how or whether equitable estoppel relates to their advertising statement warranty claims and they do not address the six-part test used to determine whether equitable estoppel is appropriate with respect to the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs in particular. Mathis v. New York Life Insurance Co., 133 F.3d 546, 548 (7th Cir. 1998) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority . . . forfeits the point."). I find that plaintiffs have not

32

established that equitable estoppel prevents defendant from asserting a statute of limitations defense to these advertising statement claims.


2. Merits of Haley, Samuels and Groome claims

As I will discuss separately with respect to each of these plaintiffs, defendant contends that plaintiffs have not pointed to specific affirmations of fact or promises that defendant made in its advertising materials that caused the Haleys or Samuels and Groome to choose defendant's windows. Under the Uniform Commercial Code, which has been adopted in Wisconsin and the states in which plaintiffs reside, express warranties can be created by statements made by the seller to the buyer. Wis. Stat. § 402.313; Mich. Comp Laws § 440.2313 (applicable to Haleys); N.H. Rev. Stat. § 382-A-2-313 (applicable to Samuels and Groome). A seller makes an express warranty by making "[a]ny affirmation of fact or promise" that "relates to the goods and becomes part of the basis of the bargain." Wis. Stat. § 402.313(1); Ewers v. Eisenzopf, 88 Wis. 2d 482, 487-88, 276 N.W.2d 802, 804 (1979). "It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant' or 'guarantee' or that the seller have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Wis. Stat. § 402.313(2). "[T]he specificity of the statement is important" in determining whether a statement is merely an opinion. James J. White, Robert S. Summers & Robert A.

Hillman, 1 Uniform Commercial Code, § 10:12 (6th ed. 2012) (comparing "this is a top-notch car" to "this truck will give not less than 15.1 miles to the gallon. . .").

Although defendant suggests that plaintiffs must have "relied" on the advertising statements, the statute does not make this an express requirement.  White, Summers & Hillman, 1 Uniform Commercial Code, § 10:14 (discussing "basis of bargain" requirement and concluding that buyer's reliance may be relevant but not necessary consideration).  As plaintiffs note, the Wisconsin Supreme Court has held that the statutory requirement that the affirmation be a "'basis of the bargain' does not require the affirmation to be the sole basis for the sale, only that it is A factor in the purchase."  Ewers, 88 Wis. 2d at 488, 276 N.W.2d at 804.

I will turn next to the plaintiffs' individual claims.

a.  Haleys

The parties do not agree about which statements the Haleys read in defendant's brochures.  In response to defendant's proposed findings of fact, plaintiffs point to Ms. Haley's deposition testimony in which she stated that she recalled seeing defendant's brochures and catalog in 2010.  Dkt. #200 at ¶ 18 (citing dkt. #149 at 52-53).  However, as defendant points out, Ms. Haley went on to testify that she no longer had the brochures and catalogs and did not remember specifically what they said about the qualities and features of defendant's windows.  Dkt. #149 at 53-54.  Ms. Haley did state that "I remember reading about K-Kron.  I remember about a preservative.  I remember that a

34

preservative had been put on the wood that was a difference between the old windows and the new windows. I remember the preservative was to protect against weathering." Id. at 79. She did not remember specifically where she saw that information or whether she read it online before or after purchasing the windows. Id. at 79-80. Plaintiffs also cite Ms. Haley's testimony that the brochures made statements about the windows being weather-tight, low maintenance and durable. Id. at 167-69. Mr. Haley did not have a specific recollection of looking at defendant's brochures or catalog and did not recall any specific statements that they may have contained:

> I formed an impression and helped make a decision about this. But to say it was from which specific statement or what exact paragraph I read out of a warranty claim or something, you know, I can't do that.

Dkt. #150 at 17.

I agree with defendant that plaintiffs have failed to identify through admissible evidence any statements defendant actually made. Moreover, they have not come forward with evidence that plaintiffs saw the statements before purchasing the windows so that the statements can be considered part of the basis of the bargain. Although plaintiffs argue in their brief that the representations "plainly influenced" their decision to purchase defendant's windows, they have not proposed any facts from which a reasonable jury could reach this conclusion. A review of the Haleys' deposition testimony shows that they are unclear about exactly what they read or when they read it.

Although plaintiffs say that "*not once* during Plaintiffs' depositions did the Defendant put in front of the Plaintiff specific brochures or other marketing materials to refresh

35

Plaintiffs' recollection about their purchases," dkt. #199 at 31 n. 25 (emphasis in original), defendant was under no obligation to clarify plaintiffs' testimony. Plaintiffs have the burden of proving their claims. If they thought the deposition testimony was incomplete or otherwise lacking, they should have submitted affidavits or other evidence in response to defendant's motion for summary judgment. Marion, 641 F.3d at 876-77 ("[W]hen a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own."). The Court of Appeals for the Seventh Circuit has stated many times that, at summary judgment, the plaintiffs must "put up or shut up" or, in other words, they must "show what evidence [they have] that would convince a trier of fact to accept [their] version of events." Johnson v. Cambridge Industries, Inc., 325 F.3d 892, 901 (7th Cir. 2003). Because plaintiffs have not met their burden, I am granting defendant's motion for summary judgment on the Haleys' advertising statements warranty claim.

b. Samuels and Groome

As with the Haleys, Samuels and Groome have also failed to meet their burden with respect to the advertising statement claim. Plaintiffs allege that defendant's distributor was "strongly positive" about the windows and assured plaintiffs that defendant's windows were "high quality" and "American made." Such vague statements made verbally by a distributor are insufficient to constitute an affirmation of fact on the part of defendant. Further, both Samuels and Groome testified that the only windows offered through their builder were

36

defendant's windows and that the fact that they were going to get defendant's windows did not influence their decision to buy their home through that builder. Dkt. #159 at 37-38 and #160 at 20. Because plaintiffs have not adduced any additional evidence showing that defendant's windows were a factor in their purchase, they can not meet the requirement that the distributor's statements were part of the basis of the bargain. Defendant's motion for summary judgment will be granted with respect to this claim.

## II. IMPLIED WARRANTY

Defendant contends that the implied warranty claims filed by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs are barred by Wisconsin's six-year statute of limitations, § 402.725(1). As defendant points out in its reply brief, it appears that plaintiffs have abandoned their implied warranty claims because they do not make any specific legal arguments related to implied warranties or identify the factual bases for these claims. Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."); Mathis, 133 F.3d at 548 (failure to pursue point or support it with pertinent authority results in forfeiture). Although plaintiffs generally argue that their "contract claims" are not barred by the statute of limitations, their discussion addresses the application of the discovery rule. However, as defendant argues, the discovery rule is not applicable to implied warranty claims because "implied warranties cannot, by their very nature, explicitly extend to future performance." Selzer, 2002 WI App. 232, ¶ 24 (citing Marvin Lumber & Cedar Co. v. PPG Industries, Inc., 223 F.3d 873, 879 (8th Cir. 2000)).

37

See also 2 Hawkland, § 2-725:2 (most courts find that statute of limitations runs from delivery of goods and not plaintiffs' discovery of defect).  Because plaintiffs do not dispute this point, I conclude that they have waived it.

I note that even if plaintiffs did not abandon their implied warranty claims, those claims would be barred by the statute of limitations because it is undisputed that the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs acquired their windows more than six years before filing this lawsuit in 2014.  To the extent that plaintiffs intended their general equitable estoppel arguments to apply to the implied warranty claims, those arguments fail for the same reasons that they failed with respect to advertising statement warranty claims. As a result, defendant is entitled to summary judgment with respect to the implied warranty claims brought by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs.


## III.  FRAUDULENT MISREPRESENTATION

Under Wis. Stat. § 100.18(1), plaintiffs must demonstrate three elements:   (1) defendant made a representation to the public with the intent to induce an obligation; (2) the representation was untrue, deceptive or misleading; and (3) the representation caused plaintiffs a pecuniary loss.  K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 732 N.W.2d 792.  See also Hackel v. National Feeds, Inc., 986 F. Supp. 2d 963, 979 (W.D. Wis. 2013) (citing same).  Defendant contends that Samuels and Groome have not identified any specific factual representation that it made with the intent to induce plaintiffs to purchase their windows.  Plaintiffs point to the same

38

conduct that they relied on in support of their advertising statement claim: defendant's distributor assured them that defendant's windows were of "high quality" and "American made" and "was strongly positive" about the windows.

Defendant is correct that to be actionable under Wis. Stat. § 100.18, a statement must constitute a misrepresentation of fact. United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc., 2013 WI 72, ¶ 28, 349 Wis. 2d 587, 607, 836 N.W.2d 807, 817. This means that the speaker must make a representation about the nature or quality of a product that is specific enough that its truth or falsity can be determined. Id. at ¶ 25-26. In contrast, "a salesperson engages in puffery when he gives voice to 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.'" Id. at ¶ 25 (quoting State v. American TV & Appliance of Madison, Inc., 146 Wis. 2d 292, 301–02, 430 N.W.2d 709 (1988)). Exaggerations do not subject the seller to liability under § 100.18 "because they convey only the seller's opinion and are 'not capable of being substantiated or refuted.'" Id. (quoting Tietsworth v. Harley–Davidson, Inc., 2004 WI 32, ¶ 44, 270 Wis. 2d 146, 677 N.W.2d 233). The distributor's general representation that defendant's windows were of high quality is too vague. E.g., Tietsworth, 270 Wis. 2d 146, ¶ 43, 677 N.W.2d 233 (classifying as puffery claims that product was "a masterpiece" and of "premium quality"); American TV, 146 Wis. 2d at 299, 430 N.W.2d 709 (endorsement of product as "the finest" was puffery); Consolidated Papers, Inc. v. Dorr–Oliver, Inc., 153 Wis. 2d 589, 594, 451 N.W.2d 456 (Ct. App. 1989) (advertisement promising "long equipment life" was puffery). Accordingly,

39

defendant's motion for summary judgment will be granted with respect to the claims brought by plaintiffs Samuels and Groome under § 100.18.

## IV.  NEGLIGENCE, MISREPRESENTATION AND UNJUST ENRICHMENT

Plaintiffs have not responded to defendant's contentions that all of the plaintiffs' negligent misrepresentation, negligence and unjust enrichment claims are barred by the statute of limitations, the economic loss doctrine or plaintiffs' failure to establish all the elements of their claim.  I construe plaintiffs' lack of response as a decision to abandon these claims.  Bonte, 624 F.3d at 466 (failure to respond results in waiver); Mathis, 133 F.3d at 548 (failure to pursue point or support it with pertinent authority results in forfeiture). Accordingly, defendant's motion for summary judgment with respect to plaintiffs' negligent misrepresentation, negligence and unjust enrichment claims will be granted and those claims will be dismissed.

## ORDER

IT IS ORDERED that

1.  The Clerk of Court is directed to amend the caption to change the name of plaintiff "Patricia Samuels" to "Patricia Groome."  In all future documents filed with the court, the parties should amend the caption to reflect this plaintiff's true name.

2.  Plaintiffs' motion for leave to file a surreply brief, dkt. #214, is GRANTED.

3. Defendant Kolbe & Kolbe Millwork Co.'s motion for partial summary judgment, dkt. #164, is GRANTED with respect to the following claims, which are DISMISSED:

a. The express warranty claims brought by plaintiffs Annie and Brian Buinewicz to the extent that those claims rely on a one-year warranty period.

b. The express warranty claim brought by plaintiffs Terrance and Jean Ann McIver related to the windows remaining free from defects for 10 years.

c. The express warranty claims brought by plaintiffs Mary and Michael Haley, Leslie and James Hal Banks, Annie and Brian Buinewicz, Terrance and Jean Ann McIver, Susan and Christian Senyk, Matthew and Renee Deller, Gary Samuels, Patricia Groome and Marie Lohr related to statements made by defendant in its advertising and product literature.

d. The implied warranty claims brought by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs.

e. The fraudulent misrepresentation claim brought by the Groome and Samuels plaintiffs.

f. The negligence, negligent misrepresentation and unjust enrichment claims brought by all plaintiffs.

4. Defendant's motion for partial summary judgment, dkt. #164, is DENIED with respect to (1) the Banks, Lohr, Senyk and Deller plaintiffs' express warranty claims related to the windows remaining free of defects for 10 years; and (2) the McIver and Senyk plaintiffs' express warranty claims related to defendant's failure to honor its promise to repair, replace or pay for the defective windows.

Entered this 15th day of June, 2015.

BY THE COURT:

/s/
_____

BARBARA B. CRABB
District Judge

41