IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY HALEY and MICHAEL HALEY,
LESLIE BANKS and JAMES HAL BANKS,
ANNIE BUINEWICZ and BRIAN BUINEWICZ,
TERRANCE McIVER AND JEAN ANN McIVER,
SUSAN SENYK, CHRISTIAN SENYK,
GARY SAMUELS, PATRICIA GROOME,
MATTHEW DELLER, RENEE DELLER
and MARIE LOHR, on behalf of themselves and
all others similarly situated,

                    Plaintiff,

OPINION and ORDER

14-cv-99-bbc

    v.

KOLBE & KOLBE MILLWORK CO., INC.,

                    Defendant,

    and

FIREMAN'S FUND INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

                    Intervenor Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is a proposed class action in which plaintiffs allege that the windows they purchased from defendant Kolbe & Kolbe Millwork Co. are defective. This order will address three motions for summary judgment related to peripheral disputes between defendant and its insurers, Fireman's Fund Insurance Company and United States Fire

1

Insurance Company. In particular, United States Fire seeks summary judgment on defendant's claims that United States Fire breached its duty to defend defendant and acted in bad faith. Dkt. #294. In addition, both insurers seek a declaration that they owe no duty to defend or indemnify defendant. Dkt. ##261 and 265.

I am granting United States Fire's motion with respect to defendant's claims because defendant has not shown that United States Fire's conduct violated defendant's rights. However, I am denying the insurers' motion regarding their duty to indemnify and their continuing duty to defend because there is still a possibility that defendant could be required to pay damages that are covered by the insurers' policies.

OPINION

A. United States Fire's Motion for Summary Judgment on Defendant's Claims

United States Fire seeks summary judgment on defendant's claims for breaching the duty to defend and engaging in bad faith. (Defendant asserted the same claims against Fireman's Fund, but the parties settled that claim. Dkt. #361.) Defendant argues that United States Fire committed both of these torts in various ways, some of which seem to overlap substantially:

(1) failing to respond in a timely manner to defendant's tender of defense;

(2) attempting to force defendant to replace the counsel it chose;

(3) choosing counsel who were not "truly independent";

(4) failing to disclose "actual or potential conflicts" with the counsel it chose;

      (5) threatening to direct its choice of counsel to make an appearance on behalf of defendant;

      (6) threatening to treat defendant's rejection of United States Fire's choice of counsel as a "rejection of coverage";

      (7) failing to communicate with defendant "in a prompt manner"; and

      (8) "putting its own interests ahead of [defendant's] interests by attempting to cram down an unwanted change in defense counsel."

Dkt. #338. These eight categories can be distilled to two: United States Fire's delay in making decisions regarding counsel and its attempt to impose its own choice of counsel on defendant rather than accept defendant's choice.

      An initial problem is that defendant does not distinguish its claim for breaching the duty to defend from its bad faith claim and it does not develop an argument that the duty to defend or the duty to act in good faith even extends to the type of conduct at issue in this case. This is important because United States Fire did not simply refuse to defend defendant and then deny coverage without any reasonable basis, which is generally what triggers liability for these types of claims. E.g., Trinity Evangelical Lutheran Church and School–Freistadt v. Tower Insurance Co., 2003 WI 46, ¶ 33, 261 Wis. 2d 333, 661 N.W.2d 789; Newhouse by Skow v. Citizens Security Mutual Insurance Co., 176 Wis. 2d 824, 501 N.W.2d 1 (1993). Although United States Fire delayed its decision regarding its duty to defend, defendant was not left high and dry. Rather, defendant proceeded with counsel of its own choosing and United States Fire paid its share of the defense costs and has continued

to do so throughout the lawsuit. Dft.'s Resp. to U.S. Fire's PFOF ¶¶ 41-46, dkt. #342. Although United States Fire eventually attempted to replace defendant's choice of counsel with its own, that attempt was unsuccessful and defendant has been able to retain its own counsel without interruption. Id. at ¶ 38. Defendant does not identify any way in which United States Fire's conduct prejudiced defendant in litigating this case. Hamlin Inc. v. Hartford Accord & Indemnity Co., 86 F.3d 93, 95 (7th Cir. 1996) (to prevail on claim for duty to defend under Wisconsin law, "the insured must show that he was made worse off by the breach than he would have been had the breach not occurred"). Rather, the only damages defendant identifies are its costs for litigating the disputes about counsel.

Although defendant's claims go well beyond a traditional claim for breach of the duty to defend and the duty to act in good faith, defendant simply assumes in its brief that United States Fire's conduct is the type that qualifies as a breach. Defendant devotes most of its brief to arguing that United States Fire's conduct was unreasonable without explaining why it believes it has a cause of action or even discussing the standard for proving either claim. That is reason alone to grant United States Fire's motion for summary judgment.

Instead of developing an argument, defendant cites several cases to support its claims, but none of them are helpful, at least not for defendant. First, defendant cites Grube v. Daun, 173 Wis. 2d 30, 496 N.W.2d 106 (Ct. App. 1992), for the proposition that an insurer violates the duty to defend if it does not "step up and immediately provide a defense." Dft.'s Br., dkt. #338. However, the question in Grube had nothing to do with timing; the insurer in that case had flatly refused to provide a defense. In summarizing the

4

duty to defend, the court stated in dicta that insurers are required "either to provide a defense immediately or to use alternate methods to reduce the costs of providing a defense until the coverage issue is decided." Grube, 173 Wis. 2d at 76. However, even if I assume that this is an accurate statement of the law, it does not help defendant because United States Fire allowed defendant to keep its own choice of counsel while United States Fire investigated the claim and helped to pay for that counsel, so it opted for an "alternate method" for meeting its obligation to defendant.

The second case, American Design & Build, Inc. v. Houston Casualty Co., No. 11-C-293, 2012 WL 719061, at *10-11 (E.D. Wis. Mar. 5, 2012), supports United States Fire much more than it supports defendant. The court stated that it was "perplexed by the plaintiff's insistence that the defendant has breached its duty to defend" by delaying its decision regarding a defense for several months, reasoning that "the plaintiff actually ha[d] received money from the defendant to reimburse the plaintiff for the cost of the defense retroactive to the date the defendant received notice of the claim." Id. at 10. The court rejected the insured's argument that the insurer's response was "too little, too late," stating that "[a]n insurer may investigate a claim before accepting the defense, so long as it reimburses the insured for the defense retroactive to the date of the claim." Id. at 11. Because the situation in American Design & Build was similar to the situation in this case, that court's rulings support a decision in favor of United States Fire.

Like this case, the third case defendant cites, Lakeside Foods, Inc. v. Liberty Mutual Fire Insurance Co., 2010 WI App 120, ¶ 41, 329 Wis. 2d 270, 789 N.W.2d 754

(unpublished), involved an insured contending that its insurer breached its duty to defend and acted in bad faith by delaying its decision to accept responsibility for providing a defense and by attempting to impose its own choice of counsel on the insured. The court concluded that the insurer had not breached its duty to defend because the insured was allowed to keep its own choice of counsel and the insurer paid for it while the insurer was investigating the clam. Id. at ¶ 43. By itself, the delay in deciding was not enough to breach the duty to defend. See also Carney v. Village of Darien, 60 F.3d 1273, 1277 (7th Cir. 1995) (concluding that insurer complies with duty to defend so long as it seeks declaration from court "prior to the trial on the liability issue"). Although the court in Lakeside Foods concluded that the insured's claim for bad faith should be allowed to proceed, this was only because there were genuine disputes regarding whether the parties had an oral agreement on attorney fees. Id. at ¶ 49.

Lakeside Foods suggests that disputes about timing and choice of counsel do not qualify as a breach of the duty to defend when the insured proceeds with its own choice of counsel and the insured agrees to pay for it. Because that is what happened in this case, Lakeside Foods supports United States Fire's position more than it supports defendant's. Further, the court's ruling on bad faith is not instructive because this case does not involve any disputes about a possible oral agreement.

Defendant says that I found in the April 1, 2015 decision that American Design & Build and Lakeside Foods supported its position, but that is incorrect. The question in the April 1, 2015 decision was whether United States Fire and the other insurers should be

6

estopped from requiring defendant to change counsel midway through the lawsuit in light of the insurers' delay in making their own choice for counsel and their delay in raising the issue with the court. I made it clear that there were important differences between that question and the question whether the insurers breached the duty to defend. In fact, when discussing American Design & Build and Lakeside Foods, I acknowledged that "a four-month delay in deciding whether to defend an insured may not cause prejudice so long as the insurer agrees to make its decision retroactive and pay the costs of litigation from the time the insured tendered its defense." Haley v. Kolbe & Kolbe Millwork Co., No. 14-cv-99-bbc, — F. Supp. 2d —, 2015 WL 1505686, at *7 (W.D. Wis. Apr. 1, 2015).

Finally, defendant cites Fireman's Fund Insurance Co. v. Waste Management of Wisconsin, Inc., 777 F.2d 366, 367 (7th Cir. 1985), and HK Systems, Inc. v. Admiral Insurance Co., No. 03 C 0795, 2005 WL 1563340, at *1 (E.D. Wis. June 27, 2005). In these cases, the court ruled in favor of the insured in the context of a dispute regarding whether the insured or insurer had the right to choose counsel. However, these cases are not instructive because the courts did not hold that an insurer violates its duty to defend when it attempts to choose counsel for the insured, even if a court determines later that the insured gets to choose.

In short, defendant has neither cited helpful case law nor developed a persuasive argument in favor of its claims that United States Fire breached its duty to defend and acted in bad faith by delaying its decision whether to defend defendant and attempting to impose its own choice of counsel on defendant. With respect to United States Fire's delay, I find

persuasive the view in Lakeside Foods and American Design & Build that a delay in deciding whether to defend an insured does not qualify as a breach of duty to defend or an exercise of bad faith when the reason for the delay is the insurer's investigation of coverage, the insured has counsel while the insurer is conducting its investigation and the insurer pays the cost of counsel even for the time period that the investigation was pending. Under those circumstances, the insured's defense is not harmed in any way. Because those circumstances are present in this case, I conclude that United States Fire's delay did not violate defendant's rights.

With respect to the dispute over the choice of counsel, I need not decide whether there might be some situation in which such a dispute could qualify as bad faith or a breach of the duty to defend. As discussed above, unless a dispute prejudices the defense somehow, it is difficult to see how the dispute could constitute a breach. In any event, it is enough to say in this case that defendant has not identified any reason why United States Fire's conduct violated that duty.

With respect to bad faith, defendant acknowledges that a claim for bad faith requires a showing that the insured lacked any reasonable basis for its decision. Dft.'s Br., dkt. #338, at 19 (quoting Lakeside Foods, 2010 WI App 120 at ¶ 44). Although I sided with defendant regarding the right to choose counsel in the April 1, 2015 order, I also acknowledged that there is a split in authority regarding whether the insurer or the insured has the right to choose counsel when the insured provides a defense under a reservation of rights. Compare HK Systems, 2005 WL 1563340 (insurers who defend under reservation of rights retain

right to choose "independent" counsel) with <u>Nowacki v. Federated Realty Group, Inc.</u>, 36 F. Supp. 2d 1099 (E.D. Wis.1999) (insured has right to choose counsel when insurer provides defense under reservation of rights). The parties cited no cases in which any court had considered the circumstances under which an insurer could be estopped from choosing counsel. Thus, although defendant may have incurred additional costs by hiring separate counsel to litigate the dispute over the choice of counsel, I cannot say that the law on that issue was so clear as to justify a finding of bad faith by United States Fire. Accordingly, I am granting United States Fire's motion for summary judgment on defendant's claims for bad faith and breach of the duty to defend.

### B. The Insurers' Motions for Summary Judgment on their Duty to Defend and Indemnify

Both insurers accepted defendant's tender of defense, but they did so under a reservation of rights. Now the insurers argue that factual developments since plaintiffs filed the complaint show conclusively that plaintiffs cannot obtain damages that are covered by the insurers' commercial general liability policies, so the insurers seek a declaration that they do not have a duty to defend or indemnify defendant. <u>Olson v. Farrar</u>, 2012 WI 3, ¶ 29, 338 Wis. 2d 215, 228-29, 809 N.W.2d 1, 7 (insurer has no duty to defend or indemnify if policies do not provide coverage for plaintiff's claims).

The parties discuss several different types of potential damages: (1) damage to the windows themselves and the cost of replacing them; (2) damages caused during the

9

replacement of windows (which the parties refer to as "get to" and "rip and tear" costs); (3) consequential damages to plaintiffs' homes such as stained walls and buckled plaster caused by things such as leaking windows; and (4) diminution in home value. The insurers argue that these damages are not covered by defendants' policies, not sought by plaintiffs or both.

The two insurers' policies use the same language with respect to the issues relevant to this case. In particular, the policies provide coverage for "property damage" that is caused by an "occurrence" while the policies are in effect, which was 1989 to 1997 for Fireman's Fund and 2003 to 2004 for United States Fire. The policies define "property damage" as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In addition, both policies contain an exclusion that the policies do not apply to "damage to your product." Fireman's Fund PFOF ¶¶ 3-5, dkt. #308; United States Fire's Br., dkt. #263 at 12-13 (citing dkt. #84-2).

In light of this policy language, the insurers argue that they are not required to defend or indemnify defendant for several reasons: (1) none of the alleged damages qualify as "property damage" under the policies; (2) all of the alleged damages fall within the policies' exclusion regarding "damage to your product"; (3) plaintiffs are no longer seeking damages to their homes or other consequential damages; and (4) none of the plaintiffs are seeking damages for events that occurred in the relevant policy period. I will consider each of these

arguments below. (In their reply briefs, the insurers raise new arguments regarding whether plaintiffs' alleged damages were caused by an "occurrence" within the meaning of the policies, but I have not considered those arguments because they were not raised in the insurers' opening briefs. Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009).)

1. Waiver

As an initial matter, defendant argues that the insurers have waived their right to challenge coverage by breaching their duty to defend in the manner described in the previous section. Because I have concluded that the insurers did not breach their duty to defend, I need not consider this argument.

2. Damages to the windows and damages caused by replacing the windows

Defendant does not respond to the insurers' argument that the policies' exclusion for "damage to your product" applies to alleged damage to the windows themselves and the cost of replacing them, so I conclude that defendant has forfeited that issue. Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). With respect to damages caused during the replacement of the window, United States Fire cites Jacob v. Russo Builders, 224 Wis. 2d 436, 592 N.W.2d 271 (Ct. App. 1999), for the proposition that "damages . . . directly related to the repair and replacement of defective work [a]re not covered under a commercial general liability policy" such as the policies at issue in this case. U.S. Fire's Br., dkt. #263, at 19. For its part, Fireman's Fund

cites B & D Contractors, Inc. v. Arwin Window Systems, Inc., 2006 WI App 123, ¶ 5, 294 Wis. 2d 378, 385, 718 N.W.2d 256, 259, in which the court stated that "costs flowing from, or caused by, the repair or replacement of an insured's defective product are not covered by the Commercial-General-Liability policy."

Of course, each contract must be construed in accordance with the language in that contract. However, the contracts at issue in Jacob and B&D Contractors contained exclusions for "damage to your product" similar to the exclusion at issue in this case, supporting the view that "damage to your product" encompasses damage caused by replacing the product. Defendant's only response to the insurers' argument on this issue is to say that it is unclear which damages plaintiffs will ultimately recover, so the court should wait until liability has been determined to address the issue. Dft.'s Br., dkt. #306, at 26-27. However, the question of which damages plaintiffs may recover has nothing to do with the question whether a particular kind of damages is covered by the policies. Accordingly, because defendant did not respond meaningfully to the insurers' argument that they do not cover damages cause by the replacement of the windows, I conclude that defendant has forfeited that issue for the purpose of the insurers' motion for summary judgment.

3. Damages to plaintiffs' homes

a. Scope of the policies

This leaves consequential damages to plaintiffs' homes and diminution in value of the homes. With respect to damages to plaintiffs' homes, United States Fire argues that the

homes are part of an "integrated system" with the windows. It cites <u>Bay Breeze Condominium Association, Inc. v. Norco Windows, Inc.</u>, 2002 WI App 205, 257 Wis. 2d 511, 651 N.W.2d 738, and <u>Wausau Tile, Inc. v. County Concrete Corp.</u>, 226 Wis. 2d 235, 593 N.W.2d 445 (1999), for the proposition that damage to an "integrated system" does not qualify as "property damage." However, nothing in those cases supports that view. Rather, the relevant issue in <u>Bay Breeze</u> and <u>Wausau Tile</u> was the scope of the economic loss doctrine, which "precludes a purchaser of a product from employing negligence or strict liability theories to recover from the product's manufacturer loss which is solely economic." <u>Wausau Tile</u>, 226 Wis. 2d at 245-46, 593 N.W.2d at 451. The doctrine does not apply to "damage to property other than the product itself," but it does apply to "[d]amage by a defective component of an integrated system to either the system as a whole or other system components." <u>Id.</u> at 249. In <u>Bay Breeze</u>, 2002 WI App 205 at ¶ 27, the court concluded that allegedly defective windows that came with a newly built condominium unit were part of an "integrated system" with "interior and exterior walls and casements," so the economic loss doctrine precluded the plaintiff from asserting tort claims against the window manufacturer for damage to the condominium caused by defective windows.

Neither <u>Bay Breeze</u> nor <u>Wausau Tile</u> includes a discussion regarding the meaning of "property damage" in an insurance policy. In fact, as defendant points out, the Wisconsin Supreme Court has stated that the economic loss doctrine "does not determine whether an insurance policy covers a claim, which depends instead upon the policy language." <u>American Family Mutual Insurance Co. v. American Girl, Inc.</u>, 2004 WI 2, ¶ 35, 268 Wis. 2d 16, 36,

673 N.W.2d 65, 75.  Under the policies' definition of "property damage," it seems obvious that damages such as buckled plaster and stained walls would qualify as "physical injury to tangible property."  United States Fire identifies no reason to reach a contrary conclusion.

Fireman's Fund makes the same argument as United States Fire, but it also makes a more intuitive argument, which is that the integrated systems rule should inform the court's reading of the policies' exclusion for "damage to your product."  In other words, Fireman's Fund argues that "damage to your product" includes damage to any part of an integrated system.  However, Fireman's Fund did not develop this argument until its reply brief.  Casna, 574 F.3d at 427.  In its opening brief, Fireman's Fund simply assumed that plaintiffs' windows are part of an integrated system with the rest of their home and that the integrated systems rule should apply when interpreting the exclusion at issue.

Even in its reply brief, Fireman's Fund says that its exclusion "incorporates the economic loss and integrated structure doctrine," Fireman's Fund's Reply Br., dkt. #348, at 15-16, but it does not explain why it believes this.  In the case it cites, Wisconsin Pharmacal Co., LLC v. Nebraska Cultures of California, Inc., 2014 WI App 111, ¶38, 358 Wis. 2d 673, 856 N.W.2d 505, the court *rejected* the view that the integrated systems doctrine applies to every commercial general liability policy.  The court stated, "[i]f insurers want to . . . import the economic loss/integrated product doctrine into the policy . . ., *they can do so by writing their business risk exclusions accordingly*."  Id. (emphasis added).  Although Fireman's Fund relies on Wisconsin Pharmacal, it does not point to any language in its policy that should be read as incorporating the integrated systems rule.  In another case, also

cited by the insurers, the court declined to incorporate the integrated systems rule into a commercial general liability policy in the absence of specific language to that effect. Jacob, 224 Wis. 2d at 453, 592 N.W.2d at 278.

Courts are required to construe insurance policies in a manner consistent with what a reasonable person in the position of the insured would have understood the words to mean, Folkman v. Quamme, 2003 WI 116, ¶ 20, 264 Wis. 2d 617, 633, 665 N.W.2d 857, 865, and they are required to construe exclusions narrowly in favor of coverage, Olson v. Farrar, 2012 WI 3, ¶ 65, 338 Wis. 2d 215, 240, 809 N.W.2d 1, 13. Further, insurers have the burden to prove that an exclusion applies. Kozlik v. Gulf Insurance Co., 2003 WI App 251, ¶ 8, 268 Wis. 2d 491, 498, 673 N.W.2d 343, 347. Because neither insurer has developed an argument in support of a view that the language "damage to your product" in their policies should be construed to mean damage to other parts of plaintiffs' homes, I conclude that the insurers are not entitled to summary judgment on that ground.

b. Scope of plaintiffs' claims

United States Fire makes an alternative argument regarding damages to plaintiffs' homes, which is that plaintiffs are not seeking those damages. Although United States Fire admits that plaintiffs did request those damages in their complaint (as well as in their summary judgment submissions, dkt. #200 at ¶¶ 58-59, 80), it argues that the complaint has been superseded by plaintiffs' most recent "damages disclosure." Dkt. #262, exh. A. According to United States Fire, the new disclosure does not include any damages other than

those related to replacing the windows.

The parties debate how to interpret that disclosure, which includes a column for "amount paid for repairs" and "RS Means Estimate," but it does not clearly define the damages included in either column. Id. In support of its view that plaintiffs are still seeking damages for their homes, defendant points to invoices cited in the disclosure related to those damages and deposition testimony from some of the plaintiffs. Dft.'s Br., dkt. #306, at 3-5. In addition, defendant argues that an undefined "contingency" estimate of ten percent in the disclosure may include damages to the home, citing testimony from plaintiffs' expert. Id. at 8. United States Fire cites different passages from the expert's testimony to support a view that the new disclosure is limited to damages related to repair and replacement. U.S. Fire's PFOF ¶ 63, dkt. #308. Again, however, United States Fire did not develop an argument on this issue until its reply brief.

Even setting aside United States Fire's failure to develop this argument in its opening brief, I conclude that it is unnecessary to parse the damages disclosure and the deposition testimony to determine which party has the better interpretation. The general rule in Wisconsin is that the duty to defend is determined from the allegations in the complaint without resort to extrinsic evidence. Sola Basic Industries, Inc. v. U. S. Fidelity & Guaranty Co., 90 Wis. 2d 641, 646-47, 280 N.W.2d 211, 213-14 (1979) ("To determine whether an insurer is obligated to assume the defense of a third-party suit, it is necessary to determine whether the complaint alleges facts which, if proven, would give rise to liability covered under the terms and conditions of the policy."); Monfils v. Charles, 216 Wis. 2d 323, 330,


575 N.W.2d 728, 731 (Ct. App. 1998) ("[T]he trial court erred by dismissing [the insurer] from its duty to defend by using materials outside the complaint to determine the existence of coverage."); Atlantic Mutual Insurance Co. v. Badger Medical Supply Co., 191 Wis. 2d 229, 241, 528 N.W.2d 486, 491 (Ct. App. 1995) ("[I]n determining whether there is a duty to defend, we do not consider later depositions or other materials; we look only at the allegations of the complaint."). This is referred to as the "four corners rule." Sawyer v. West Bend Mutual Insurance Co., 2012 WI App 92, ¶ 10, 343 Wis. 2d 714, 723, 821 N.W.2d 250, 255.

United States Fire points out that the Wisconsin Supreme Court has relaxed the rule against relying on extrinsic evidence in some circumstances:

> Where the insurer has provided a defense to its insured, a party has provided extrinsic evidence to the court, and the court has focused in a coverage hearing on whether the insured's policy provides coverage for the plaintiff's claim, it cannot be said that the proceedings are governed by the four-corners rule. The insurer's duty to continue to defend is contingent upon the court's determination that the insured has coverage if the plaintiff proves his case.

Estate of Sustache v. American Family Mutual Insurance Co., 2008 WI 87, ¶¶ 27-29, 311 Wis. 2d 548. However, the scope of the exception to the four corners rule is unclear. In Sustache, the court still focused on "the allegations of the complaint and the pertinent homeowner's policy." Id. at ¶ 4. Although the court mentioned deposition testimony as well, this was only to confirm allegations in the complaint. Id. at ¶¶ 51-53.

In this case, United States Fire is not relying on extrinsic evidence to confirm or even clarify allegations in the complaint. Rather, it is trying to *contradict* the allegations in the complaint. United States Fire cites no cases in which a court has relied on extrinsic evidence

17

for that purpose while the underlying lawsuit was pending. Further, the evidence United States Fire cites is equivocal; United States Fire does not point to any document in which plaintiffs disclaimed damages to their homes. Even if United States Fire's interpretation of the damages disclosure is correct, United States Fire cites no authority for the view that there would be no circumstances under which plaintiffs could make additional adjustments to their disclosures.

Any doubts about coverage must be resolved in favor of the insured when determining whether insurer has a duty to defend. Liebovich v. Minnesota Insurance Co., 2008 WI 75, ¶ 18, 310 Wis. 2d 751, 766, 751 N.W.2d 764, 771; Sola Basic Industries, 90 Wis. 2d at 646-47. Thus, so long as there is some possibility, even a small one, that the plaintiffs could obtain damages covered by the policy, the duty to defend remains. Any other rule would encourage insurance companies to seek a declaration on their duty every time a new document was filed in a lawsuit that casts some doubt on coverage. The better rule is to keep the status quo until the case is resolved and a final determination on coverage can be made. Olson, 2012 WI 3 at ¶ 30 ("If the allegations in the complaint, construed liberally, appear to give rise to coverage, insurers are required to provide a defense until the final resolution of the coverage question by a court.").

Under Wisconsin law, if the insurer has a duty to defend with respect to any portion of the claims, then the insurer must defend the entire lawsuit. Fireman's Fund Insurance Co. v. Bradley Corp., 2003 WI 33, ¶ 21, 261 Wis. 2d 4, 660 N.W.2d 666. Because I have concluded that plaintiffs' claims for damages to their homes may be covered by the insurers'

policies, it is not necessary to decide whether plaintiffs' claim for diminished value of their homes is covered as well.

4. Policy Period

Finally, both insurers argue that none of plaintiffs' claims fall within the policy period, which was 1989 to 1997 for Fireman's Fund and 2003 to 2004 for United States Fire. However, plaintiffs' proposed class includes individuals who purchased windows beginning in 1997 and continuing to the present, dkt. #285 at 10, so both of the insurers' policies fall within the class period. It may be unlikely that any class members would have claims that arose as far back as 1997 without running afoul of the statute of limitations, but, as discussed in the summary judgment opinion, dkt. #233 at 19, a statute of limitations analysis depends not only on the date that a plaintiff discovered a problem with the windows but also the date the plaintiff discovered that defendant was the cause of the problem. Again, all doubts about coverage must be resolved in favor of the insured. Because I cannot say as a matter of law that no class member could have a timely claim that arose from damages that occurred during the covered periods, I am denying the insurers' motion for summary judgment on this issue as well.

ORDER

IT IS ORDERED that

1. Intervenor United States Fire's motion for summary judgment on defendant Kolbe

and Kolbe Millwork Co.'s claims that United States Fire breached its duty to defend defendant and acted in bad faith, dkt. #294, is GRANTED.

2. The motions for summary judgment filed by intervenors United States Fire and Fireman's Fund Insurance Company regarding their duty to defend and indemnify defendant, dkt. ##261 and 265, are DENIED.

Entered this 2nd day of November, 2015.

                      BY THE COURT:

                      /s/

                      _____
                      BARBARA B. CRABB
                      District Judge