UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARY HALEY *et al.*,

    Plaintiffs,

v.

KOLBE & KOLBE MILLWORK CO., INC.,

    Defendant,

And

FIREMAN'S FUND INSURANCE COMPANY, INC., *et al.*,

    Intervenor Defendants.

Case No. 14-cv-99-bbc

**REPLY BRIEF IN SUPPORT OF KOLBE & KOLBE MILLWORK CO., INC.'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT WITNESSES UNDER FEDERAL RULE OF EVIDENCE 702**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

I.   PLAINTIFFS DO NOT DISPUTE MOST OF THE FAILINGS THAT RENDER
     THEIR EXPERTS' OPINIONS UNRELIABLE ................................................................ 2

     A.   Plaintiffs Do Not Dispute the Flaws In Their Experts' Opinions Regarding
          the Sill-Sash Interface ........................................................................................ 2

          1.   Plaintiffs Do Not Dispute that The Sill-Sash Interface Opinions
               Are Premised on a Basic Mistake of Fact by Their Expert ......................... 3

          2.   Plaintiffs Do Not Dispute that Wolf's Testing Failed to Conform to
               Industry Standards and Failed to Eliminate Obvious Alternative
               Explanations for the Problems in Plaintiffs' Windows ............................... 5

          3.   Plaintiffs Do Not Dispute That Wolf's Sash-Sill Opinions Have No
               General Acceptance in the Scientific Community ...................................... 7

          4.   Plaintiffs Do Not Dispute that Wolf Failed to Evaluate the
               Feasibility of Alternate Designs or Whether Alternate Designs
               Would Resolve the Alleged Problems ........................................................ 8

     B.   Plaintiffs Do Not Address the Substance of the Problem with the
          Reliability of Beckham's Opinion Regarding K-Kron Paint ............................. 11

     C.   Plaintiffs Do Not Address the Substance of the Problem with the
          Reliability of Beckham's Opinion Regarding the Wood Preservative
          Application Process .......................................................................................... 12

II.  PLAINTIFFS DO NOT REFUTE ANY OF KOLBE'S ARGUMENTS
     REGARDING THEIR EXPERTS' DAMAGES OPINIONS ......................................... 13

III. PLAINTIFFS FAIL TO DEMONSTRATE WHY THEIR EXPERT OPINIONS
     WILL ASSIST THE TRIER OF FACT IN DECIDING THE TWO SURVIVING
     CLAIMS IN THIS CASE ................................................................................................ 13

     A.   Plaintiffs Fail to Distinguish Highly Relevant Authority Establishing that
          Design Defects are Not Encompassed by the Written Warranties .................... 14

     B.   Plaintiffs Fail to Show How Their Expert's Opinions Would be Helpful on
          the Issue of Merchantability ............................................................................. 16

CONCLUSION ................................................................................................................... 17

# INTRODUCTION

There is very little in Kolbe's motion to exclude Plaintiffs' expert witnesses that Plaintiffs actually dispute. They do not contend that Kolbe misstated their experts' opinions or deposition testimony in any respect. They do not substantively dispute the reasons why those opinions are unreliable, including the lack of any scientific support for their theories, the failure to adhere to industry standards for testing, the failure to identify alternatives to Kolbe's design (or any window manufacturer that uses materially different designs), the failure to evaluate in any way whether alternative designs would have actually resulted in better performance, or their experts' outright errors regarding certain basic characteristics of Kolbe windows. Nor do they dispute that their motion for class certification depends upon the admissibility of their experts' opinions—and thus the admissibility of those opinions should be determined in connection with class certification. *See Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010) (per curiam); *West v. Prudential Secs., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002).

Unable to substantively dispute the failings of their experts' opinions under the guideposts provided by *Daubert* and Federal Rule of Evidence 702, Plaintiffs resort again and again to the same unconvincing refrain: that Kolbe "merely disagrees" with their experts' opinions. (*See* Pls.' Opp'n to Mot. to Exclude Their Experts (dkt. 382) at 1 ("Defendant's challenges to the 'reliability' of Plaintiffs' expert report, while sprawling, essentially come down to Defendant arguing that it disagrees with Plaintiffs' experts' conclusion that Kolbe's windows are defectively designed . . . ."); 2 ("Despite the fact that Defendant elected to spend 39 pages attacking Plaintiffs' expert, it is apparent it had relatively little to say other than it disagrees with Plaintiffs' expert."); 12 ("Kolbe attacks Plaintiffs' experts in its sprawling motion and, under the guise of Rule 702, argues that Plaintiffs' experts should be excluded because Kolbe disagrees.").) These are just a few examples. There are many more. (*See id.* at 16, 20, 21.)

4835-6804-8682.1

Plaintiffs' contention that Kolbe "merely disagrees" with their experts' conclusions is wrong. Kolbe's motion challenges the *reliability* of Plaintiffs' experts' methodology and the *materiality* of their opinions under Rule 702 and *Daubert*, not the content of their conclusions. If stating that "the Defendant merely disagrees" were sufficient to rebut challenges to the reliability of expert opinions, then the gatekeeping function of Rule 702 would be illusory—no expert opinions would ever be excluded prior to trial. Obviously, that is not the law. *See, e.g.*, *Am. Honda*, 600 F.3d at 818-19 (assessing similar challenges to the reliability of expert testimony regarding motorcycle design and concluding that "the testimony proffered here is not merely shaky; it is unreliable. And expert testimony that is not scientifically reliable should not be admitted, even at [the class certification stage]").

By failing to contest the substance of most of Kolbe's points, Plaintiffs have presented this Court with relatively few actual disputes to decide. The points Plaintiffs concede are themselves more than sufficient to warrant exclusion of their experts, and the few substantive arguments they attempt are unavailing, as explained in the discussion that follows.

## ARGUMENT

### I. PLAINTIFFS DO NOT DISPUTE MOST OF THE FAILINGS THAT RENDER THEIR EXPERTS' OPINIONS UNRELIABLE

#### A. Plaintiffs Do Not Dispute the Flaws In Their Experts' Opinions Regarding the Sill-Sash Interface

Plaintiffs' expert Joel Wolf theorizes four interrelated defects in the design of the sill-sash interface of Kolbe's casement, awning, and picture windows (together, "casement-style" windows): (1) the sills are too flat, and should be fully sloped at a 7- to 14-degree angle to better prevent water accumulation on the sill; (2) the weatherstrip or "sash gasket" traps water on the sill; (3) there is too small of a gap between the underside of the sash and the sill, allowing the underside of the sash to come into contact with water on the sill; and (4) the underside of the sill

2

lacks protective finish or coating to prevent the water from causing damage. Kolbe's motion identified a number of reasons why these opinions are unreliable under Federal Rule of Evidence 702 and *Daubert*; as set forth below, Plaintiffs do not meaningfully refute any of them.

> 1. **Plaintiffs Do Not Dispute that The Sill-Sash Interface Opinions Are Premised on a Basic Mistake of Fact by Their Expert**

At the outset, Plaintiffs do not dispute that Wolf's opinions regarding the sill-sash interface rest upon a fundamental factual mistake. Under Wolf's theory, rot begins "from the bottom of the lower sash rail and progresses upward through the sash" because the bottom of the lower sash rail is exposed to water and "not protected" by an adequate finish. (Exponent Report (dkt. 281) at 2 ¶¶ 1, 3.) But any absence of an adequate finish on the underside of that sash rail is not a result of Kolbe's design. As Kolbe demonstrated in its opening brief, its "windows can be ordered with the interior surfaces either finished or unfinished," the underside of the sash rail is part of those interior surfaces, and if windows are ordered with the interiors unfinished, "it is the purchaser's responsibility to apply the finish." (Kolbe's Opening Br. at 12-13.) In the windows that Wolf examined, the "named Plaintiffs or their contractors simply failed to properly finish the undersides of the sashes, contrary to Kolbe's instructions"—which "is not a design defect, it is user error." (*Id.*)

Plaintiffs do not dispute that their expert got this wrong. Instead, they make two arguments that his mistake should not matter—neither of which have any reasonable basis.

*First*, Plaintiffs say Wolf's mistake can be disregarded as "but one component of Plaintiffs' expert opinion," and that "[e]ven if every Kolbe window had a sash with a painted underside, it would not change Plaintiffs' expert opinion that the windows are defective." (Pls.' Opp'n at 6.) But while Plaintiffs *say* that the mistake does not matter, they cite nothing to support the proposition that it is immaterial to Wolf's theories. In fact, it is self-evident that

3

Wolf's mistake *is* material: Wolf gave an opinion that Kolbe's design is defective because it allows water to come into contact with unfinished wood, and Plaintiffs now concede (as they must) that the second half of that opinion is premised on a flat-out error by their expert. Wolf's report and deposition testimony confirm that this mistaken premise is material to his opinions. In his deposition, Wolf emphasized that "you have to look at all the factors together," and it would be a mistake to "parse out" one or another. (June 11, 2015 Deposition of Joel Wolf (dkt. 310) at 45:19-46:8.) And the Exponent Report notes, in the very first paragraph of its opinions, that under their theory "[d]ecay initiates from the bottom of the lower sash rail"—the very location that Wolf erroneously believed to be intentionally unprotected from moisture. (Dkt. 281 at 2 ¶ 1.) Thus, Plaintiffs' assertion that this mistake "would not change Plaintiffs' expert opinion" is simply unsupported lawyer argument.

>*Second*, Plaintiffs' claim that:
>
>[E]ven assuming for sake of argument that a particular window was left unfinished due to a failure of the homeowner/contractor to follow installation instructions, such a failure to adhere to the installation instructions was entirely foreseeable by Kolbe and therefore should have been accounted for in the design process. Mr. Wolf's evidence will therefore assist the trier of fact on this point.

(Pls.' Opp'n at 18.) This argument has no evidentiary basis whatsoever. Plaintiffs' experts have not offered any opinions regarding the reasonableness of Kolbe's installation instructions or whether it was "entirely foreseeable by Kolbe" that purchasers would ignore those instructions, and have not attempted to claim they are qualified to offer expert opinions on those issues. And Plaintiffs cannot point to any other evidence regarding foreseeability. Even if they could, it would not assist the trier of fact in determining whether Kolbe breached its written warranties. The written warranties are expressly contingent upon *following Kolbe's instructions*, and the instruction regarding finishing is so important that the written warranties specifically call out the

4

need to apply a proper finish to the surfaces of the windows. (*See* dkt. 314-1, 314-2 ("[A]ll edges and faces of doors and windows must be thoroughly finished by the purchaser or this Warranty shall not apply.").) Thus, Plaintiffs offer no support for their theory that Kolbe somehow breaches its written warranties when owners fail to follow the instructions and conditions set forth in those warranties.

> **2.   Plaintiffs Do Not Dispute that Wolf's Testing Failed to Conform to Industry Standards and Failed to Eliminate Obvious Alternative Explanations for the Problems in Plaintiffs' Windows**

As noted in Kolbe's opening brief (at 20-23) and in greater detail in Kolbe's opposition to class certification (dkt. 333 at 20-38), there are obvious alternative explanations for the window problems that Plaintiffs experienced, from condensation to installation errors to the failure to properly finish the undersides of the sashes. Wolf's tunnel-vision analysis failed to "adequately account[] for" or eliminate these "obvious alternative explanations," rendering his opinions that Plaintiffs' problems were all caused by a common window design defect unreliable. Fed. R. Evid. 702, advisory committee note (2000). Wolf's testing of windows in certain homes did not solve this problem, because it contradicted published standards for air and water infiltration testing of windows, and he admits it "was not intended to determine the cause of damage in any of the Plaintiffs' windows," but rather "to show that Wolf's defect theories *could*, hypothetically, be a factor." (Kolbe's Opening Br. at 23-26.)

Plaintiffs offer no coherent substantive response to this. Indeed, they glaringly contradict themselves. They first assert, without any supporting citation to the record, that "[c]learly, Plaintiffs' experts considered other possible causes for the failure of Defendant's Windows and ruled them out based on what they, as experts in the field, observed." (Pls.' Opp'n at 20.) Their failure to provide any support for this conclusory statement invites this Court to commit the same error that the Seventh Circuit cautioned against in *Fuesting v. Zimmer, Inc.*,

5

421 F.3d 528, 537 (7th Cir. 2005) ("But the court made no mention of how [the plaintiffs' expert] ruled those alternative causes out, let alone whether and why it found that method reliable. To satisfy its essential role, the gatekeeper must do more than just make conclusory statements.").

Then, in the same paragraph, Plaintiffs assert that Wolf did not need to follow the industry standards that required him to test areas around the window to identify the true source of the leak, because "[a]s Mr. Wolf testified, he was testing to see whether it was possible to get [water] into the area between the sill and sash"—not whether anything else was causing the problem. (Pls.' Opp'n at 20.) In other words, they first claim (without any support) that Wolf *did* rule out other potential causes, and then in the next breath admit that he was <u>not</u> looking for other causes (and was thus excused from following industry testing protocols for ruling out such causes).

Plaintiffs cannot have it both ways: either Wolf failed to evaluate other potential causes (as his deposition admissions and testing methods confirm), or his efforts to do so violated published testing protocols. If it is the former, then his opinions are unreliable under Rule 702 for failing to take other potential causes into account. If it is the latter, then Plaintiffs do not dispute that Wolf's testing violated the industry standards set forth in Kolbe's brief, except to shrug off those published standards as nothing more than Kolbe's "opinion" on how to conduct the tests. (Pls.' Opp'n at 20.) Either way, Wolf failed to employ a reliable methodology to account for and eliminate the many obvious alternative causes suggested by the named Plaintiffs' own observations of the problems they experienced, such as condensation and leaks located in areas other than the sill-sash interface. (*See generally* dkt. 333 at 20-38.)

6

### 3. Plaintiffs Do Not Dispute That Wolf's Sash-Sill Opinions Have No General Acceptance in the Scientific Community

Kolbe's opening brief explained that, even though there are a plethora of standards promulgated by well-recognized organizations regarding windows, <u>none</u> of them support Wolf's design defect theory. Among other deficiencies, Wolf could not point to: (1) any standards advising the fully-sloped sill of 7- to 14-degrees that he recommends for casement-style windows (Kolbe Opening Br. at 15); (2) any other American manufacturer that uses a fully-sloped sill for casement-style windows (*id.*); (3) any American standards that even reference the gap between the sash and sill, let alone recommend that it be a certain width (*id.* at 18); or (4) any American standards that counsel against using a weatherstrip or "sash gasket" on the underside of the sash (*id.* at 18-19). The only literature Wolf found was a 1979 publication of the Swedish Finnish Timber Council, which on its face applies only to "windows of redwood and white wood from Sweden and Finland," and outdated general construction publications that do not apply to the types of windows and hinge hardware at issue here. (*Id.* at 16, 18, 19.)

Plaintiffs' opposition completely ignores all of these points. They repeatedly state that their experts "cited to multiple industry publications," without making any attempt to explain how those publications could possibly reflect industry standards applicable in this case. (*See, e.g.*, Pls.' Opp'n at 5 ("Plaintiffs' experts cited to multiple industry publications in support of their opinion that Kolbe's windows suffer from an inadequate sill slope."); 6 ("Plaintiffs' expert cited to industry publications . . . ."); 17 ("Kolbe ignores that Plaintiffs' expert report does indeed cite numerous sources . . . .").) "Citing sources" that are out of date and inapplicable hardly shows general acceptance of Wolf's opinions; indeed, the fact that he had to resort to such sources indicates exactly the opposite. Because Plaintiffs have not even attempted to

7

demonstrate that Wolf's "sources" are relevant and legitimate, they concede that Wolf has no relevant third-party support for the theories he prepared for this litigation.

### 4. Plaintiffs Do Not Dispute that Wolf Failed to Evaluate the Feasibility of Alternate Designs or Whether Alternate Designs Would Resolve the Alleged Problems

Kolbe's opening brief further explained that Plaintiffs' experts made no effort to evaluate potential alternatives to Kolbe's design, have no scientific basis to opine that alternative designs would improve the performance of Kolbe windows, and do not even know if it is feasible to build a casement-style window without the design features they criticize. (Kolbe's Opening Br. at 9-11.) In fact, it is not possible: casement-style windows cannot have the fully sloped sills that Wolf recommends, because the slide hinge mechanism for opening and closing the windows will not properly operate without a flat mounting surface on the sill. (*Id.* at 5-6.) Moreover, the size of the gap between the sill and sash is dictated by many factors other than Kolbe's design, such as installation and adjustments by the installer and owner. (*Id.* at 6.)

Plaintiffs do not directly dispute any of these points, and respond only by insinuation. For example, they note that Kolbe's double-hung windows are sloped at the angle their expert suggests, insinuating that this is feasible for casement-style windows as well. (Pls.' Opp'n at 13-14.) But interference with a hinge mechanism is not a concern for double-hung windows, which are opened by manually lifting the sash; they do not use the slide hinge required to open casement-style windows. Plaintiffs also assert that Wolf actually *did* offer an alternative design, testifying "that he provided what the window industry would recommend based on experience." (Pls.' Opp'n at 14 (citing dkt. 310 at 53:9-54:5).) In fact, in the deposition testimony they cite for this assertion, Wolf merely repeats his primary design criticisms, admits that they are based solely on European sources, and confirms that he made no independent effort to assess whether casement-style windows could accommodate the changes he recommends:

8

> Q: So did – did Exponent prepare a design of a casement window that addresses those three defects that you're pointing to in this case, the sill slope, the gap, and the weather strip, and correct those things?
>
> A: We provide a – a – what the industry would recommend based on, you know – and this would be based on European experience – a slope, remove the weather strip and provide a 6 millimeter gap.
>
> Q: But my question is, did you actually design that, did you prepare a drawing or anything else that shows this is how you think it should be?
>
> A: I don't see the usefulness in doing that. I mean, that's – I think the criteria that we've laid out is essentially design criteria. They have to – they have been provided by some other – you know, the Europeans for their wood window design.
>
> Q: Does that mean you did not do that?
>
> A: We didn't – we didn't actually put together a drawing.

(Dkt. 310 at 53:9-54:5 (form objection omitted).)

Plaintiffs can point to no evidence that Wolf ever considered whether his criticisms could be addressed in a feasible alternative design, whether in the form of a drawing, a model, notes, or anything else. Nor can they, because Wolf admits he did not do so. Had Wolf attempted to evaluate an alternative design, perhaps he would have realized that his belief about the important issue of where the casement hinge mounts is wrong,[1] and that the changes he recommends would render casement-style windows inoperable, a point that Plaintiffs do not dispute.[2]

---

[1] In his deposition, Wolf testified that he believed the hinges for casement-style windows mount to the side jamb rather than the sill. (Dkt. 310 at 48:16-49; 14.)

[2] Rather than disputing this point, Plaintiffs fall back on their crutch argument. (*See* Pls.' Opp'n at 16 ("This again serves to highlight that Kolbe's challenges to Plaintiffs' experts have nothing to do with whether or not they are scientifically sound, but rather that Kolbe disagrees with them and hopes that, by disagreeing enough, this Court will simply exclude them.").)

4835-6804-8682.1

Lacking any genuine basis to contend that their experts considered the implications of design changes or whether they would result in better windows, Plaintiffs assert that their experts did not need to evaluate those things. This assertion is baseless.

*First*, Plaintiffs argue that they "are not required to offer a reasonable alternative design as an element of their breach of warranty claims." (Pls.' Opp'n at 13.) That is true, but misses the point entirely. The failure to consider the feasibility of alternative designs is not a failure of an element of their claim; it is a failure of their expert to employ reliable methods in reaching his opinions. *See Bourelle v. Crown Equip. Corp.*, 220 F.3d 532, 536-37 (7th Cir. 2000) (affirming the district court's exclusion of expert testimony on the ground that the expert's failure to consider whether it would be feasible and effective to change the allegedly defective design caused his opinions to "fall into the category of subjective belief or unsupported speculation").

*Second*, their attempts to distinguish *Bourelle* fall flat. They note that *Bourelle* was a personal injury case that involved a failure to warn as well as an alleged defect (Pls.' Opp'n at 14), but do not explain why that matters. The district court and Seventh Circuit excluded the *Bourelle* expert's defect opinions because they were *unreliable* due to a failure to consider the feasibility of alternative designs, and the reliability of his opinions did not hinge on whether the defect resulted in injury to people rather than property.

*Third*, Plaintiffs cite district court cases for the proposition that "[c]ourts accept expert testimony of an alternative design without the level of detail that Kolbe is seeking to impose," implying that Kolbe argued for "complete technical drawing[s]." (Pls.' Opp'n at 14-15.) But Kolbe never argued that complete technical drawings were required, or that the proposed alternatives had to take any particular form. Rather, Kolbe contends that experts

10

asserting defective designs must provide *some* analysis of what the manufacturer should have done differently, whether those changes would have been feasible, and whether the changes would have actually solved the alleged problems. Plaintiffs' experts made no attempt whatsoever to do any of those things.

      **B.    Plaintiffs Do Not Address the Substance of the Problem with the Reliability of Beckham's Opinion Regarding K-Kron Paint**

Kolbe's opening brief explained three reasons why the Court should exclude the opinion of Plaintiffs' other expert, Haskell Beckham, that Kolbe's optional K-Kron paint is too impermeable and traps water. *First*, Beckham offers no scientific basis whatsoever for that opinion—no standards, no comparative analysis with other paints used by other manufacturers, no cost-benefit analysis weighing K-Kron's retention properties versus its ability to keep water out of the wood in the first place, nothing. *Second*, Beckham's testing was meaningless, in that it proved only the common-sense proposition that saturated wood dries faster when its surface is bare than when it is painted. *Third*, that testing was methodologically flawed in any event. (*See* Kolbe's Opening Br. at 26-29.)

Rather than responding to those arguments, Plaintiffs merely repeat the very proposition that Kolbe is challenging:

> Mr. Beckham conducted a saturation test to evaluate how K-Kron affects the ability of wood to dry, and confirmed that it greatly reduced the wood's ability to rid itself of moisture. This supported his opinion that the K-Kron paint used by Kolbe leads to the Windows retaining an excessive amount of moisture, leading to rot and decay.

(Pls.' Opp'n at 20-21 (internal citation omitted).) The first sentence, as Beckham himself admits, is just common sense—painted wood dries slower than bare wood. (June 22, 2015 Deposition of Haskell Beckham (dkt. 309) at 98:3-99:5.) That fact does nothing to demonstrate that the "K-Kron paint used by Kolbe leads to the Windows retaining an *excessive* amount of moisture" as

11

compared to other paint finishes. This was the crux of Kolbe's motion with regard to the paint, and Plaintiffs completely ignore it. Indeed, they offer no response whatsoever to Kolbe's arguments regarding the unreliability of Beckham's K-Kron opinion, other than their familiar refrain that Kolbe merely "disagrees with Mr. Beckham." (Pls.' Opp'n at 20.)

### C. Plaintiffs Do Not Address the Substance of the Problem with the Reliability of Beckham's Opinion Regarding the Wood Preservative Application Process

Plaintiffs also ignore the substance of Kolbe's arguments for excluding Beckham's opinion that Kolbe should have applied its wood preservative using the pressure treatment method normally reserved for critical applications like marine pilings and highway guardrails, rather than the dip treatment method used by Kolbe and other window manufacturers. Kolbe's opening brief explained that Beckham could cite no industry standards counseling the pressure treatment method, could point to no other window manufacturers who use it, gave no consideration to its feasibility for wood windows, and performed no testing to confirm his hypothesis that it would improve the windows' resistance to rot. Moreover, the only testing that Beckham did perform failed to conform to industry standards set forth by the American Wood Protection Association and the Window and Door Manufacturers Association. (*See* Kolbe's Opening Br. at 29-31.)

Plaintiffs do not dispute any of these points. Oddly, they deny that Kolbe even made these arguments:

> Finally, Kolbe attacks Mr. Beckham's testing of the wood preservative process used by Kolbe as 'based on faulty testing' but fails to provide a reason why other than that Mr. Beckham is not a wood preservative expert and that Kolbe would have performed a different test. This, again, indicates that Kolbe merely disagrees with Plaintiffs' experts and does not have a valid basis to exclude them.

12

(Pls.' Opp'n at 21.) Plaintiffs' ostrich-like response is a concession that Plaintiffs have no legitimate way to defend the reliability of Beckham's opinions regarding the wood preservative.

## II. PLAINTIFFS DO NOT REFUTE ANY OF KOLBE'S ARGUMENTS REGARDING THEIR EXPERTS' DAMAGES OPINIONS

Kolbe challenged the admissibility of Plaintiffs' experts' damage calculations on two grounds: (1) that their opinions rest in large part on the reliability of a software program prepared by another company, RS Means, and thus are not based on their own "scientific, technical, or otherwise specialized knowledge"; and (2) while the program may be reliable for some applications, it is not reliable for what is needed here—calculating the cost of removing and replacing existing windows—due to specific limitations in the program. (Kolbe's Opening Br. at 36-39.)

Once again, Plaintiffs do not respond at all to these arguments. Instead, in a one-paragraph summary, they merely provide a general description of the RS Means program, without any mention of the specific deficiencies that their expert admits cause problems when using the program to calculate the cost of removing existing windows and installing new ones. (Pls.' Opp'n at 24.)

## III. PLAINTIFFS FAIL TO DEMONSTRATE WHY THEIR EXPERT OPINIONS WILL ASSIST THE TRIER OF FACT IN DECIDING THE TWO SURVIVING CLAIMS IN THIS CASE

Plaintiffs *do* respond to some of Kolbe's arguments that Plaintiffs' experts' opinions will not assist the trier of fact, but not persuasively. This issue must be evaluated with reference to the two surviving claims in this case: breach of Kolbe's written warranties, and breach of the implied warranty of merchantability.

13

### A. Plaintiffs Fail to Distinguish Highly Relevant Authority Establishing that Design Defects are Not Encompassed by the Written Warranties

By their terms, Kolbe's written warranties for the windows apply to "defects in material and workmanship," not product design. In construing a substantively identical warranty from another Wisconsin window manufacturer, the United States District Court for the Eastern District Court held that the phrase "defects in material and workmanship" does not encompass defects in product design. *Barden v. Hurd Millwork Co.*, No 06C046, 2009 U.S. Dist. LEXIS 110417, at *4-5 (E.D. Wis. Nov. 5, 2009) (citing *Voelker v. Porsche Cars N. Am.*, 353 F.3d 516, 527 (7th Cir. 2003)). Plaintiffs' experts both testified that their opinions relate solely to design, and that they are not asserting defects in material or workmanship.[3] (*See* dkt. 310 at 43:7-44:6; dkt. 309 at 110:2-16, 124:17-125:2, 127:5-15.) Thus, as Kolbe argued in its opening brief, their experts' opinions are not helpful to the jury in assessing whether Kolbe breached the written warranties.

Plaintiffs offer four arguments in response, all of which miss the mark. *First*, they contend that *Barden* is distinguishable because the defect at issue there did not cause the windows "to completely fail to function as windows, is the case here." (Pls.' Opp'n at 22.) As an initial matter, neither Plaintiffs nor their experts have asserted that Kolbe windows "completely fail to function as windows." But even if they did, that would not be a ground for distinguishing *Barden*. There is no rational basis for concluding that a defect is one of "material and workmanship" if it results in a total failure of one window, but not "material and workmanship" if the same defect creates only a lesser problem in another window. The *cause* of

---

[3] Plaintiffs assert that their "expert opines that the *materials* (*i.e.*, K-Kron and preservative) used were inappropriate and defective." (Pls.' Opp'n at 22.) They cite nothing for that proposition, and Beckham himself contradicts it, as he unequivocally denied in his deposition testimony that he is offering any such opinions. (*See* dkt. 309 at 110:2-16 (testifying that he is merely critical of Kolbe's design decision to use K-Kron paint; he is not opining that K-Kron is itself defective in any way); 127:5-15 (confirming that he has "no criticism of the preservative products themselves," he just criticizes the choice to apply them using the dip treatment method rather than pressure treatment).)

14

the problem determines whether a defect is one of design, materials, or workmanship—not its *effect*.

*Second*, Plaintiffs cite two cases from district courts in other circuits, which reached a different conclusion than *Barden* and *Voelker*. (Pls.' Opp'n at 22-23.) But those cases are not nearly as analogous and persuasive as *Barden*, which interpreted a materially identical warranty issued by a manufacturer engaged in the same business as Kolbe in the same state as Kolbe.

*Third*, Plaintiffs cite two Wisconsin state court cases, but neither of them has anything whatsoever to do with this issue. Both cases involved lemon vehicles, and both stand for the unremarkable proposition that jurors may infer defects in materials and workmanship in a a vehicle that never runs properly even if the plaintiff's mechanics cannot pinpoint the exact cause of the problem. *See Schweiger v. Kia Motors Am., Inc.*, No. 2012AP962, 2013 Wisc. App. LEXIS 248, at *19-20 (Wis. Ct. App. Mar. 21, 2013) (unpublished) ("Based on this evidence, we conclude that a jury could reasonably infer that the vehicle would not reliably start when the fuel tank was less than one-quarter full and that this problem with the vehicle was due to an underlying defect in material or workmanship."); *Dobbratz Trucking & Excavating, Inc. v. PACCAR, Inc.*, 2002 WI App 138, ¶ 12, 256 Wis. 2d 205, 647 N.W.2d 315 (permitting jury to make same inference of defect). These cases, involving what inferences a jury can draw in the *absence* of expert opinion regarding the precise cause of the problem, have nothing to do with the difference between design defects and defects in material or workmanship.

*Fourth*, Plaintiffs make a last-ditch argument that construing "material and workmanship" as not including design defects would allow Kolbe to "sell a completely defective product with impunity." (Pls.' Opp'n at 21-22.) That is absurd. There is a broad universe of

15

potential claims against product manufacturers for defects, not to mention commercial consequences. All Kolbe, *Barden*, and *Voelker* are saying is that plaintiffs who pursue breaches of specific express warranties must prove a defect that is encompassed by those warranties—and in this case (as in *Barden* and *Voelker*), the warranties at issue are limited to defects in material and workmanship.

### B. Plaintiffs Fail to Show How Their Expert's Opinions Would be Helpful on the Issue of Merchantability

Finally, Kolbe's motion to exclude Plaintiffs' experts noted that even if the windows were defectively designed in the ways those experts' suggest, they did not and could not opine that those design flaws would necessarily result in rot. As Kolbe explained, "Using Wolf's own numbers, Kolbe calculated the rot claim rate and determined that in each of the past 10 years, less than 1 percent of the relevant orders (*i.e.*, orders including casement-style windows or windows with K-Kron paint) have given rise to subsequent complaints of rot for *any* window included in those orders." (Kolbe Opening Br. at 35.) Thus, these purported design defects rarely (if ever) manifest themselves by causing damage, and Plaintiffs' experts cannot even say whether they caused damage in Plaintiffs' windows—because the experts did not examine other obvious explanations for the damage, as noted above. A design defect that does not cause damage cannot render the windows unmerchantable, as established in the case law cited by Kolbe in support of this motion. (*See id.* at 35-36.)

Plaintiffs offer no substantive rebuttal. They simply return to their old standby, asserting that Kolbe merely "disagrees with Plaintiffs' experts' opinions"—nothing more. (Pls.' Opp'n at 23.)

16

## CONCLUSION

Plaintiffs have failed to offer any substantive response to the arguments set forth in Kolbe's motion to exclude their expert witnesses under Federal Rule of Evidence 702. For the foregoing reasons and those set forth in Kolbe's opening brief in support of this motion, this Court should exclude those experts.

Dated this 13th day of November, 2015.

/s/ *Gordon Davenport III*
Gordon Davenport III (WI Bar No. 1013931)
Matthew D. Lee (WI Bar No. 1061375)
Krista J. Sterken (WI Bar No. 1081419)
Megan R. Stelljes (WI Bar No. 1092714)

*Attorneys for Defendant
Kolbe & Kolbe Millwork Co., Inc.*

**FOLEY & LARDNER LLP**
150 East Gilman Street
Madison, WI 53703-1482
Post Office Box 1497
Madison, WI 53701-1497
608.257.5035 Phone
608.258.4258 Facsimile

4835-6804-8682.1