IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY HALEY and MICHAEL HALEY,
LESLIE BANKS and JAMES HAL BANKS,
ANNIE BUINEWICZ and BRIAN BUINEWICZ,
TERRANCE McIVER and JEAN ANN McIVER,
SUSAN SENYK and CHRISTIAN SENYK,
MATTHEW DELLER and RENEE DELLER,
PATRICIA GROOME, GARY SAMUELS and
MARIE LOHR, on behalf of themselves and                  OPINION AND ORDER
others similarly situated,

                    Plaintiffs,                                14-cv-99-bbc

          v.

KOLBE & KOLBE MILLWORK CO., INC.,

                    Defendant,

          and

FIREMAN'S FUND INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

                    Intervenor Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


     Plaintiffs have brought this action under Wisconsin law on behalf of themselves and

similarly situated individuals, alleging that defendant Kolbe & Kolbe Millwork Co., Inc.

breached express and implied warranties under state law related to allegedly defective

windows installed in their homes.  Before the court is plaintiffs' motion to certify  (1) four

1

national subclasses under Fed. R. Civ. P. 23(b)(3) for monetary damages on behalf of consumers with windows that have exhibited rot; and (2) a similar Rule 23(b)(2) class seeking declaratory and injunctive relief on behalf of consumers with windows that have not yet manifested the alleged defects.  Dkt. #284.  Defendant opposes certification on the grounds that the proposed classes and subclasses are neither well defined nor manageable and the breach of warranty claims require the resolution of too many individual questions of law and fact.  The parties also disagree about the scope of plaintiffs' claims.  In particular, they dispute whether plaintiffs have any claims related to (1) express warranties that defendant's windows meet certain manufacturing and building standards and (2) an implied warranty of the windows' fitness for a particular purpose.  Jurisdiction is present under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

I am denying plaintiffs' motion for class certification because plaintiffs have failed to satisfy the requirements of Rule 23(a) (prerequisites) and (b) (types of actions).  I conclude that plaintiffs have waived their claims related to an express warranty that defendant's windows met certain standards and building codes and that they have failed to plead and waived any claims for breach of the implied warranty of fitness for a particular purpose.

Plaintiffs have proposed overly broad and confusing class definitions and have not provided sufficient information from which the court can conclude that their claims are subject to class-wide proof or fit for resolution on a class-wide basis under either Rule 23(b)(2) or (3).  With respect to the Rule 23(b)(3) class, the parties' submissions show that the predominant questions would be those affecting only individuals, at least as to several

2

aspects of this case, including questions related to choice of law, notice of breach, privity, accrual, tolling, equitable estoppel, warranty conditions, causation and damages. Plaintiffs' proposed Rule 23(b)(2) class faces similar problems because the individual inquiries about defendant's actions and refusals to act that are necessary to determine whether the class is entitled to the requested declaratory and injunctive relief make the class unmanageable as it has been proposed. Further, plaintiffs have failed to demonstrate that a single declaratory judgment or injunction would provide final relief to each member of the class.

Plaintiffs note correctly that the Court of Appeals for the Seventh Circuit has made it clear in several recent cases that "the fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class" under either Rule 23(b)(2) or (3). Bell v. PNC Bank, National Association, 800 F.3d 360, 379 (7th Cir. 2015) (citing Chicago Teachers Union Local No. 1 v. Board of Education of City of Chicago, 797 F.3d 426, 442 (7th Cir. 2015); In re IKO Roofing Shingle Products Liability Litigation, 757 F.3d 599, 602 (7th Cir. 2014); Pella Corp. v. Saltzman (Pella II), 606 F.3d 391, 394 (7th Cir. 2010); Arreola v. Godinez, 546 F.3d 788, 801 (7th Cir. 2008); Allen v. International Truck and Engine Corp., 358 F.3d 469, 471–72 (7th Cir. 2004)). Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." A court may limit the class action to questions of liability and hold separate hearings to determine the damages of individual class members or homogeneous groups of class members. McMahon v. LVNV Funding, LLC, __ F.3d __, 2015 WL 8119786, at *3 (7th Cir. Dec. 8, 2015) ("It is well established that, if a case

3

requires determinations of individual issues of causation and damages, a court may 'bifurcate the case into a liability phase and a damages phase.'") (quoting <u>Mullins v. Direct Digital, LLC</u>, 795 F.3d 654, 671 (7th Cir. 2015)); <u>Butler v. Sears, Roebuck & Co.</u>, 727 F.3d 796, 800 (7th Cir. 2013) (noting this is "sensible way to proceed"); <u>Carnegie v. Household International, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues.").

In this case, however, plaintiffs have not asked for "issue" certification, have not explained how any question could be resolved for all class members with common proof and have not shown that individual proceedings with respect to issues involving multiple state laws, fact-specific inquiries, causation and timeliness would be manageable. <u>Marshall v. H & R Block Tax Services Inc.</u>, 270 F.R.D. 400, 407 (S.D. Ill. 2010) (noting same in denying class certification involving consumer fraud and breach of fiduciary duty claims). In lieu of a full discussion of the Rule 23 requirements, plaintiffs make vague and conclusory statements and point to cases in which other federal courts have certified "similar" class actions. For example, they rely heavily on a case in which the District Court for the Northern District of Illinois certified Rule 23(b)(2) and (3) classes of window buyers who alleged that defendants fraudulently concealed an inherent product defect that resulted in rot of the windows' wood components. <u>Saltzman v. Pella Corp. (Pella I)</u>, 257 F.R.D. 471 (N.D. Ill. 2009), <u>aff'd</u> 606 F.3d 391. Although <u>Pella</u> is instructive in some respects, it cannot serve as a substitute for a Rule 23 analysis, particularly because of the significant differences

between the facts in this case and those in  Pella, which involved only one fraud claim in six states and a single defect in a specific type of window.  Id. at 474.

Although class certification of all of the issues in this case would be unmanageable under Rule 23(b)(2) or (3), it may be possible for plaintiffs to propose a class for which limited issues of liability may be determined.  Accordingly, I will give them a final opportunity to file a renewed request for certification of a limited issue class or classes that addresses the concerns outlined in this opinion.  Along with that motion, plaintiffs must submit a proposed trial plan that describes in detail the issues likely to be presented at trial, discusses whether and how those are susceptible to class-wide proof and explains how individual inquiries could be handled.

The decision to give plaintiffs a second chance makes the February 1, 2016 trial date unworkable.  Accordingly, I am striking the trial date and denying the parties' motions in limine without prejudice.  After I resolve plaintiffs' renewed motion for class certification, I will set a new schedule for the remainder of the case.

In determining whether the proposed classes and subclasses should be certified, I have considered the allegations in the second amended complaint and the affidavits and depositions that the parties have submitted.  Sharpe v. APAC Customer Services, Inc., 2010 WL 135168, *1 (W.D. Wis. Jan. 11, 2010); Sjoblom v. Charter Communications, LLC, 571 F. Supp. 2d 961, 964 (W.D. Wis. 2008).

5

BACKGROUND

The named plaintiffs live in various states across the country and own homes in which defendant's windows have been installed at different times since 1997. Sum. Jmt. Ord., dkt. #233 at 3-10. All of them experienced one or more problems with some of defendant's windows, including leaking, rot or cracking or peeling paint. Id. Defendant's responses to plaintiffs' complaints varied, ranging from doing nothing to replacing a limited number of window sashes. Id. For a variety of reasons, all of the plaintiffs eventually concluded that defendant would not honor its written warranty on the windows. Id.

Since 1997, defendant has issued at least seven different versions of a written window warranty. Window warranties, dkt. #314, exh. 1. Every version of the window warranty includes the following information:

- A warranty that the windows shall be free from defects in material and workmanship that would render them unserviceable or unfit for the ordinary use for which each window is manufactured.

- A statement that defendant's obligation under the warranty is limited at its option to the repair, replacement or refund of the purchase price of the window.

- A statement that the warranty is conditional on the window's being installed, finished, maintained and operated in accordance with defendant's instructions.

- Exclusions, including those related to environmental conditions and the type of structure in which the window was installed.

- Disclaimers of other written and implied warranties.

- A requirement that the claimant provide written notice of a warranty claim.

6

The window warranties differ in the following respects:

- The length of warranty (one year for windows purchased in 1997 and 10 years for windows purchased in or after 1998).

- The type, form and location of the disclaimers.

- The number and type of exclusions.

- The time period within which to file written notice of a warranty claim.

- The existence of a choice of law provision (beginning in October 2002, window warranties included a Wisconsin choice of law provision).

Since 1997, defendant has issued at least six different versions of a pre-finishing warranty. Dkt. #314, exh. 2. All versions of the pre-finishing warranty include the following information:

- A warranty that the K-Kron system (which includes a preservative wood treatment, polyurea primer and K-Kron topcoat) will resist cracking, peeling and flaking of the applied paint film for a period of 10 years after purchase (in versions before 2012) or shipment (in versions from 2012 or after).

- A statement that defendant reserves the right to determine the best method to correct the situation.

- Beginning in 2002, a Wisconsin choice of law provision.

- Disclaimers of other express and implied warranties (although the disclaimer language varied in content, typeface and location).

- Various conditions, including a requirement that all faces and edges be thoroughly finished and that the owner must follow defendant's written instructions regarding finishing, maintenance, operation and refinishing.

- A requirement that warranty claimants must provide written notice of a claim promptly (for versions manufactured before October 2002) or within 30 days of discovery (for versions manufactured after October 2002).

Plaintiffs filed this lawsuit on February 12, 2014, alleging in relevant part that defendant breached the express written warranties, outlined above, as well as implied warranties that it made about the design and performance of its windows and the products known as the K-Kron or K-Kron II system used for "pre-finishing" the windows. Dkt. ##1 and 34. In their motion for class certification, plaintiffs identify three different categories of windows that they believe are defective: (1) wood double-hung and glider windows coated with K-Kron or K-Kron II; (2) aluminum clad casement, transom and picture windows; and (3) wood casement, transom and picture windows coated with K-Kron or K-Kron II.

The parts of defendant's windows relevant to this lawsuit are window sashes, sills, stiles and rails. A sash frames the glass and slides up and down within the frame. A double-hung window has two movable sashes and a single-hung window has only one. The horizontal portions of the sash are called rails and the vertical portions are called stiles. The sill is at the bottom of the window where the lower sash rests when the window is closed. The sill is wider than the bottom of the sash and extends both into the house and beyond the sash outside the home.

According to plaintiffs' experts, Joel Wolf and Haskell Beckham, the accused windows contain one or more of the following design defects that cause the bottom rail and adjoining stiles of the wood sashes to deteriorate and decay from exposure to precipitation: (1) an inadequate sill slope; (2) an inadequate gap between the sill frame and the bottom of the sash; (3) a weatherstrip gasket on the bottom of the sash that traps water on the sill; (4) an exposed wood surface on the underside of the sash that is treated with the ineffective water

8

repellent known as K-Kron or K-Kron II; and (5) cracked K-Kron and K-Kron II protective coatings.  Dkt. #281 at 2.  Specifically, plaintiffs allege that the double-hung and glider windows have a defective K-Kron coating (defect number five); the aluminum-clad windows have all of the defects except for an exposed wood sash (defect numbers one through three and five); and the wood casement, transom and picture windows have all five defects.

OPINION

I.  SCOPE OF PLAINTIFFS' CLAIMS

Before addressing the motion for class certification, it is necessary to resolve a dispute between the parties about what claims are left after summary judgment.  On February 12, 2015, defendant moved for partial summary judgment, arguing that many of plaintiffs' claims were barred by the applicable statute of limitations and that plaintiffs had failed to establish the elements of some of their claims.  Dkt. #164.  In an order entered on June 15, 2015, I granted defendant's motion with respect to several of plaintiffs' claims, including (1) express warranty claims brought by all of the plaintiffs related to statements made by defendant in its advertising and product literature; and (2) implied warranty clams brought by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs.  Dkt. #233. (Defendant's motion for summary judgment did not address the implied warranty claims brought by the Haley, Groome and Samuels plaintiffs.)  I denied the motion with respect to (1) express warranty claims brought by the Banks, Lohr, Senyk and Deller plaintiffs related to defendant's representation that the windows would remain free from defects for 10 years

("no defect" claims); and (2) express warranty claims brought by the McIver and Senyk plaintiffs based on defendant's failure to honor its promise to repair, replace or pay for the defective windows ("failure to honor" claims).  Id.

In support of their motion for class certification, plaintiffs contend that in addition to the claims that survived defendant's motion for partial summary judgment, they also have viable claims that defendant breached (1) an express warranty that its windows met certain [Window &] and Door Manufacturer's Association standards and building codes; and (2) an implied warranty that its windows were fit for a particular purpose.  Dkt. #285 at 11 (CM/ECF numbering).  Defendant contends that plaintiffs either failed to plead these additional claims or waived them by not discussing them in response to the motion for summary judgment.  I agree with defendant for the reasons explained below.

## A.  Manufacturing Standards and Building Code Claims

Defendant notes correctly that plaintiffs do not mention anything in their amended complaint or in their response to defendant's motion for partial summary judgment about the windows' failure to meet either the Window & Door Manufacturers Association standards or local building codes.  Dkt. ##34 and 199.  Plaintiffs do not respond to defendant's arguments that they have waived these claims, thus forfeiting the issue.  United States v. Jacques, 345 F.3d 960, 962 (7th Cir. 2003) (forfeiture is failure to make timely assertion of right); Nichols v. National Union Fire Insurance Co. of Pittsburgh, PA, 509 F.

Supp. 2d 752, 760 (W.D. Wis. 2007) (plaintiffs forfeited arguments by failing to respond in meaningful way).

In addition, plaintiffs seem to base their manufacturing standards and building codes claims on  statements that defendant made in its product manuals.  As I explained in the order on defendant's motion for summary judgment, dkt. #233, these claims qualify as "advertising statement" express warranties.  I dismissed them at summary judgment either because they were untimely or because plaintiffs had failed to identify any particular statements made by defendant.  Id. at 30-37.  Having waived their "advertising statement" claims on summary judgment, plaintiffs may not reassert them or add to them at this stage of the proceedings.

For the sake of completeness, I note that plaintiffs recently moved for reconsideration of the summary judgment order on the ground that they had discovered new evidence that defendant made false representations to the public regarding "certification testing" of its windows.  Dkt. #367.  Although plaintiffs stated generally in that motion that defendant "artfully worded materials to falsely assure class members, builders and installers that its windows complied with building codes," they argued only that defendant's actions supported their previously-dismissed Wis. Stat.§ 100.18(1) claims.  Id.  See also dkt. #384 (dismissing motion because plaintiffs failed to show new evidence was material or would produce new result on summary judgment).  Plaintiffs had the opportunity in their recent argument to argue that the new evidence also supported its previously-dismissed "advertising statement"

warranty claims, but chose not to do so and therefore, have waived their right to raise this argument in the future.

## B. Implied Warranty of Fitness for a Particular Purpose

Under the Uniform Commercial Code and Wisconsin law, an implied warranty of fitness for a particular purpose arises where the seller knows or has reason to know of a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.  Wis. Stat. § 402.315; UCC § 2-315.  The statutory comment explains that

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.  For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

§ 402.315 (editors' notes).  See also UCC § 2-314 (implied warranty of merchantability means goods are fit for ordinary purposes for which goods are used).

Defendant points out correctly that plaintiffs have never alleged that they purchased their windows for any particular purpose other than their ordinary function as windows.  In count II of their amended complaint, which is entitled "Breach of Implied Warranty," plaintiffs allege that defendant "impliedly warranted that the Windows were properly designed, developed, manufactured, distributed, and marketed; that the designs and materials were proper and of first-class and workmanlike quality; and the windows were fit

12

for their *intended* use." Dkt. #34 at ¶ 121 (emphasis added).  They further allege that defendant "breached its warranties by failing to provide adequate and proper designs and/or materials for the Windows, failing to inspect and identify windows and/or materials with defects, and failing to provide defect-free windows to Plaintiffs and the Classes."  Id. at ¶ 123.  Plaintiffs did not allege any special or particular use for the windows, and their allegation that the windows were not fit for their intended use suggests the customary uses of the windows and not a special or particular purpose.  Plaintiffs also failed to identify the scope of their implied warranty claims in response to defendant's motion for partial summary judgment challenging the timeliness of some of these claims.  Dkt. #165 at 14.  In fact, they failed to mention the implied warranty claims at all, which resulted in a ruling that the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs had abandoned their claims.  (Because defendant did not challenge the implied warranty claims brought by the Haley, Samuels or Groome plaintiffs, those claims remain at issue in this case.)

In their brief in support of class certification, plaintiffs repeat the vague allegations in their complaint.  Dkt. #285 at 42.  However, in their reply brief, plaintiffs attempt to explain that defendant's promise that its windows were of "superior quality" is an implied warranty that "the Windows were properly designed, developed, manufactured, distributed, marketed, sold, and installed and that the designs and materials were proper and of first-class and workmanlike quality."  Dkt. #359 at 5 and 31.  They also state that defendant's "claim that its Windows were properly tested and certified pursuant to standards promulgated by

the Hallmark Program and Keystone Program created an implied warranty that its Windows

met the specifications required by those programs."  Id.

Although defendant's statements that the windows were superior and met certain

standards may qualify as an express warranty (which are claims that plaintiffs have waived),

these representations do not identify or describe a specific *use* that any of the potential class

members had for the windows apart from their ordinary purpose.  In support of their view,

plaintiffs cite Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530,

at *5 (N.D. Ill. Apr. 4, 2003), in which the plaintiff's claim for implied warranty of fitness

for a particular purpose was based on the defendant's promises to manufacture "high

quality" batteries.  However, plaintiffs ignore an important distinction.  In Pressalite, the

plaintiff also alleged that the defendant had promised that the batteries would be suitable

as components in two models of plaintiff's flashlights but knew its products would not meet

that purpose.  Id. at *5.  In other words, the defendant knew that the plaintiff had a

particular purpose for the products and that the plaintiff was relying on its ability to produce

high quality products for that purpose.  There are no such allegations in this case.

Finally, in a convoluted argument, plaintiffs try to concoct a "particular use" by

reasoning that class members bought the windows "for the purpose of not having to perform

maintenance on them" or "not having to replace them."  However, expecting the windows

not to require maintenance or replacement is not a "use" for the windows.

14

Accordingly, I find that plaintiffs have failed to plead any claims for the breach of the implied warranty of fitness for a particular purpose and have waived their right to do so at this point in the proceedings.

## C.  Remaining Claims

In light of these rulings, the following claims remain in this lawsuit and are relevant to the motion for class certification:  (1) the express warranty "no defect" claims brought by the Banks, Lohr, Senyk and Deller plaintiffs; (2) the express warranty "failure to honor" claims brought by the McIver and Senyk plaintiffs; and (3) the implied warranty of merchantability claims brought by the Haley, Groome and Samuels plaintiffs.

## II.  CLASS CERTIFICATION

Plaintiffs have the burden of showing that their proposed classes satisfy the requirements of Rule 23 and proving each disputed requirement by a preponderance of evidence.  Messner v. Northshore University Health System, 669 F.3d 802, 811 (7th Cir. 2012) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001)). "On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff.  If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class." Id.  I have concluded that the question of class certification in this case may be decided on the parties' written submissions without holding an evidentiary hearing.

15

"Because a class action is an exception to the usual rule that only named part[ies] before the court can have [their] claims adjudicated, the class representative[s] must be part of the class and possess the same interest[s] and suffer the same injur[ies]." Bell, 800 F.3d at 373. Fed. R. Civ. P. 23(a) imposes four requirements that all class actions must satisfy: (1) numerosity, that "the class is so numerous that joinder of all members is impracticable"; (2) commonality, that "there are questions of law or fact common to the class"; (3) typicality, that "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy, that "the representative parties will fairly and adequately protect the interests of the class." Although separate, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." Telephone Company of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982). In addition to these explicit requirements, federal courts have long recognized an implicit "ascertainability" requirement that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." Mullins v. Direct Digital, LLC, 795 F.3d 654, 657 (7th Cir. 2015) ("Class definitions have failed this requirement when they were too vague or subjective."). Finally, plaintiffs must meet the requirements of at least one of the types of class actions listed in Rule 23(b). They ask to bring a class action under both Rule 23(b)(2) and (3).

A.  Rule 23(b)(3)

Rule 23(b)(3) requires plaintiffs to show that common questions of law or fact "predominate" over individual questions and that a class action is "superior" to other methods of adjudication.  Bell, 800 F.3d at 373.  "While similar to Rule 23(a)'s requirements for typicality and commonality, the predominance criterion [of Rule 23(b)(3)] is far more demanding."  Messner v. Northshore University Health System, 669 F.3d 802, 814 (7th Cir. 2012) ((internal quotations omitted).  The predominance requirement is satisfied when common questions represent a significant aspect of the case and can be resolved with common evidence for all class members in single adjudication.  Id.  In evaluating the requirements of Rule 23(b)(3), a court must consider the class members' interests in individually controlling separate actions; the extent and nature of any litigation already begun by the potential class members; the desirability of concentrating the litigation in the forum chosen by the named plaintiffs; and the likely difficulties in managing a class action.  Rule 23(b)(3)(A)-(D).  Also relevant to the analysis are the substantive elements of plaintiff's claims, the proof necessary for those elements and how those issues will be presented at trial.  Farmer v. DirectSat USA, LLC, 2010 WL 3927640, *22 (N.D. Ill. Oct. 4, 2010).  The ultimate question is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997).

Plaintiffs seek to certify the following class under Rule 23(b)(3):

All individuals and entities that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the United

States, in which Kolbe aluminum-clad windows or Kolbe wood windows with
K-Kron or K-Kron II coating are or have been installed since 1997 that have
manifested [sic] defect.

Dkt. #359 at 4.  (I have quoted plaintiffs' reply brief, in which they add the phrase "that have manifested defect" to the original proposed class definition.)  In an attempt to manage the class, plaintiffs propose dividing it into four nationwide subclasses based on the general type of warranty (express or implied) and the year of window installation:  (1) breach of express warranty on windows installed from 2002 to the present; (2) breach of express warranty on windows installed from 1997 to the present; (3) breach of implied warranty of fitness for a particular purpose on windows installed from 2008 to the present; and (4) breach of implied warranty of merchantability on windows installed from 2008 to the present.

Defendant challenges plaintiffs' proposed class and subclasses, contending that plaintiffs cannot satisfy the commonality, typicality, predominance, superiority, adequacy of representation requirements of Rule 23(a) and (b) because the class is unmanageable and there are too many material factual and legal differences among the proposed class members' claims.  Defendant does not challenge the class with respect to the numerosity or ascertainability requirements.

Because the requirements of Rule 23(a) and (b)(3) overlap in ways that make them difficult to analyze separately in this case, I will start by discussing the common issues identified by plaintiffs and then analyze the problems with class manageability and

individual inquiries that defendant says prevent certification of the class and subclasses. Bell, 800 F.3d at 374 (noting same in analyzing proposed class action).

1.  Alleged common issues

Plaintiffs' claims must depend on "a common contention . . . that is capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."). However, the Court of Appeals for the Seventh Circuit has made clear that "Rule 23(b) requires only common evidence and common methodology, not common results." Bell, 800 F.3d at 379.

Plaintiffs list several "fundamental questions" that they say are common to the claims of all class members, including:

1.  Whether defendant designed, manufactured, sold, and entered defective windows into the stream of commerce.

2.  Whether and when defendant found that the windows were not meeting ordinary expectations for the durability and performance of windows.

3.  Whether defendant continued to claim that its windows would remain free from defect for 10 years after that was plainly no longer true.

4.  Whether defendant processed warranty claims in a manner that evaded its express or implied warranty obligations.

5.  Whether defendant failed to honor its promise to repair, replace or pay for defective windows.

6.  Whether defendant's windows were merchantable at the time they were sold.

7.  Whether it is reasonable to expect consumers to inspect and repair window coatings on an annual basis.

8.  Whether the windows' premature failure is attributable to improper installation or maintenance.

Dkt. #285 at 5 and 23.  (Plaintiffs also included two questions related to defendant's alleged warranties that their windows meet manufacturing standards and building codes and the implied warranty of fitness for a particular purpose.  I have not included those questions because plaintiffs do not have any claims based on those warranties.)

Plaintiffs do not explain in their supporting brief how these questions can be resolved for all class members with common proof or why some of the questions are central to the claims of the class members.  Although they state generally that class members purchased similar products, received the same written warranty and were subject to the same conduct by defendant, these vague assertions are insufficient to show that their proposed classes are subject to a common contention that is capable of class-wide resolution.

As discussed at length below, plaintiffs propose broad and overlapping classes that do not align with their claims and fail to address or account for the individualized proof and inquiries that appear to be necessary to resolve the questions they pose.  Questions (1) - (3) seem to relate to the "no defect" claims.  Although plaintiffs suggest in their reply brief that they will rely on expert testimony to show that the accused windows contain up to five design defects that cause rot in the bottom sash of the windows, they ignore individual issues related to accrual, tolling, equitable estoppel, warranty conditions, causation and damages.

It is unclear whether questions (2) and (3) are even relevant because they seem to relate to defendant's knowledge and intent, which are not elements of a breach of warranty claim. Questions (4) and (5) relate to the "failure to honor" claims, which involve the same individual questions as the "no defect" claims and necessarily raise fact-specific inquiries with respect to how defendant handled each individual class member's warranty claim. The implied warranty of merchantability claims discussed in question (6) are subject to individual inquiries related to choice of law, tolling, equitable estoppel, causation and damages. Question (7) asks about the reasonableness of a condition in the written warranties that requires consumers to inspect and repair window coatings on an annual basis. Even if plaintiffs had a means of answering this question on a class-wide basis, it is not clear why the answer would be relevant to plaintiffs' breach of express warranty claims. Finally, question (8) relates to the central issue of causation, which requires a number of fact-specific inquiries of each class member.

Considering these questions, I will turn to defendant's specific contentions about the lack of common issues among potential class members and the predominance of individual inquiries necessary to resolve their claims.

2.  <u>Class definitions and manageability concerns</u>

Defendant contends that the broad class and subclass definitions proposed by plaintiffs are unmanageable and make it difficult to identify potential class members. I agree. The proposed class spans 18 years and all 50 states and includes multiple claims

involving several types of windows with varying design defects.  Although plaintiffs have attempted to divide the class into more manageable subclasses, they provide a limited and confusing explanation of the scope of the proposed subclasses in their supporting brief.  On an initial reading, the first two subclasses seem to overlap:  both are titled "breach of express warranty," and the first subclass includes windows installed from 2002 to the present and the second subclass includes windows installed from 1997 to the present.  It is not until a footnote in their reply brief that plaintiffs make clear that the first subclass includes the "no defect" and "failure to honor" express warranty claims and the second subclass is limited to warranties based on defendant's statements in its product literature concerning manufacturing standards and building codes.  Dkt. #359 at 35 n. 11.  Because I have determined that plaintiffs waived any express warranty claim based on statements in defendant's product literature, the second subclass will not be certified.  Similarly, the third subclass can not be certified because I have found that plaintiffs have no claims related to the breach of an implied warranty of fitness for a particular purpose.  This leaves only two proposed subclasses—one for all of the express warranty claims and one for the implied warranty claims.

As discussed in more detail below, the structure of the remaining two subclasses is unmanageable in light of the wide variety of claims, applicable law, products and alleged defects in this case.  For example, the first subclass includes both the "no defect" and "failure to honor" claims, which call for different evidence and raise separate questions with respect to defendant's conduct, causation, defenses, accrual of the statute of limitations, tolling and

22

equitable estoppel.  The subclass does not account for the fact that in order to bring a "failure to honor" claim, a class member would have had to file a warranty claim.  As written, the class definition includes anyone who had windows installed in certain years and does not make clear who is eligible to bring a "failure to honor claim."  Plaintiffs fail to explain how they planned to manage these differences or whether further subclasses (or subclasses of subclasses) will be needed.

The proposed subclasses also fail to account for what kind of windows were installed in the class members' homes and lump together three different product lines (double hung and glider; aluminum-clad; and wood casement, transom and picture) that allegedly contain various combinations of five separate defects.  Defendant argues that determining whether the windows are defective on a class-wide basis is further complicated by the fact that the designs for the three accused product lines have changed substantially over the past 18 years.  Plaintiffs fail to address these concerns in any meaningful way.  In their reply brief, they cite Leonard v. Sears, Roebuck & Co., 2015 WL 4476620, at *5 (N.D. Ill. July 20, 2015), as an example of a class action that successfully included 29 different models of Kenmore washing machines in one class.  However, the plaintiffs in that case alleged that *one* defect permitted mold to accumulate and generate noxious odors.  Id. at 8-9.  See also Butler, 727 F.3d at 798 (remanding Leonard).  For that reason, the court specifically declined to create subclasses "[u]nless and until it appears to the Court that different washer models had meaningfully different mold problems."  Leonard, 2015 WL 4476620 at *9.  Although the number of products and defects alleged by plaintiffs in this case may not prevent class certification

altogether, it is unclear from plaintiffs' submissions how they would manage such a diverse class.   At a minimum, it would seem that more carefully defined subclasses would be necessary.

With respect to the main class definition, defendant questions why plaintiffs define the class period with reference to the installation date of the windows and not the delivery date, which is the triggering date for the statute of limitations for warranty claims under the Uniform Commercial Code § 2-275.  As I determined in the summary judgment order, the statute of limitations on plaintiffs' *implied* warranty claims runs from the date of delivery, and the statute of limitations on plaintiffs' *express* warranty claims accrue when the class member discovered or should have discovered the breach.   Dkt. #233 at 17-18, 30, 38 (citing Wis. Stat. § 402.725(2) and UCC § 2-275).   Therefore, I agree with defendant that the date of installation seems irrelevant to the class definition.   (Also noteworthy is the fact that defendant's *express* written warranties run from the date of purchase and not the date of delivery or installation.   However, it is unclear whether the date of purchase will be relevant to plaintiffs' express warranty claims in light of the discovery rule.)

### 3.  Individual inquiries

a.  choice of law

Because plaintiffs' breach of warranty claims are governed by state law and plaintiffs have proposed a nationwide class, it is possible that as many as 50 state laws could apply to some of the class members' claims in this case.  7AA Charles Alan Wright, Arthur Miller and

Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1780.1 (3d ed. 2005) (in multi-state class action, choice of law analysis implicates predominance and superiority requirements).  The choice of law analysis affects both the substantive law concerning breach of warranty and the statute of limitations.

### 1)  express warranty claims

Choice of law should not be an issue for the breach of express warranty claims.  As noted above, defendant added a choice of law provision to its express written warranty in October 2002.  The parties agree that Wisconsin substantive law applies to these warranties, and I determined in the summary judgment order that claims under these warranties were subject to Wisconsin's statute of limitations.  Dkt. #233 at 14-17, 28-29 (declining to apply borrowing statute, which is triggered in diversity cases in which laws of foreign jurisdiction may be implicated).  Plaintiffs attempt to limit their first proposed subclass to express warranties with a choice of law provision by defining the subclass to include only those windows installed since 2002.  Dkt. #359 at 16 ("[T]he first subclass . . ., which covers Windows installed from 2002 to the present, is exclusively governed by the laws of Wisconsin.").  However, by definition, the first subclass encompasses nine months (January through October 2002) during which defendant's written warranties did not contain the choice of law provision.  Although plaintiffs did not correct this problem in their reply brief, it is easily amended if they intend to proceed only on their claims for breach of express warranties with a choice of law provision.

2)  implied warranty claims

More problematic is the choice of law issue related to plaintiffs' implied warranty of merchantability claims.  As defendant points out, plaintiffs seem to assume that their implied warranty claims are governed by the choice of law provision in the written warranties.  In their reply brief, plaintiffs cite a portion of this court's summary judgment order, in which I discussed the "contractual choice of law provision" in the Senyk and Deller plaintiffs' written warranties.  However, plaintiffs fail to explain why that provision would apply to the implied warranty of merchantability.  Express written warranties are created by an agreement between the parties, whereas implied warranties are created by law.  Valley Refrigeration Co. v. Lange Co., 242 Wis. 466, 471, 8 N.W.2d 294, 297 (1943).  As made clear in the summary judgment order, the choice of law provision is part of the express written warranty and states that "*[t]his Express Limited Warranty* shall be governed by and construed in accordance with the laws of the State of Wisconsin."  Dkt. #233 at 16 (citing dkt. #167, exh. C) (emphasis added).  Therefore, it applies only to the express warranty claims and not to the implied warranty claims.

In a convoluted argument, plaintiffs contend that the court ruled in its summary judgment order that the implied warranty claims are subject to Wisconsin law.  They are incorrect.  In the summary judgment order, I noted that defendant argued that the implied warranty claims filed by the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs were barred by Wisconsin's statute of limitations.  Dkt. #233 at 37.  Defendant assumed for the purposes of its argument that the Wisconsin statute of limitations (which is longer

than those in the named plaintiffs' home states) applied to these claims. However, because plaintiffs did not respond to that argument, I found that the Banks, Buinewicz, McIver, Senyk, Deller and Lohr plaintiffs had abandoned their implied warranty claims. Id. Although I followed defendant's lead and cited Wisconsin law in discussing defendant's argument, I did not determine as a matter of law that "Wisconsin law applies to all implied warranty claims across the class," as plaintiffs contend. Dkt. #359 at 27. Therefore, a choice of law analysis must be performed before any class may be certified with respect to the implied warranty claims.

If the implied warranty claims are governed by the substantive laws and statute of limitations of the class members' home states, as defendant contends, plaintiffs' fourth proposed subclass is not manageable as proposed because up to 50 state laws could govern those claims. Although courts can divide multi-state classes into state subclasses to address such choice of law issues, this would be unmanageable with 50 different state laws. In re Bridgestone/Firestone, Inc., 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these [breach of consumer product warranty] claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable."); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 677 (7th Cir. 2001) ("[F]ew warranty cases ever have been certified as class actions—let alone as nationwide classes, with the additional choice-of-law problems that complicate such a venture."); Pella I, 257 F.R.D. at 477; Manual for Complex Litigation (4th) § 22.634, p. 412 (2004), 2004 WL 258892, 1 ("If the choice-of-law and subsequent analysis show little relevant difference in the governing law, or that the law of only a few

jurisdictions applies, the court might address these differences by creating subclasses or by other appropriate grouping of claims."). In Pella I, 257 F.R.D. at 485 n.12, the district court divided the class into six state subclasses, but noted that the laws in those six states had nearly identical elements.

Finally, I note that plaintiffs have submitted a notice of supplemental authority in which they point out that defendant has proposed a single set of jury instructions for the named plaintiffs' implied warranty claims. Dkt. #441 at 2. However, defendant has stated only that the states of Wisconsin, Pennsylvania, Michigan and New Hampshire have similar laws with respect to the implied warranty of merchantability. Id. Plaintiffs have failed to show how the choice of law issue can be dealt with on a class-wide basis with respect to the implied warranty claims of class members in the remaining 46 states.

b. accrual, tolling and equitable estoppel

Further complicating the statute of limitations analysis are the issues of accrual and tolling. In the summary judgment order, I determined that the "no defect" express warranty claims accrued when plaintiffs discovered or should have discovered that the windows were defective and the "failure to honor" express warranty claims accrued when plaintiffs discovered or should have discovered that defendant was not going to honor their warranty. Dkt. #233 at 19 and 30. As demonstrated in that order analyzing the timeliness of several of the named plaintiffs' express warranty claims, determining when a claim accrues requires inquiries into the state of mind and knowledge of individual class members and the specific

circumstances surrounding the failure of their windows.  <u>Id.</u> at 21-24.  (The discovery rule does not apply to claims for the breach of implied warranty because those claims accrue when tender of delivery is made.)

In addition, for any express or implied warranty claims that fall outside the applicable statute of limitations period, class members may argue that tolling or equitable estoppel applies.  Both doctrines involve multi-factor tests that require fact-intensive and individual inquires that will vary from class member to class member.  <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 451 (7th Cir. 1990) (explaining types of inquiries required under both doctrines).

Plaintiffs do not address any of these questions in their briefs or explain how they could be managed on a class-wide basis.  Resolving such questions through individual hearings is unworkable for such a large class.  In their reply brief, plaintiffs argue that many courts have rejected a per se prohibition against certification based on different statutes of limitations.  <u>Pella I</u>, 257 F.R.D. at 486; <u>Sebo v. Rubenstein</u>, 188 F.R.D. 310, 316 (N.D. Ill. 1999); <u>Sparano v. Southland Corp.</u>, 1996 WL 681273, at *4 (N.D. Ill. Nov. 21, 1996) (different states' statute of limitations and punitive damage laws can be handled by creating subclasses).  Although this is true as a general principle, courts facing similar individual inquiries regarding accrual, tolling and equitable estoppel have refused to certify a class, at least with respect to the statute of limitations issue.  <u>Pella II</u>, 606 F.3d at 393; <u>Broussard v. Meineke Discount Muffler Shops, Inc.</u>, 155 F.3d 331, 342 (4th Cir. 1998) (tolling depended on individualized showings of misrepresentations and obfuscations unique to each class

member).   In this case, resolving issues of accrual, tolling and equitable estoppel would require an analysis of each potential class member's individual experiences and interactions with defendant.  Cf., Sebo, 188 F.R.D. at 316 (equitable tolling and fraudulent concealment defenses to statute of limitations involved facts common to all class members and related to proving price-fixing conspiracy).  Accordingly, I find that the large number of individual questions of law and fact necessary to determine the accrual and tolling of the limitations period for each class member precludes certification of any class with respect to those issues.

c.     notice of the breach

According to defendant, another insurmountable individual issue for all class members is the requirement in § 2-607(3)(a) of the Uniform Commercial Code that a buyer must notify the seller of a breach of express or implied warranty within a reasonable time after the buyer discovers or should have discovered the breach.  According to defendant, the notice requirement varies widely from state to state and requires fact-specific inquiries related to the timing, content and recipient of each class member's notice.

Plaintiffs argue that the notice requirement does not apply to consumers who purchased their windows through independent distributors, a group that plaintiffs say make up the majority of the proposed class.  They base their argument on the following comment to the Uniform Commercial Code:

> Under this Article various beneficiaries are given rights for injuries sustained by them because of the seller's breach of warranty. Such a beneficiary does not fall within the reason [sic] of the present section in regard to discovery of defects and the giving of notice within a reasonable time after acceptance,

since he has nothing to do with acceptance. However, the reason of this section does extend to requiring the beneficiary to notify the seller that an injury has occurred. What is said above, with regard to the extended time for reasonable notification from the lay consumer after the injury is also applicable here; but even a beneficiary can be properly held to the use of good faith in notifying, once he has had time to become aware of the legal situation.

§ 2-607 cmt 5.  Plaintiffs cite an unpublished case from the District of South Carolina in which the court interpreted the provision under South Carolina law to require retail buyers to notify only the retail seller who tendered the goods, and not wholesalers, distributors, manufacturers or others who sold the goods further up the chain of commerce.  Thomas v. Louisiana-Pacific Corp., 246 F.R.D. 505, 512-13 (D.S.C. 2007).  However, plaintiffs fail to analyze the law of any other jurisdiction and fail to provide any authority that all jurisdictions would adopt the same interpretation that South Carolina has adopted.

Because the express warranty class is subject to Wisconsin law, it would be possible to determine on a class-wide basis whether those class members who purchased windows through a distributor were subject to the notice requirement.  However, resolution of this issue for the implied warranty class would require an analysis of the notice laws in all 50 states.  If there are states in which notice is required, individual fact-specific inquiries would be necessary with respect to the timing, content and recipient of each class member's notice.  Cole v General Motors Corp., 484 F.3d 717, 727 (5th Cir. 2007) ("State law varies on what constitutes reasonable notice and to whom notice should be given, and other courts considering the issue in the class certification context have noted that these variations impact predominance."); Porcell v. Lincoln Wood Products, Inc., 713 F. Supp. 2d 1305, 1316

(D.N.M. 2010) (holding notice requirement called for individual determinations of when each proposed class member discovered or should have discovered breach). As a result, at least with respect to the implied warranty class, I conclude that the issue of notice under UCC § 2–607(3) presents a question in which individual questions of fact would predominate.

d.  determining cause of the rot in "no defect" and merchantability claims

The parties seem to agree that there are several causes for rot, including installation error, humidity, lack of maintenance and, potentially, the alleged defects. As defendant notes, determining what caused the rot in each window in each class member's home requires an individualized inquiry with respect to the climate in their home state, window maintenance and upkeep, installation and the specific window problems experienced by each class member. This question is closely associated with the question whether every class member met the conditions listed in the written warranties with respect to maintenance, installation, finishing and operation of the windows. (For example, defendant may argue that rot in a particular home resulted from improper maintenance or installation.)

Plaintiffs seem to assume that causation can be resolved on a class-wide basis because their expert will argue that all of the five defects cause rot and defendant's expert will argue that the rot results from other causes, like condensation or improper installation. Although the question whether the alleged defects are a potential cause of rot in certain parts of a window can be answered for the whole class, the actual cause of rot in each of the class

32

member's windows requires individual analysis and proof.  Pella II, 606 F.3d at 394 (noting that "[p]roximate cause . . . is necessarily an individual issue" because "wood can rot for many reasons other than window design and is affected by specific conditions such as improper installation").  The same is true with respect to whether each class member satisfied the conditions of their written warranties.  As a result, I will not certify the class with respect to the issue of causation for either the express or implied warranty claims or the satisfaction of the conditions in the written warranties.

e.  "failure to honor" claims

Defendant contends that whether it failed to honor a particular warranty depends on whether its warranty obligations were triggered in an individual case and how it responded to the class member's claim.  (The parties agree that defendant responded differently to the complaints of the named plaintiffs).  Individual inquiries would be needed with respect to the problem identified by the consumer, whether that problem was excluded under the warranty, whether the consumer met the warranty conditions related to maintenance and installation and whether defendant acted appropriately under the circumstances.  I agree that whether defendant's conduct toward an individual class member qualified as a failure to honor the warranty cannot be resolved on a class-wide basis.

Plaintiffs ignore these issues and respond that defendant processes its warranty claims in a manner that "evades its duty" to repair or replace its defective windows.  As an initial matter, it is unclear whether "evading its duty" means the same thing as failing to honor the

warranty. In other words, would plaintiffs prove their claims if they proved that defendant had a policy of "evading" its duty?

In any event, plaintiffs seem to suggest that defendant acted uniformly in avoiding its obligations to repair or replace defective windows. Generally speaking, the question whether defendant had a corporate process or policy of failing to honor its written warranty to repair, replace or refund defective windows would be a question common to the entire class because it relates to standardized conduct toward all class members. Chicago Teachers Union, 797 F.3d at 437 (finding in employment discrimination context that "company-wide practice is appropriate for class challenge even where some decisions in the chain of acts challenged as discriminatory can be exercised by local managers with discretion—at least where the class at issue is affected in a common manner, such as where there is a uniform policy or process applied to all"). However, plaintiffs have not said whether they have any evidence showing a corporate policy of denying warranty claims. In fact, they suggest that their evidence of a uniform policy or practice is the fact that defendant denied the warranty claims of the named plaintiffs.

Although the Court of Appeals for the Seventh Circuit held recently that plaintiffs seeking class certification are not required to prove the existence of a uniform policy or process at this stage of the proceedings, it pointed out that "[c]ases in which [defendant's employees] use their given discretion to make individual decisions without guidance from an overarching company policy do not satisfy commonality because the evidence varies from plaintiff to plaintiff." Bell, 800 F.3d at 374-75. See also In re IKO, 757 F.3d at 602 ("when

multiple [store] managers exercise discretion, conditions at different stores do not present a common question"). Therefore, plaintiffs should be aware that it will not be sufficient to show that defendant denied the individual warranty claims of various class members without common proof of a company-wide policy or directive. Dukes, 131 S. Ct. at 2554-55 (Rule 23(a)(2) commonality requirement not met because "[r]espondents have not identified a common mode of exercising discretion [over employment matters] that pervades the entire company").

f. disclaimer of implied warranty

Every version of defendant's written warranty contained a disclaimer of implied warranties but the contents and appearance of the disclaimer varied among versions. Section 2-316 of the Uniform Commercial Code permits a seller to exclude the implied warranty of merchantability if the disclaimer is conspicuous and mentions merchantability. However, even if the disclaimer is conspicuous, it will not be enforced against a buyer who did not have notice of it before purchasing the product. Taterka v. Ford Motor Co., 86 Wis. 2d 140, 149, 271 N.W.2d 653 (1978) (disclaimers in warranty provided subsequent to the sale are not effective). Finally, the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301-12, restricts the enforceability of warranty disclaimers for "consumer products." Windows ordered by a builder as part of the construction of a new home are not considered consumer products, 16 CFR § 700.1(f), but those ordered directly by the class members are consumer products. 16 CFR § 700.1(e); Miller v. Herman, 600 F.3d 726, 735-37 (7th Cir. 2010). Therefore,

says defendant, whether a disclaimer is enforceable against a class member requires an individualized determination of how they acquired their windows, when they saw the warranty and which version of the warranty they received.

Plaintiffs do not dispute these requirements with respect to disclaimers. Dkt. #359 at 16-17 and 38. They argue that the court can answer the question whether the disclaimer is conspicuous on a class-wide basis because there was only one version of the disclaimer since 2008, when the implied warranty class period began. If this is the case, I agree that this is a common issue that could be resolved on a class-wide basis. Although plaintiffs suggest creating a subclass to address the Magnuson-Moss Act issue, they make no attempt to define one. They also fail to explain how they would manage the allegedly "minor individual issue" of determining whether the buyer had notice of the disclaimer before purchasing the windows.

g.  privity in implied warranty claims

Defendant notes that state implied warranty laws vary substantially with respect to the requirement of privity, that is, the legal relationship between the parties. Voelker v. Porsche Cars North America, Inc., 353 F.3d 516, 525 (7th Cir. 2003) (question of privity hinges entirely on applicable state law). Defendant argues that if the class members acquired their windows in any manner other than a direct purchase from defendant, their implied warranty claims could be barred for lack of privity. For example, "[a] consumer seeking to sue a product manufacturer who was not involved in the sale of the product to the consumer

36

is said to lack vertical privity with that manufacturer." Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 911 (N.D. Ill. 2013).  Defendant points out that courts denying certification of breach of warranty class claims have noted the need for individualized inquiry to determine whether privity requirements are met.  Cole v. General Motors Corp., 484 F.3d 717 (5th Cir. 2007); Kaczmarek v. International Business Machines Corp.,186 F.R.D. 307 (S.D.N.Y. 1999); In re Ford Motor Bronco II Product Liability Litigation, 177 F.R.D. 360 (E.D. La. 1997); Walsh v. Ford Motor Co., 130 F.R.D. 260 (D.D.C. 1990).

Plaintiffs seem to agree that if the implied warranty claims are governed by the laws of the class members' home states, the privity requirement will vary state by state.  In response to this issue, they state only that "the Court should certify a subclass of persons who reside in states that do not require privity as a prerequisite."  Dkt. #359 at 30.  It is unclear whether plaintiffs intend to limited their implied warranty class only to those states without a privity requirement or if they also seek certification an implied warranty class in states with a privity requirement.  If they are continuing to seek certification of a nationwide class, they have failed to explain how they would account for the individual inquiries necessary to determine whether some of the class members have met the privity requirement.

h.  damages

Plaintiffs argue generally that damages can be calculated on a class-wide basis because the "costs of repairing and replacing Windows are fairly uniform" and "straightforward computer programs exist which allow an individual to obtain a cost estimate by inputting

some very basic data such as the type and quantity of Windows involved, the size and shape of the Windows, and the location of the home to adjust for both local material and labor costs." Dkt. #285 at 45. They refer to their expert's endorsement of "RS Means," which one court has defined as "a cost estimator that accounts for regional differences in labor and materials costs by using zip codes to factor in the specific costs of nearly any type of construction in a particular area of the country." In re CertainTeed Fiber Cement Siding Litigation, 303 F.R.D. 199, 205 (E.D. Pa. 2014). Although plaintiffs say little about it, apparently RS Means "has been used in the construction/building industry for almost 40 years." Id.

Defendant contends that each potential class member's damage award will depend on the following individual questions: how many windows suffered rot caused by the defects; whether those windows need replacement or merely repairs; the nature of the repairs needed, such as window framing, wallboard or replacement trim; the cost of repairs, which will depend on the number of windows, extent of damage, geographic location and the particular features of the class member's home; whether the defects caused consequential damages to other parts of the class member's home; whether class members incurred out-of-pocket expenses in making their own efforts to address the problem; and determining which type of owner (former versus) current is entitled to what recovery. Defendant says that plaintiffs' computer models address only the cost of repair or replacement and still require individual judgments and factual determinations relating to each class member. As an example, it points out that experts must enter a number of details into the program about

38

each home and make "adjustments" to correct for limits in the program.  Dkt. #333 at 111-12.

Although it is possible that the computerized model might address many of the individualized inquiries associated with proving damages, plaintiffs fail to explain the model to be used in this case in any detail and do not address the other questions raised by defendant.  Of particular concern to the court is (1) the question whether the so-called "adjustments" call for decisions that should be made by a jury or the court instead of a third-party expert, and (2) how plaintiffs propose to address damages outside the scope of repair and replacement, such as damage to the interior of the home.  Without further information, it is impossible to determine whether damages could be resolved on a class-wide basis.  It is also unclear whether it makes sense to resolve damages on a class-wide basis if the issue of causation is subject to an individualized inquiry.

4.  Conclusion

Regardless whether one views the problem as the absence of a common question of law or fact, atypicality of the claims, the lack of predominating common questions or the failure to show that a class action is not a superior method of adjudication, plaintiffs have not shown that their proposed class and subclasses meet the requirements of Rule 23(a) and (b)(3).  As proposed, the class and subclasses are unmanageable and do not reflect the multiple claims, accused products, alleged defects and state laws at issue in this case.  Although plaintiffs have identified some issues with respect to liability that may be common

to a class of individuals, numerous individual questions of fact and law remain, related to timeliness (accrual, tolling and equitable estoppel), causation, damages and the implied warranty claims (choice of law, notice of breach and privity) that cannot be addressed on a class-wide basis. Plaintiffs have not filed an alternative motion under Rule 23(c)(4) to certify a limited-issue class. Instead, they insist that their class and subclasses should be certified with respect to all issues. That is not possible, for the reasons explained above.

However, because there may be common questions related to (1) whether some of defendant's products contain defects that can result in rot; (2) whether defendant disclaimed the implied warranty of merchantability; and (3) whether defendant had a uniform policy or practice of failing to honor its duty to repair, replace or refund under its written warranty, I will give plaintiffs one more opportunity to renew its motion for class certification with respect to those issues. Plaintiffs should take particular care to define manageable classes or subclasses that reflect the multiple claims, products, alleged defects and state laws at issue. In addition, they are to submit a plan for trial, in which they describe in detail the issues likely to be presented at trial, discuss whether and how those issues are susceptible to class-wide proof and explain how individual inquiries could be handled. Espenscheid v. DirectSat USA, LLC, 705 F.3d 770, 775 (7th Cir. 2013) (trial plan is reasonable request in class action suit); 2 William B. Rubenstein, Newberg on Class Actions § 4:79 (5th ed. 2012) (trial plan is method for addressing recurring concerns of manageability—individualization and choice of law complexities). Plaintiffs will not be successful if they rely on the same vague and conclusory statements that they made in support of this motion.

The individual inquiries are of particular concern.  As discussed, the staggering number of individual hearings that might be required in this case seems to be unmanageable. However, the Court of Appeals for the Seventh Circuit has encouraged courts and litigants to devise imaginative solutions to these problems, including appointing a magistrate judge or special master to preside over individual damages proceedings or decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages.  Carnegie v. Household International, Inc., 376 F.3d 656, 661 (7th Cir. 2004).  Although it is unlikely that a manageable class can be proposed in this case, I am willing to consider any feasible options that plaintiffs may present, so long as plaintiffs describe in sufficient detail how their plan would work in practice.

Because I have determined that class certification is not appropriate at this time, it is unnecessary to address all of defendant's arguments with respect to adequacy of representation.  Rule 23(a)(4) (class representative and class counsel must "fairly and adequately protect the interests of the class"); Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 697 (7th Cir. 1986) (representative plaintiffs must not have interests antagonistic to other class members and class counsel must be qualified, experienced, and able to conduct proposed litigation).  However, a few matters deserve attention.

First, defendant contends that plaintiffs' lack of a rigorous Rule 23 analysis and egregious misstatements regarding easily verifiable facts demonstrate that their attorneys cannot protect adequately the interests of potential class members.  Although I share defendant's concerns about the shortcomings in plaintiffs' briefs, I do not agree that this

41

alone disqualifies plaintiffs' attorneys as class counsel.  Plaintiffs' attorneys appear to be experienced class action litigators and have been appointed lead counsel in numerous cases. Without more than isolated instances of what defendant considers sloppy lawyering, defendant can not show that plaintiffs' attorneys are incapable of conducting class litigation. Cox v. Sherman Capital LLC, 295 F.R.D. 207, 214 (S.D. Ind. 2013) ("While Plaintiffs' counsel's efforts were indeed minimal with regard to this Motion for Class Certification, such minimalism does not rise to inadequacy of counsel.").  Cf. Gomez v. St. Vincent Health, Inc., 649 F.3d 583, 592 (7th Cir. 2011) (counsel inadequate because not diligent in prosecuting proposed class action, engaged in faulty discovery efforts, subjected to orders to compel and awards of cost, failed to develop full record for summary judgment and were previously adjudicated inadequate in similar case).

Second, defendant contends that the interests of the named plaintiffs are at odds with those of the members of the proposed class because plaintiffs have abandoned causes of action that other class members may wish to pursue, including claims for negligence, unjust enrichment and breach of warranty based on statements in defendant's advertising and product literature.  The danger with this type of "claim-splitting" is that res judicata will bar any future claims by absent class members.  Pella I, 257 F.R.D. at 481.  Plaintiffs argue that "[t]he opportunity to opt out as required by Federal Rules of Civil Procedure 23(b)(3) and (c)(2)(B) solves any res judicata problem."  Id. at 481-82.  Although I agree with this general premise, I have some concern about the effect of res judicata on potential class members in the event that plaintiffs choose to narrow their proposed class significantly or propose a

limited issue(s) class.  Any ruling on a common issue would bind all members of the class.  However, if a class is certified only for a limited number of issues, it is important to consider what effect, if any, that class certification would have on the ability of the class members to bring additional types of claims or pursue other legal theories.  Therefore, if plaintiffs decide to go that route, they are to discuss the effect that the proposed class action would have on the potential class members with respect to res judicata or issue and claim preclusion.


C.  Rule 23(b)(2)

Under Rule 23(b)(2), plaintiffs must demonstrate that defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate."  See also Chicago Teachers Union, 797 F.3d at 441 ("Colloquially, 23(b)(2) is the appropriate rule to enlist when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class.").  The Supreme Court has explained that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant."  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2557 (2011) (emphasis in original).  In addition, Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individual award of monetary damages.  Id.  See also

Chicago Teachers Union, 797 F.3d at 443 (Rule 23(b)(2) class cannot seek money damages unless monetary relief is incidental to injunctive or declaratory relief).

Plaintiffs propose a broad class for injunctive and declaratory relief that is almost identical to the one they propose under Rule 23(b)(3):

> All individuals and entities that have owned, own, or acquired homes, residences, buildings, or other structures physically located in the United States, in which Kolbe aluminum-clad or wood Windows with K-Kron or K-Kron II coating are or have been installed since 1997 *that have not manifested [a] defect*.

Dkt. #359 at 17 (emphasis added).  In their reply brief, plaintiffs added the phrase "that have not manifested a defect" to its proposed definition to address concerns that defendant raised about including in the class individuals who could be compensated adequately with monetary damages.  Dkt. #359 at 7 n.5.  Defendant has not had an opportunity to consider the revised definition.

In their opening brief, plaintiffs stated briefly without any supporting analysis or authority that they were seeking the following relief:

- Declare that there are inherent design defects in the accused windows, that defendant's express and implied warranties extend to each class member, and that Kolbe breached its express and implied warranties.

- Declare that defendant performed inadequate testing on its windows.

- Order defendant to inspect windows installed in the class members' structures from 1997 to the present for water and air infiltration and repair any windows that fail inspection.

Dkt. #285 at 34.  In their reply brief, plaintiffs revised and expanded their list to include the following declarations:

44

1.   That there are inherent design defects in the sill-to-sash interface of defendant's casement, transom, and picture windows installed from 1997 to the present.

2.   That there are inherent design defects in the K-Kron and K-Kron II systems used by defendant on its double-hung, glider, casement, transom, and picture windows installed from 1997 to the present.

3.   That the express and implied warranties created by defendant during the relevant time period extend to these design defects.

4.   That the testing and certification of "ringer" windows by defendant that were not substantially similar to the windows it sold was improper.

5.   That defendant establish an inspection program for windows installed from 1997 to the present to determine if they properly guard against water and air infiltration.

6.   That defendant repair or replace any windows that do not pass water and air infiltration tests performed in accordance with Hallmark and Keystone Program standards.

Dkt. #359 at 58.  The only analysis plaintiffs provide with respect to the Rule 23(b)(2) requirements is that their "declarations are consistent with those approved by the Seventh Circuit" in Pella.  Dkt. #359 at 49.  This is insufficient to satisfy plaintiffs' burden under Rule 23(b)(2).

My finding that plaintiffs have not satisfied the requirements of Rule 23(a) applies to both the Rule 23(b)(2) and (3) classes.  The proposed class is overly broad and unmanageable and plaintiffs have failed to adequately identify common issues capable of class-wide resolution.  Although it may be possible with a revised class definition (and possibly subclass definitions) to reach a decision for the class about whether there are inherent defects in the accused windows, the questions whether the warranties extended to

45

each class member and whether defendant breached the warranties are subject to the numerous individualized inquires discussed above. (The proposed declaration regarding defendant's testing and certification is unnecessary in light of the fact that plaintiffs will not be proceeding on any claims related to statements made in its product literature.)

Because of the individual issues related to warranty coverage and causation, it is unlikely that plaintiffs can seek the proposed injunctive relief described in questions (5) and (6) on behalf of the class. In addition, it is questionable whether the requested injunction would be appropriate. Plaintiffs ask that defendant inspect every window it has installed since 1997 to see whether it properly guards against water and air filtration and repair any window not meeting manufacturing program standards. As an initial matter, I note that it is unclear what "air filtration" has to do with this case, and although "water filtration" presumably relates to the rot allegedly caused by the windows' defects, not all water infiltration will lead to rot. Although plaintiffs base their Rule 23(b)(2) class on that certified in Pella, the injunctive relief they seek is much broader and far more burdensome than that sought by the plaintiffs in Pella.

In Pella, the district court certified a nationwide Rule 23(b)(2) class consisting of all class members who owned structures containing a particular type of casement window manufactured from 1991 to the present, whose windows had not yet manifested the alleged defect or whose windows had some wood rot but had not been replaced. Pella, 606 F.3d at 392. The court noted that if the class members successfully proved consumer fraud, they would be entitled to ask Pella to pay the cost of inspection to determine whether wood rot

46

was manifest, with any coverage disputes adjudicated by a special master.  The court noted that this class adjudication process would be followed by an individual claims process in which class members could file a claim with Pella for service "[i]f and when their windows manifest wood rot due to the alleged defect." Id.  The plan was not to order Pella to inspect every window it sold for problems (like water infiltration) that could lead to the defect. Class members would have had to ask Pella to pay for (not perform) the windows' inspection to determine whether wood rot was present and then ask for service if the rot resulted from the alleged defect.  Although it is not entirely clear from Pella, it appears that the court envisioned that the special master would resolve the individual issues of causation and coverage before a class member was entitled to the injunctive relief.  Without any comparable plan, plaintiffs' proposed injunction would be unmanageable.

If plaintiffs choose to renew their motion for class certification, they should address all of the concerns with their Rule 23(b)(2) class that I have noted in this opinion and, as with the Rule 23(b)(3) class, propose a plan that identifies the issues likely to be presented at trial, discusses whether and how those issues are susceptible to class-wide proof and explains how individual inquiries could be handled.

ORDER

IT IS ORDERED that

1.  Plaintiffs' motion for class certification under Fed. R. Civ. P. 23, dkt. #284, is DENIED.

2.   Plaintiffs may have until January 15, 2016, to file a renewed motion for class certification with respect to the limited issues concerning liability and equitable relief identified in this order.  Defendant may have until January 29, 2016 to file a response, and plaintiffs may have until February 8, 2016 to reply.  If plaintiffs do not respond by January 15, 2016, the case will proceed on the individual claims of the named plaintiffs only.

3.   The February 1, 2016 trial date is stricken.   The court will set a telephonic conference to revise the schedule in this case after the issue of class certification is resolved.

4.   The motions in limine filed by the parties, dkt. ##317, 375, 380, 388, 394, 400, 402, 410-12, 415, 419, 420, 422 and 429, are DENIED without prejudice.

Entered this 18th day of December, 2015.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge