IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARY HALEY and MICHAEL HALEY,
LESLIE BANKS and JAMES HAL BANKS,
ANNIE BUINEWICZ and BRIAN BUINEWICZ,
TERRANCE McIVER and JEAN ANN McIVER,
SUSAN SENYK and CHRISTIAN SENYK,
MATTHEW DELLER and RENEE DELLER,
PATRICIA GROOME, GARY SAMUELS and                       OPINION AND ORDER
MARIE LOHR,
                Plaintiffs,                                       14-cv-99-bbc

    v.

KOLBE & KOLBE MILLWORK CO., INC.,

                Defendant,

    and

FIREMAN'S FUND INSURANCE COMPANY
and UNITED STATES FIRE INSURANCE COMPANY,

                Intervenor Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In an order entered on March 25, 2016, I granted defendant Kolbe & Kolbe Millwork Co.'s motion to exclude plaintiffs' expert opinions as unreliable and unhelpful, dkt. #317, and denied plaintiffs' renewed motion for class certification, dkt. #496, because the exclusion of plaintiffs' experts prevented certification of any of their proposed classes. Dkt. #524. In addition, I ordered plaintiffs to show cause why the exclusion of their experts'

1

opinions would not foreclose the individual claims of the named plaintiffs for the same reasons that it prevented class certification.

Plaintiffs responded to the court's order by submitting a lengthy motion for reconsideration challenging the court's exclusion of the expert opinions and several other decisions related to their motion for class certification. Dkt. #525. Specifically, plaintiffs assert that (1) the court misunderstood and overlooked key facts and evidence relating to the expert opinions of Joel Wolf and Haskell Beckham; (2) the court should have ruled on plaintiffs' motion to exclude defendant's expert opinion regarding customers' improper finishing of their own windows; (3) the court improperly struck the declaration of Wolf as an untimely-filed rebuttal report in orders dated November 24, 2015 and February 2, 2016; and (4) the court incorrectly found that plaintiffs waived their implied warranty claims related to defendant's affirmations about the certification testing of its windows. With respect to the viability of their remaining individual claims, plaintiffs argue only briefly that they have "alternative common evidence" of the sill-to-sash interface and K-Kron defects allegedly present in the windows of the named plaintiffs.

For the reasons explained below, I conclude that plaintiffs have shown no reason for reconsidering the earlier rulings with respect to plaintiffs' experts. I also find that plaintiffs have failed to show that their individual claims should not be dismissed for the same reasons for which the class claims have been dismissed.

Also before the court is a renewed motion for summary judgment filed by intervenor United States Fire Insurance Company, seeking a declaration that it does not have a duty

2

to defend or indemnify defendant. Dkt. #531. I denied United States Fire's previous motion on the same issue because at that time there was still a possibility that defendant could be required to pay damages that are covered by the insurers' policies. Dkt. #376. In its renewed motion, United States Fire asks for another ruling in light of developments in the case and what it says are changes in the case law. Now that I am dismissing the case in full, I am directing United States Fire to show cause why its motion should not be denied as moot.

OPINION

I. MOTION FOR RECONSIDERATION

A. Exclusion of Plaintiffs' Expert Opinions

1. Wolf

In his expert report, Joel Wolf offered the opinion that the following four design defects cause deterioration in the lower sash rail of defendant's aluminum-clad windows: (1) an inadequate sill slope; (2) an inadequate gap between the sill frame and the bottom of the sash; (3) a weatherstrip gasket on the bottom exterior face of the sash; and (4) an unfinished underside of the lower sash. Dkt. #281 at 2 and 86. In the previous order, dkt. #254, I found that Wolf's opinion was unreliable because Wolf relied on the inaccurate assumption that the underside of the bottom sash is unfinished in all of defendant's windows. Plaintiffs contend that the court made material mistakes of fact when it (1) found that Wolf stated the opinion that all four defects must be present for the windows to deteriorate; and (2)

stated that Wolf did not inspect or discuss windows with a finished bottom sash. Dkt. #526 at 3.

Plaintiffs rehash the same arguments that they raised previously in dkt. #382, responding to defendant's Daubert motion, dkt. #317. In addition, they contend that the unfinished sash factor is irrelevant to Wolf's defect theory. In particular, they emphasize that Wolf does not discuss the effect of the unfinished sash in his report or deposition testimony in any detail; instead, he focuses on the other three aspects of the sill-to-sash defect. I addressed these arguments about Wolf's discussion of the four defect factors at length in the previous opinion and it is unnecessary to repeat this analysis. Wolf's report makes it clear that he assumed that defendant's windows all have unfinished sashes and that this lack of finish is an integral part of the sill-to-sash interface defect that leads to premature rot in the window. However, the underside of the lower sash was finished on at least some of the windows belonging to the potential class members. Wolf's opinion is not helpful in establishing common evidence of a defect because it relates only to unfinished sashes. Although plaintiffs argue that "Wolf's deposition testimony clearly reflects that his opinion is premised upon the flat sill, narrow gap, and weatherstrip placement," and not the unfinished sash, he did not say this in his report, dkt. #526 at 5, or at his deposition, dkt. #310, 41-43. It was not an error or a mistake to conclude that Wolf meant what he said in his report.

Plaintiffs also argue that "the court overlooked ample evidence in the record" showing that Wolf inspected windows that were finished by both Kolbe and contractors. Dkt. #526

at 9. They contend that Wolf did not address this point in his report because both finished and unfinished sashes rot as a result of the other three factors identified by Wolf. There are several problems with plaintiffs' argument.

First, plaintiffs cannot file an after-the-fact supplement to Wolf's report by pointing to evidence that they believe clarifies Wolf's true opinion. For example, plaintiffs argue that comments made by defendant's inspectors about problems with the slope, gap and weatherstrip in windows with *finished* sashes corroborate a theory that the sill-to-sash defect does not depend on the lower sash's being unfinished. Although it appears that Wolf listed some of the inspectors' general comments in an appendix in his report, he did not link those comments to windows with finished sashes or make any statements about rot in windows with finished sashes. As defendant points out, Wolf developed his opinions with the inspectors' service reports in hand but nevertheless defined his sill-to-sash theory as involving an unfinished lower sash.

Second, even if this additional "evidence" did not constitute improper supplementation of Wolf's report, plaintiffs failed to bring it to the court's attention in their response to defendant's Daubert motion, dkt. #317, despite having ample opportunity to do so. Contrary to plaintiffs' suggestion, it is not the court's job to parse the evidence of record or the attachments to Wolf's report to find support for conclusions that are contrary to what appear to be clear statements on the part of Wolf.

Third, even if Wolf's report, dkt. #281, can be read to show that he inspected some finished windows during his investigation, he includes only unfinished windows in the

5

discussion of his opinion, does not make any statements about finished windows in his report and does not state that defendant's windows are defective regardless whether they are finished or unfinished. As defendant notes, what matters is not what Wolf looked at but what he described in his report as constituting a defect. Plaintiffs cannot rectify gaps in that description by citing Wolf's late-filed declaration or deposition testimony of their other expert. Moreover, I will not allow them to alter Wolf's opinion by granting their request to strike Wolf's two references to the unfinished sash factor from his report or to "clarify" his report with a supplemental filing. These actions would amount to an impermissible third round of expert reports barred by the preliminary pretrial conference order and the Federal Rules of Civil Procedure.

2. Beckham

Plaintiffs contend that the court overlooked "key evidence" in excluding the expert testimony of Haskell Beckham, who criticized the K-Kron coating that defendant applies to its wood windows, saying that it is not an appropriate choice for long-term protection because it cracks, allows moisture into the wood frame and sash and retards the drying process. Defendant argued that Beckham based his opinion on unreliable methods (specifically, drying tests that he performed on samples of K-Kron-coated wood from windows in nine homes he inspected), that did not provide relevant information that would be helpful to the trier of fact. I found that plaintiffs failed to develop any meaningful response to defendant's challenge because they stated only generally that Beckham's tests

6

supported his opinion that K-Kron causes windows to retain excessive moisture and leads to rot and decay.

Citing various data scattered throughout Beckham's report, plaintiffs now argue that the court overlooked a clear link between the drying tests and Beckham's conclusions on permeability. Dkt. #526 at 35-36. They state that "[b]ased on the drying test results, and the industry literature to which he referred in the report and in his deposition testimony, . . . Dr. Beckham was able to conclude that Kolbe should have used more permeable paint" and that "[t]he relationship between Dr. Beckham's drying tests, industry literature, and his conclusion regarding permeability can be demonstrated through simple mathematics." Id. at 36. However, plaintiffs discussed none of this in their response to defendant's Daubert motion and it is too late for them to do so now. Wehrs v. Wells, 688 F.3d 886, 891 n.2 (7th Cir. 2012) (undeveloped and unsupported arguments are considered waived); Nichols v. National Union Fire Insurance Co. of Pittsburgh, PA, 509 F. Supp. 2d 752, 760 (W.D. Wis. 2007) (plaintiffs forfeited arguments by failing to respond in meaningful way). Although plaintiffs maintain that the court overlooked important analysis and explanation in Beckham's deposition testimony, it is not the court's role to scour the record for evidence that supports Beckham's opinion or to make assumptions about Beckham's reasoning that he failed to disclose in his report. Further, as discussed in conjunction with Wolf's report, plaintiffs' reliance on Beckham's deposition testimony and other extraneous evidence to explain the drying tests and Beckham's reasoning amounts to improper expert rebuttal.

7

Finally, plaintiffs take issue with the fact that the court noted in dkt. #524 that defendant had raised "valid concerns" with respect to Beckham's failure to test how susceptible K-Kron is to cracking and what happens with real windows installed in a home. Plaintiffs set out various reasons why these criticisms are unfounded and support their argument with evidence that was not included in Beckham's report. Again, plaintiffs forfeited these arguments by not raising them in their response to defendant's Daubert motion. In any event, plaintiffs would not be allowed to cure the defects in Beckham's report with evidence that is not in the record.

### B. Plaintiffs' Daubert Motion

During the last round of briefing on class certification, plaintiffs asked the court to consider their motions to exclude the opinions of defendant's experts if it considered defendant's motion to exclude the opinions of Wolf and Beckham. Dkt. #512 at 101-02. They did not explain how their motions related to defendant's motion. I found it unnecessary to consider plaintiffs' Daubert motions because defendant's motion to exclude the opinions of Wolf and Beckham was dispositive on the issue of class certification. Plaintiffs now argue that the court should have ruled on their motion to exclude the expert report of William Smith, dkt. #429, because defendant based its challenge to Wolf's opinion regarding the unfinished sashes on Smith's report. Dkt. #526 at 15-16 (citing dkt. #430 at 7-18).

8

According to plaintiffs, Wolf and Smith present competing expert opinions about the unfinished sashes. Dkt. #526 at 19. In their Daubert motion, plaintiffs alleged that Smith wrongly assumed that properly finished windows do not absorb moisture, speculated that plaintiffs' failure to properly finish the underside of their window sashes caused the windows to rot and assumed incorrectly that defendant finishes the underside of the sash if customers order them pre-finished. Dkt. #430 at 8-17. They also argued that Smith's opinion concerning unfinished sashes was irrelevant because "[w]hether the undersides of the sashes are finished or not has no bearing on whether the windows degrade." Id. at 17-18. Plaintiffs accuse the court of relying on Smith's opinion as grounds for excluding Wolf's opinion.

Contrary to plaintiffs' assertions, the court has not determined the correctness of any of Smith's opinions. The concerns about Wolf's opinion are derived solely from the content of his report. As explained at length in the court's previous order, Wolf's report makes it clear that *he* assumed that defendant's windows all have an unfinished sash, which he stated is an integral part of the sill-to-sash interface defect. Even in their motion for reconsideration, plaintiffs have not disputed that at least some of defendant's windows come with a finish. E.g., dkt. #526 at 21 ("[E]ven when Kolbe pre-finishes windows, the finish deteriorates because of the very defects identified by Wolf."). Plaintiffs contend that there is a dispute of fact about whether defendant expects customers to finish the underside of their window sashes or whether defendant sometimes fails to finish the underside of the sash even when asked to do so. However, these disputes do not save Wolf's report.

Wolf does not discuss finished sashes in his report and does not explain in his report whether the finish or lack of finish on the underside of the sash has any bearing on window degradation. Therefore, Wolf's report is unhelpful with respect to windows that have a finish on the underside of the sash. Because it is undisputed that some windows have finished sashes, his opinion does not qualify as common evidence with respect to the whole class. Wolf tried to correct this deficiency in a later-filed declaration in which he stated that even windows with finished sashes will decay as a result of the sill-to-sash defect, but that declaration was excluded by the court. Dkt. #433, exh. 1. (Plaintiff's motion to reconsider the exclusion of the declaration is discussed below.)

### C. Exlusion of Wolf Declaration

On February 2, 2016, the court granted defendant's motion to strike the declaration of Joel Wolf, dkt. #433, exh. 1, as an impermissible third round of expert reports barred by the preliminary pretrial conference order. Dkt. #510. In their motion for reconsideration of the Daubert order, plaintiffs have included a request that the court reconsider its decision to exclude the Wolf declaration, arguing that the court did not understand the impact that the ruling would have on their motion for class certification and that the court overlooked statements made by Magistrate Judge Stephen Crocker and counsel during the preliminary pretrial conference. Dkt. #526 at 26. Although the court is well aware that the declaration addresses one of the concerns that the court has with Wolf's expert report, plaintiffs have not provided a reasonable basis for allowing Wolf to file a rebuttal report six months after

plaintiffs' deadline for filing expert reports and after the close of briefing on defendant's Daubert motion. Plaintiffs point to statements that the court and the parties made during the preliminary pretrial conference that they say show an intent to allow plaintiffs to file rebuttal expert reports. However, the preliminary pretrial conference order clearly states that "there shall be no third round of expert reports." Dkt. #29 at 2. If plaintiffs believed that the preliminary pretrial conference order was incorrect, they should have brought it to the attention of the court long ago.

### D. Implied Warranty Claims Regarding Window Labels

In their renewed motion for class certification, plaintiffs asked the court to reconsider its holding that plaintiffs had waived any implied warranty of merchantability claims related to the "ringer testing" that defendant allegedly performed on its windows to meet certification standards. Plaintiffs alleged that defendant labeled its windows with a sticker stating that the windows met certain certification standards but that it tested only a small subset of windows and could not confirm that all their windows actually met the standards. Dkt. #501 at 108-09. According to plaintiffs, this practice violated the implied warranty of merchantability because the defective windows did not "conform to promises or affirmations of fact made on the container or label," as required under UCC § 2-314(2)(f). Defendant opposed class certification of the implied warranty labeling claims on the ground that plaintiffs did not make any allegations of mislabeling in their complaint or their first motion for class certification. In addition, it pointed out that in ruling on plaintiffs' first

motion for class certification, the court determined that plaintiffs could not bring misrepresentation claims related to the use of "ringers" in certification testing and had waived an express warranty claim based on the same conduct. Dkt. #492 at 10-11. In granting defendant's Daubert motion, I did not consider whether plaintiffs should be allowed to proceed on these labeling claims because I excluded plaintiffs' expert reports that identified and described the defects that made the windows unmerchantable in the first place.

In their motion for reconsideration, plaintiffs argue that the claims related to improper labeling do not "turn on the excluded expert opinions" regarding the windows' defects because the "focus and premise of these claims are Kolbe's improper practice of only tweaking the limited windows on which it performed certification testing, but allowing certification labels to be affixed to all windows." Dkt. #526 at 33. However, plaintiffs fail to explain why they would not need to rely on the expert testimony to establish that the windows are defective and therefore unmerchantable. For its part, defendant does not respond to plaintiffs' conclusory assertion about the insignificance of the expert opinions. Instead, it focuses on plaintiffs' failure to plead these claims or raise them in their first motion for class certification. Dkt. #530 at 28-29.

I agree that even if these claims are not dependent on the expert testimony of Wolf and Beckham, plaintiffs have not raised raise them appropriately. They have not alleged any facts related to the labels on defendant's windows or defendant's alleged failure to conform to promises it made on the labels in their amended complaint or in any of their numerous

filings made since that time (including their response to defendant's motion for summary judgment, their motion for reconsideration of the summary judgment order and their initial motion for class certification). Accordingly, I find that plaintiffs have failed to plead any claims for the breach of the implied warranty of merchantability related to false labeling and have waived their right to do so at this point in the proceedings.

II.  INDIVIDUAL CLAMS OF NAMED PLAINTIFFS

After I excluded the expert opinions of Wolf and Beckham that defendant's windows contained defects that caused the windows to rot prematurely, I asked plaintiffs to show cause why their individual claims should not be dismissed. Because plaintiffs had based their defect theories on their experts' opinions, it was unclear whether without those opinions, they had any evidence to establish that the problems they observed in their own windows resulted from defects attributable to defendant. In a one-page discussion in their brief in response to the show cause order, plaintiffs contend that they are "prepared to proceed with alternative common evidence," including their observations of the failures in their own windows and the testimony of three of defendant's employees who observed the defects or knew that defendant was aware of the defects. Dkt. #526 at 46-47. However, plaintiffs have not explained how any of these witnesses would establish that the rot or water intrusion problems that plaintiffs observed in their windows were caused by defects in the sill-to-sash interface or the K-Kron coating and not by something else altogether.

None of the named plaintiffs purport to have any knowledge of the underlying defects or the exact cause of the rot and water intrusion, a point that defendant emphasizes and supports with excerpts from the plaintiffs' deposition testimony. Dkt. #530 at 31-32. With respect to defendant's employees whom plaintiffs say will be called as adverse witnesses, plaintiffs state in their opening brief only that they communicate routinely with other employees and inspectors about customer complaints and field inspections and will "present evidence regarding the presence of the Sill-to-Sash Interface and K-Kron defects, Kolbe's knowledge thereof, and its handling of warranty claims." Dkt. #526 at 46. In their reply brief, plaintiffs explain that George Waldvogel, Vice President of Quality, Service, and Service Pro; Jerome Budnik, Field Service Manager; and Larry Flynn, Director of Field Service all sent or received emails describing the defects that caused the types of problems plaintiffs observed in their windows. Dkt. #536 at 23. For example, in 2008, Marc Cesario, an employee of the distributor who sold the Haley plaintiffs their windows, informed Waldvogel that defendant's 106 ultra casement windows delivered and installed between January and April 2002 were "wicking water that is being trapped on the sill" and that he believed that there was a "three fold reason for this issue." Dkt. #498, exh. 9 at 3. Stating an opinion remarkably similar to Wolf's, Cesario specifically identified that (1) the slope of the sill is minimal and the surface tension is enough to hold water; (2) the setting blocks that hold the sash in place are wood and absorb water, reducing their ability to hold the sash off the sill and wicking water directly into contact with the sash; and (3) none of the units have

clipped weatherstripping allowing water out and air in. Id. This evidence is problematic for several reasons.

First, it is hearsay. Plaintiffs say that they intend to call as witnesses only those Kolbe employees who received emails from other people who described alleged defects in defendant's windows. Plaintiffs do not say that they intend to call Cesario as a witness to testify about his defect theory. They could not do this even if they wanted to because he can state such an opinion only if he is called as an expert and plaintiffs have not named him as an expert witness in this case in compliance with Fed. R. Civ. P. 26. Fed. R. Evid. 701 (opinion of lay witness must be "rationally based on witness's perception" and not "on scientific, technical, or other specialized knowledge within the scope of Rule 702"); Brown v. Phillips, 801 F.3d 849, 854 (7th Cir. 2015) (noting requirements of Rule 701); Plyler v. Whirlpool Corp., 751 F.3d 509, 514 (7th Cir. 2014) ("As a lay witness, Plyler could testify to his observations of the fire and its aftermath, but not draw inferences about its origin, which requires specialized knowledge.").

Second, even if defendant's employees or some other witness could identify defects present in defendant's windows on the basis of their own perceptions and not on specialized knowledge, plaintiffs have not explained whether these defects were observed in the types and models of windows purchased by the named plaintiffs. Although some of defendant's inspectors made observations about some of defendant's windows, plaintiffs have not pointed to any evidence showing what it was that Kolbe employees observed with respect to the windows in the homes of the named plaintiffs.

Finally, plaintiffs face an insurmountable problem with respect to causation. Although they contend that they can testify about and present photographs showing the staining and rot present in their own windows, they have no evidence to link those problems to the "defects" identified by defendant's inspectors or distributors. Without citing any authority, plaintiffs assert that the trier of fact can draw the reasonable conclusion that the staining and rot are consistent with the defects, but that is an impermissible inference for either the court or jury to make without the benefit of expert testimony or other evidence. E.g., Adkins v. Meijer Stores Ltd. Partnership, 256 Fed. App. 845, 847-48 (7th Cir. 2007) ("Even if we assume that [defendant's] parking lot was in disrepair, posing a danger to customers, causation may not be inferred merely from the existence of an allegedly negligent condition. . . . [Plaintiff's] testimony reflects no direct connection between an identified defect (even an ill-defined defect) and her resulting injury."). The Court of Appeals for the Seventh Circuit has recognized that windows can rot for many reasons other than defective design and that to recover, plaintiffs must show that the alleged defect or defects caused the damage to a particular window, which involves an analysis of how much the design contributed to the rot. Pella Corp. v. Saltzman, 606 F.3d 391, 394-95 (7th Cir. 2010). See also Haley v. Kolbe & Kolbe Millwork Co., 2015 WL 9255571, at *13 (W.D. Wis. Dec. 18, 2015) (noting that parties "agree that there are several causes for rot, including installation error, humidity, lack of maintenance and, potentially, the alleged defects."). The witnesses and email communications identified by plaintiffs in response to the show cause order do not provide answers to these crucial questions. Because plaintiffs have failed to come

forward with any evidence or legal authority supporting their position that the trier of fact may infer causation with respect to their individual claims, I must dismiss those claims. Cung Hnin v. TOA (USA), LLC, 751 F.3d 499, 508 (7th Cir. 2014) (noting that "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion").

ORDER

IT IS ORDERED that

1. The motion for reconsideration of the March 25, 2016 order, dkt. #525, filed by plaintiffs Mary Haley, Michael Haley, Leslie Banks, Hal Banks. Annie Buinewicz, Brian Bruinewicz, Terrance McIver, Jean Ann McIver, Susan Senyk, Christian Senyk, Matthew Deller, Renee Deller, Patricia Groome, Gary Samuels and Marie Lohr is DENIED and the remaining individual claims brought by these named plaintiffs are DISMISSED.

2. The clerk of court is directed to close this case and enter judgment in favor of defendant Kolbe & Kolbe Millwork Co., Inc.

3. Intervenor United States Fire Insurance Company may have until June 17, 2016, to show cause why I should not deny its motion for summary judgment as moot. Defendant may have until June 24, 2016, to file a response. United States Fire may have until June 29,

2016, to file a reply.

Entered this 7th day of June, 2016.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge